**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| HAYNES INTERNATIONAL, INC., | ) | |
| a Delaware corporation, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 04-197(E) |
| | ) | |
| v. | ) | JURY TRIAL DEMANDED |
| | ) | |
| ELECTRALLOY, a Division of G.O. | ) | |
| CARLSON, INC., | ) | Judge Cohill |
| a Pennsylvania corporation, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S BRIEF IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Lynn J. Alstadt
Pa. I.D. No. 23487
Bryan H. Opalko
Pa. I.D. No. 86721
BUCHANAN INGERSOLL PC
301 Grant Street, 20th Floor
Pittsburgh, PA  15219-1410
Phone:  412-562-1632
Fax:  412-562-1041
Attorneys for Plaintiff

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT .........................................................................1

RESPONSIVE CONCISE STATEMENT OF MATERIAL FACTS ..................................2

PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT ON COUNT 1 ....................2

PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT ON COUNT 2 ....................4

PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT ON COUNT 3 ....................5

DEFENDANT'S SUMMARY JUDGMENT MOTION SHOULD
BE DENIED IN IT'S ENTIRETY AND SUMMARY JUDGMENT
SHOULD BE ENTERED IN FAVOR OF PLAINTIFF ON COUNTS 1, 2 AND 3..........6

II.A    Haynes is entitled to summary judgment on Counts 1, 2 and 3............................6

    II.A.1    Haynes' C-22 mark is not generic, but rather is
               valid and protectable .............................................................6

    II.A.2    There is likelihood of confusion ..........................................................8

           II.A.2.a    Confusion is likely because the parties
                        designations are similar.......................................9

           II.A.2.b    C-22 is a strong mark and functions
                        as a single source identifier.............................11

                    II.A.2.b.i    Haynes' C-22 mark is
                                  not a grade designation .............................12

                    II.A.2.b.ii    Third parties recognize Haynes'
                                    trademark rights in C-22 ...........................13

                    II.A.2.b.iii    Plaintiff's disclaimer of "22"
                                    is irrelevant.................................14

                    II.A.2.b.iv    Haynes's mark C-22 is incontestable
                                    and strong...................................14

           II.A.2.c    Consumer care ...............................................15

           II.A.2.d    Actual confusion .............................................16

II.A.2.e    Defendant's intent ...........................................................16

II.A.2.f.    Plaintiff and Defendant target
the same customers ........................................................17

II.A.2.g    Advertising and sale.......................................................18

II.B    Defendant's motion for summary judgment on Counts 4 and 5
must be denied ..............................................................................................20

II.B.1    The parties' marks are virtually identical ...........................................21

11.B.2    Haynes C-22 mark is famous ............................................................21

II.B.2.a    C-22 is distinctive ...........................................................21

II.B.2.b    Haynes has used C-22 for over 20 years.........................22

II.B.2.c    Haynes' advertising ........................................................22

II.B.2.d    Degree of recognition in the
channels of trade .............................................................23

II.B.3    Actual dilution ...................................................................................25

CONCLUSION.................................................................................................................25

## TABLE OF CASES

Page

Citizen Financial Group, Inc. v. The Citizens National Bank
  of Evans City, Inc., 2002 WL 32808575 (W.D.Pa. 2002).............................................4, 5

Commerce Nat'l Ins. Servs., Inc. v. Commerce Ins. Agency, Inc.,
  214 F.3d 432, 55 U.S.P.Q.2d 1098 (3rd Cir. 2000) ...........................................................2

Gray v. Meijer, Inc., 295 F.3d 641 (6th Cir. 2002)...........................................................11

In re MCI Communications Corp., 21 U.S.P.Q. 1534 (Com'r. Pats. 1991).......................14

Haymond v. Lundy, Civ. Nos. 99-5015, 99-5048, 2000 WL 804432, at *12,
(E.D.Pa. June 22, 2000) .....................................................................................................5

Mateson Chem. Corp. v. Vernon, No. 96-7914, 2000 WL 680020
(E.D.Pa May 9, 2000) ........................................................................................................5

Opticians Ass'n of Am. v. Independent Opticians of Am., 920 F.2d 187
(3rd Cir. 1990) ....................................................................................................................2

Times Mirror Magazine, Inc. v. Los Vegas Sports News, LLC,
212 F.3d 157 (3rd Cir. 2000) .......................................................................................20, 23

## OTHER AUTHORITIES

Lanham Act, § 7(b), 15 U.S.C. § 1057(b)..................................................................2, 3, 8

15 U.S.C. § 1125(c) .....................................................................................................20, 21

Trademark Manual of Examining Procedure § 1213.01(c) ...............................................14

McCarthey on Trademarks and Unfair Competition,
§ 3.3 (4th ed. Thomson/West 2005)................................................................................6, 7

# EXHIBIT LIST

## Non-Confidential Exhbits

A.     C-22 Certificate of Registration

B.     Electralloy Capabilities Sheet (printed 7/15/04)

C.     Electralloy Handout

D.     Declaration of Paul Manning

E.     Plaintiff's Answers to Defendant's First Set of Interrogatories, Nos. 2, 3

F.     Deposition Transcript of James A. Laird, pgs. 129-130, 197

G.     C-22 Data Sheet

H      Deposition Transcript of Harry L. Flower, pg. 46

I.     Defendant's Response to Plaintiff's First Set of Interrogatories, No. 3

J.     Electralloy Capabilities Sheet (printed 8/30/05)

K.     Charts Providing Nominal Compositions of Haynes' Alloys

L.     Second Declaration of Paul Manning

M.     Haynes' Application to Register C-22

## Confidential Exhibits

N.     Deposition Transcript of Mark Lewis, pgs. 18-19, 23-24, 26, 81-85

O.     Deposition Transcript of Wayne Weaver, pgs. 4, 15-16, 19, 46-47

P.     Deposition Transcript of  Tracy Rudolph, pgs. 13-14, 20, 23-24

Q.     Representative copies of Electralloy purchase orders and invoices

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| HAYNES INTERNATIONAL, INC., | ) | |
| a Delaware corporation, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 04-197(E) |
| | ) | |
| v. | ) | JURY TRIAL DEMANDED |
| | ) | |
| ELECTRALLOY, a Division of G.O. | ) | |
| CARLSON, INC., | ) | Judge Cohill |
| a Pennsylvania corporation, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S BRIEF IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Haynes International, Inc. ("Plaintiff" or "Haynes"), by and through its undersigned counsel, hereby submits this Brief in Opposition to Defendant, Electralloy, a Division of G.O. Carlson, Inc.'s ("Defendant" or "Electralloy"), Motion for Summary Judgment.

**PRELIMINARY STATEMENT**

Defendant has moved for summary judgment in its favor on all counts of the Complaint. Plaintiff has filed a Motion for Partial Summary Judgment on Counts 1 and 2 of the Complaint, namely, that Electralloy has infringed Haynes' federally registered trademark for C-22 and violated § 43 of the Lanham Act through its use of C22, EC22 and GOC22 for the same alloy composition which Haynes sells under its registered C-22 trademark.

Although Defendant's submission totally ignores Defendant's use of C22 and also GOC22, the evidence of such use cannot be disputed.  Defendant has used the designation C22

(which is virtually identical to Plaintiff's federally registered C-22 trademark) on at least its website up until at least August 30, 2005. (Ex. H, Flower Dep., p. 46).

There is no issue as to any material fact relevant to Counts 1, 2 and 3 of the Complaint. Based upon those undisputed facts, Plaintiff is entitled to a judgment as a matter of law as to Counts 1, 2 and 3 of the Complaint. Although Plaintiff did not move for summary judgment on Count 3, it is clear from Defendant's memorandum of law that the standards are the same for that count as for Counts 1 and 2. Therefore, summary judgment should also be entered in favor of Plaintiff on Count 3.

There is a dispute of material facts as to whether C-22 is distinctive or well-known and whether there has been actual dilution. Since such facts are material to a determination of Plaintiff's dilution claims (Counts 4 and 5), the dispute over those facts precludes entry of summary judgment as to these counts.

## RESPONSIVE CONCISE STATEMENT OF MATERIAL FACTS

Pursuant to Local Rule of Civil Procedure 56.1.C.1, Plaintiff hereby incorporates its Response to Defendant's Concise Statement of Material Fact, which accompanies this Response Brief.

## PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT ON COUNT 1

To establish federal trademark infringement, a plaintiff must establish: (1) that the mark is valid and legally protectable; (2) it owns the mark; and (3) the defendant's use of the mark to identify its goods or services is likely to create confusion concerning the origin of those goods or services. Commerce Nat'l Ins. Serv. Inc. v. Commerce Ins. Agency Inc., 55 U.S.P.Q.2d 1098 (3rd Cir. 2000) (citing Opticians Ass'n of Am. v. Independent Opticians of Am., 920 F.2d 187, 192 (3rd Cir. 1990). Section 7(b) of the Lanham Act states:

> (b) *Certificate as prima facie evidence.* -- A certificate of registration of a mark upon the principal register provided by this Act shall be prima facie evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the certificate, subject to any conditions or limitations stated in the certificate.

15 U.S.C. § 1057(b). Haynes' owns United States Certificate of Trademark Registration No. 1,953,864 registering C-22 on the Principal Register. (Ex. A). Defendant has not challenged Haynes' ownership of the registration or sought cancellation of the registration. Accordingly, U.S. Trademark Registration No. 1,953,864 for C-22 establishes that Haynes has a valid and legally protectable mark and that it owns the mark. Thus, the first two factors required to prove trademark infringement have been met.

Defendant has attempted to overcome the statutory presumption created by Haynes' federal registration by alleging that the mark is generic. However, the uncontroverted facts do not support this conclusion. First, there is no manufacturer of metal alloys (except Defendant) who is currently using C-22 or C22, or any other designation containing C22, for a metal alloy composition. Most, if not all, of the resellers and fabricators of metal alloy products who have used C-22 or C22 and were identified by Defendant are Haynes' customers who purchased C-22 alloy from Haynes. Therefore, they have a right to use C-22 in conjunction with products made from Haynes' C-22 alloy as an indication of the source of the alloy. Furthermore, when notified by Haynes that they had been improperly using the C-22 trademark without a dash between the letter and numbers, these companies corrected their mistake. Hence, what Defendant alleges to be widespread third party use was in fact use by Haynes' customers, or an error which has been corrected, or use on a webpage by companies operating outside the United States.

Despite being aware of Haynes' federal registration for C-22, Electralloy adopted the designation C22 for the same alloy composition.  (Ex. I, Defendant's Answer to Plaintiff's Interrogatory No. 3).  Electralloy's use of C22 evolved into EC22 and GOC22.  The C22, EC22 and GOC22 designations adopted by Electralloy are virtually identical to Haynes' federally registered trademark.  All three designations fully incorporate Haynes' federally registered mark C-22.  While Defendant has argued that their designations do not incorporate a hyphen, simply deleting a hyphen in a three character mark, while using the exact same three characters in the exact same order, is not enough to avoid confusion.

While Electralloy could have called its alloy anything without impacting its sales, it chose designations virtually identical to Haynes' registered mark for the same goods sold and offered for sale to the same customers and potential customers and marketed in the same way. (Ex. O, Weaver Dep., pp. 46-47; Ex. P. Rudolph Dep., pp. 23-24).  Clearly, the intent of Electralloy was to trade off of the goodwill developed by Haynes in its C-22 mark.  An analysis of the factors relevant to establishing likelihood of confusion, as set forth on pages 7-15 of Plaintiff's Brief in Support of Its Motion for Partial Summary Judgment, demonstrates that there is a likelihood of confusion stemming from Electralloy's use of C22, EC22 and GOC22.  Since there is no dispute of material facts relating to Count 1, Plaintiff is therefore entitled as a matter of law to summary judgment on Count 1 of the Complaint for infringement of Haynes' federally registered trademark.

## PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT ON COUNT 2

To prove a violation of § 43(a) of the Lanham Act, a plaintiff must demonstrate that (1) it has a valid and legally protectable mark; (2) it owns the mark; and (3) the defendant's use of the mark to identify its goods or services causes a likelihood of confusion. Citizen Financial Group,

Inc. v. The Citizens National Bank of Evans City, Inc., 2002 WL 32808575 (W.D.Pa. 2002). Haynes' Certificate of Registration for C-22 demonstrates that Haynes has a valid and legally protectable mark and that it owns the mark, thus establishing the first two factors noted above. (Ex. A).

Defendant is using a virtually identical designation, C22, and other designations which fully incorporate Haynes' federally registered mark C-22, namely, EC22 and GOC22, for the same product as Haynes sells under its federally registered trademark C-22, namely, an alloy within UNS No. N06022. Defendant advertises the product using the same media as Haynes, namely, web pages and product brochures. (Ex. B, C and J). Customers and potential customers for Haynes' C-22 alloy are the same customers and potential customers for Defendant's alloy. These similarities establish a likelihood of confusion. Defendant's use of C22, EC22 and GOC22 violates § 43(a) of the Lanham Act. Since there is no dispute of material facts relating to Count 2, summary judgment in favor of Plaintiff should be entered on Count 2 of the Complaint.

## PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT ON COUNT 3

Defendant pointed out at pages 3-4 of its Memorandum of Law in Support of its Motion for Summary Judgment, that "elements of a cause of action for unfair completion under Pennsylvania common law 'are identical to those for a claim under . . . the Lanham Act, with the exception that the goods need not have traveled in interstate commerce. . .'". Haymond v. Lundy, Civ. Nos. 99-5015, 99-5048, 2000 WL 804432, at *12 (E.D.Pa. June 22, 2000); see also Mateson Chem. Corp. v. Vernon, No. 96-7914, 2000 WL 680020 (E.D.Pa May 9, 2000) ("[u]nder Pennsylvania law a common law trademark infringement action is governed by the same standards as an action brought under the Lanham Act"). For the foregoing reasons summary judgment should be entered in favor of Plaintiffs with respect to Count 2, Defendant's use of

C22, EC22 and GOC22 violates Pennsylvania unfair competition law.  Since there is no dispute

of material facts relating to Count 3, summary judgment in favor of Plaintiff should be entered

on Count 3 of the Complaint.

**DEFENDANT'S SUMMARY JUDGMENT MOTION SHOULD BE
DENIED IN IT'S ENTIRETY AND SUMMARY JUDGMENT SHOULD
BE ENTERED IN FAVOR OF PLAINTIFF ON COUNTS 1, 2 AND 3**

      With respect to Counts 1 and 2 of the Complaint, Plaintiff has demonstrated that there is

a likelihood of confusion from Defendant's use of C22, EC22 and GOC22 in connection with the

sale of the same alloy composition as sold under Plaintiff's federally registered C-22 mark.  This

portion of Plaintiff's Response Brief corresponds to Section II of Defendant's supporting

memorandum of law.  For ease of reference, when responding to Defendant's arguments,

Plaintiff has utilized lettered/numbered sections to correspond with those in Defendant's

supporting memorandum of law.

**II.A**      **Haynes is entitled to summary judgment on Counts 1, 2 and 3**

      While Plaintiff has moved for summary judgment on only Counts 1 and 2, as Defendant

has correctly noted, the standards for Count 3 are essentially the same as for Counts 1 and 2.

Therefore, Plaintiff is entitled to summary judgment on Count 3, as well as Counts 1 and 2.

      **II.A.1**      **Haynes' C-22 mark is not generic, but rather is valid and protectable**

      The evidence of record clearly demonstrates that Haynes' C-22 mark functions as a

source identifier and <u>not</u> as a generic term in the special metals industry.  In determining whether

a mark functions as a source identifier or is generic, "[t]he prime question is whether the

designation in question, as actually used, will be recognized in and of itself as an indication of

origin for this particular product or service."  1 J. Thomas McCarthy, <u>McCarthy on Trademarks</u>

and Unfair Competition, § 3.3, p. 3-6 (4th ed. Thomson/West 2005). The evidence of record clearly demonstrates that Haynes' C-22 mark is not generic, but rather that customers and competitors recognize and associate alloys sold under Plaintiff's C-22 mark as alloys originating from Haynes.

The most glaring evidence contradicting Electralloy's genericness assertion is that competitors of Haynes have recognized Haynes' trademark rights in its C-22 mark. (Ex. L, Manning Second Declaration, ¶ 3). During the course of depositions, Defendant produced various uses of C-22 in the marketplace by third parties. While many of these uses were by customers of Haynes, who are permitted to use Haynes' C-22 mark in advertising their alloy products made from Haynes C-22 alloy, some of the third party uses were by competitors of Haynes. Haynes has sent these companies letters notifying each company of its misuse or infringement. (Ex. L, Manning Second Declaration, ¶ 3). In nearly every instance, the companies promptly ceased such use upon receiving notice from Haynes. (Ex. L, Manning Second Declaration, ¶ 3). While one entity refused to change its mark, Haynes is taking appropriate legal action against that entity. (Ex. L, Manning Second Declaration, ¶ 3).

The fact that competitors in the industry have recognized Haynes' rights in and to its C-22 trademark undermines any argument by Defendant that Haynes' C-22 mark is generic. To answer Judge Hand's question as posed in Defendant's memorandum of law, "what do buyers understand" by the mark C-22, the record reflects that the relevant market, as well as competitors, understand C-22 to be a designation associated with Haynes. More specifically they recognize C-22 as designating an alloy product within industry standard UNS No. N06022 made by Haynes. C-22 is not generic.

**II.A.2**     **There is likelihood of confusion**

Haynes' federally registered C-22 mark is valid and protectable according to § 7(b) of the Lanham Act. 15 U.S.C. § 1057(b). Thus, the first two factors in a likelihood of confusion analysis have been met. As will be shown below, the evidence of record also establishes the third factor in a likelihood of confusion analysis, namely, that Defendant's use of its designations C22, EC22 and GOC22 is likely to cause confusion concerning the origin of the goods at issue.

The products made by the parties are not sold directly to the ultimate customer. Rather, they are sold directly or through resellers in ingot, bar and coil form to fabricators who make parts for engines, chemical processing plants, pollution control devices and other products. The fabricators then sell the parts to companies who combine those products with parts from other suppliers to build engines, reaction vessels, heat exchangers and other products that are sold to the ultimate user. (App. 32, Laird dep., pp. 144-146). Examples of these uses of the alloy can be seen in several Haynes' publications. See, for example, Defendant's App. 1, pp. HE00058-HE00064. All of the consumers in this chain may be exposed to the designations used by the alloy manufacturer for the alloy. This can happen because fabricators often use the alloy suppliers' designations in their advertising materials. One example is Penn Machine who makes pipe fittings. On their website, Penn Machine lists the materials from which its products can be made. (Ex. L, pp. HE00827-HE00829). Another example is Fast Alloys who sells strip, coil and plate cut to a customer's specification. They also list the materials which they offer using the manufacturer's designation. (Ex. L, pp. HE00741-HE00743). Both companies identify C-22 as a registered trademark of Haynes International, Inc. on their web pages.

**II.A.2.a**    **Confusion is likely because the Parties' designations are similar**

Interestingly enough, Defendant's analysis of this factor starts out by indicating the trademarks should be compared by analyzing them in their entireties and not by dissecting them into their component parts. However, after making that statement, Defendant attempts to prove that the marks are dissimilar by dissecting them into their component parts. Under an appropriate analysis where the focus is on the customer's overall impression of the marks as they are found in the actual marketplace, it is clear that the Parties marks are highly similar, if not identical.

Defendant has adopted three infringing designations which it has used in connection with the sale of alloy products. These designations are C22, EC22 and GOC22. While Defendant's motion and supporting memorandum of law are devoid of any mention of C22 or GOC22, these designations cannot be ignored in the analysis.

Defendant's C22 designation is virtually identical to Plaintiff's registered C-22 mark. The only difference is that Plaintiff incorporates the use of a hyphen. Mere deletion of a hyphen is not enough to avoid likelihood of confusion. Both marks consist of a letter followed by two numbers. Defendant has used the exact same letter ("C") followed by the exact same numbers ("22") as found in Plaintiff's mark. Some people looking at C22 would believe it to be Haynes' registered trademark C-22. (Ex. D, Manning Declaration, ¶ 3).

When examining the similarities in the sound of the marks, the hyphen is ignored. That is, the pronunciation of Plaintiff's C-22 mark is either C-two-two or C-twenty-two. Similarly, the pronunciation of Defendant's C22 mark is either C-two-two or C-twenty-two. Thus, the marks are identical in sound. Plaintiff's mark C-22 and Defendant's mark C22 clearly create the same overall impression.

A consumer viewing the marks will not be focused on the hyphen in attempting to distinguish between the marks. A consumer may simply believe that the hyphen was inadvertently left out in that particular use, or that the marks can appear either way.

A similar overall impression applies to Defendant's use of EC22 and GOC22. Both of these marks incorporate in their entirety Plaintiff's C-22 mark, albeit without the hyphen. The fact that Defendant has used C22 cannot be ignored, and in fact undermines Defendant's entire argument for summary judgment in its favor.

The fact remains that Defendant has widely used C22 in its advertising. Evidence of the use C22 is replete throughout the record. (Ex. B, J and Q). Defendant's use of C22 undermines its credibility and its arguments with respect to EC22 and GOC22. All Defendant has done in these instances is place either an "E" or "GO" in front of Plaintiff's registered mark. Such a minor alteration when Defendant has already used an exact infringing mark in commerce, should not be allowed to avoid likelihood of confusion.

Defendant attempts to persuade the Court to believe that Plaintiff almost always uses its C-22 mark in conjunction with the mark "Hastelloy." However, Plaintiff has produced numerous instances of use of C-22 alone by Haynes and its customers. (*See*, *e.g.*, Ex. K and Ex. L, pp. HE00743, HJE08027, HE0829). Thus, Defendant's arguments in this regard are refuted and should be given no weight.

Defendant also alleges that it adopted EC22 since it has used the prefix designation "EC" for a number of years to designate Electralloy Corporation. Yet, there is no evidence that members of the public associate EC with Electralloy. Defendant has offered declarations from two of its customers. (Defendant's App. 41, 42). Neither declaration says this. In every publication produced by Electralloy which lists the products that it offers there is no list of

products which exclusively begin with EC. Electralloy's capabilities chart has 71 alloys listed. (Ex. B). Only 4 (or 5 in the version where C-22 has been changed to EC22, Defendant's App. 47) of these designations begin with EC.

Finally, Defendant alleges that there is no likelihood of confusion because it markets its product as "Electralloy's EC22." But, that phrase appears only in a narrative portion of a single product sheet. In all other Electralloy publications which list the alloy compositions C22, EC22 and GOC22, "Electralloy" is not used in close proximity with these designations. (Ex. B and J; Defendant's App. 47).

When consideration is given to the total commercial impression created by the marks, it is clear that products sold under Defendant's designations C22, EC22 and GOC22 are likely to be confused with products sold under Haynes' federally registered mark C-22.

### II.A.2.b     C-22 is a strong mark and functions as a single source identifier

Defendant is correct in its assertion that a mark's strength is determined by its "distinctiveness and degree of recognition in the marketplace." Gray v. Meijer, Inc., 295 F.3d 641, 646 (6th Cir. 2002). The evidence of record clearly indicates that Haynes' C-22 mark is strong and has a high degree of distinctiveness in the marketplace. No manufacturer of alloy products in the United States, except Defendant, uses C-22, C22 or any designation containing C-22 or C22 for an alloy composition. Haynes sent numerous letters to third parties identified by Defendant as using C22 for alloy products which use has not been authorized by Haynes. (Ex. L, Manning Second Declaration, ¶ 3) Every company operating in the United States promptly replied. With one exception, every third party has recognized Haynes' trademark rights in its C-22 mark and has agreed to correct any misuse of C-22 or C22. (Ex. L, Manning Second Declaration, ¶ 3). There can be no better indication of a mark's degree of recognition in the

marketplace than competitors and customers recognizing Plaintiff's trademark rights and taking appropriate steps to avoid misuse.

Even Mark Lewis, Sales Manager for Melt Products for Electralloy, when asked whether he associates C-22 with any company, testified that "C-22 is a Haynes alloy".  (Ex. N, Lewis Dep., p. 18, ln. 18 through p. 19, ln. 14).  Accordingly, the undisputed evidence of record establishes that C-22 is a strong mark recognized by those in the industry as being associated with Haynes.

### II.A.2.b.i    Haynes' C-22 mark is not a grade designation

It is well established that numbers and alphanumeric marks are registrable.  While grade designations and model numbers are generally not trademarks, Haynes' C-22 mark is neither a grade designation nor a model number.  That was established during the prosecution of the application which led to Haynes' federal registration for C-22.  C-22 is a trademark utilized by Haynes in connection with the manufacture and sale of an alloy that meets specification UNS No. N06022.  Defendant argues that Plaintiff's C-22 mark merely describes important characteristics of the product, namely, that it is a corrosion-resistant alloy made of approximately 22% chromium.  However, that statement fails on a number of grounds.

First, the percent of chromium in an alloy meeting UNS No. N06022 falls within a range that encompasses 22% and can be as low as 20%.  Haynes uses C-22 to identify a Haynes alloy falling within UNS No. N06022.  Haynes' alloy sold under its C-22 trademark can have any percentage of chromium falling within the range attributed to UNS No. N06022.  Second, the chemical symbol for chromium is "Cr", and not "C" which is used in Plaintiff's federally registered mark C-22.  Thus, to argue that C-22 describes an alloy made of approximately 22%

chromium, when that alloy can have a chromium content as low as 20%, and when chromium has a chemical symbol of Cr, is specious at best.

The fact remains that Plaintiff does not use C-22 as a grade designation or model number. Haynes uses C-22 as a trademark indicating source of origin for its C-22 alloy. The industry also recognizes Haynes' rights in its C-22 trademark. (Ex. L, Manning Second Declaration, ¶ 3).

### II.A.2.b.ii    Third parties recognize Haynes' trademark rights in C-22

As previously noted, all but one of the third party misuses of C-22 by companies operating within the United States which were identified by Defendant's counsel have been corrected. When Haynes notified those companies of the problem, and in every instance but one the company promptly took steps to stop or correct such use. (Ex. L, Manning Second Declaration, ¶ 3). Haynes will take the necessary legal action against that one company to stop the infringing use. The fact that third parties who are competitors of Haynes and third parties and who are customers of Haynes and its competitors have recognized Haynes' trademark rights in its C-22 mark, undermines any argument by Defendant that Plaintiff's mark is weak.

Defendant alleges that many companies use a prefix of letters with "22" as their designation for a product falling within UNS No. N06022. Haynes does not dispute this fact. However, none of those uses have a "C" as a prefix to the numerical "22" designation. Haynes is not claiming rights in "22" and has in fact disclaimed those rights from the registration. Haynes' federally registered mark, which is now incontestable, incorporates a "C" prior to the "22" designation. Unlike others in the industry who use 22, Electralloy has been entirely incorporated Plaintiff's mark into the designations it has used, namely C22, EC22 and GOC22. While Defendant states that there is a longstanding coexistence of a plethora of "_22" marks, the examples it gives are JS-22, AL-22, Inconel® Alloy 22 and Carpenter Alloy 22. At quick

glance, it is obvious that none of the marks cited by Defendant utilize a "C" as a prefix to "22". Indeed, if Electralloy had used Alloy 22 or a designation that did not contain C22, as every other alloy manufacturer and reseller has done, there would have been no dispute.

### II.A.2.b.iii    Plaintiff's disclaimer of "22" is irrelevant

Plaintiff readily admits that it disclaimed "22" from its registration for C-22.  That disclaimer is clearly evident from the Certificate of Registration and is available for all to see. (Ex. A).  Defendant's statements regarding the Examining Attorney's initial refusal are irrelevant and self serving.  Defendant has absolutely no basis to even speculate on the Examining Attorney's rejection.  The only thing that is clear from prosecution history is that the Examining Attorney approve Haynes' application to register C-22 mark on the Principal Register and Certificate of Registration No. 1,953,864 was granted.  Further, Plaintiff has filed appropriate affidavits and its registration for C-22 is now incontestable.

Defendant attempts to utilize the fact that Haynes and Jessop were involved in an opposition to try and weaken the strength of Plaintiff's C-22 mark.  In settlement of the opposition, Haynes agreed to disclaim "22" from the mark.  Such a disclaimer does not mean that that the disclaimed portion of the mark is descriptive, but rather that Haynes simply made a business decision to settle the matter.  It is well settled that parties can disclaim a portion of a mark for any reason, including the disclaimer of registrable subject matter.  Trademark Manual of Examining Procedure § 1213.01(c); In re. MCI Communications Corp., 21 U.S.P.Q. 1534 (Com'r. Pats. 1991).  Haynes has never admitted in any trademark filing that it believed any portion of its C-22 mark was descriptive.  Any allegations by Electralloy in that regard are unsupported by the record and should be given no weight.

### II.A.2.b.iv    Haynes' mark C-22 is incontestable and strong

Defendant had admitted that Haynes' C-22 registration is incontestable.  Defendant alleges that any presumption of strength of C-22 is easily overcome by the evidence of genericness, rampant third party usage of C-22, and rampant use of similar terms that designate alloys meeting specification UNS No. N06022.  Each of these allegation has been discussed in detail above.  Today, no manufacturer of alloy products in the United States, except Defendant, is using an alloy designation containing C22.  Thus, in this instance, the fact that Plaintiff's C-22 mark is incontestable is evidence of the strength of Haynes' mark, with such strength evidenced by third parties promptly ceasing any misuse of C22 upon receiving notice from Plaintiff.  (Ex. L, Manning Second Declaration, ¶ 3).

### II.A.2.c    Consumer Care

Haynes' C-22 alloy is priced similar to comparable alloys.  (Defendant's App. 32, Laird Dep., p. 103).  Haynes sells to a variety of different consumers who purchase in different quantities.  For example, Haynes sells mill quantities to consumers who purchase in large volumes of 650 pounds or more.  Haynes also sells to service centers who sell the alloy in lesser amounts.  Additionally, Haynes sells to resellers who will cut the alloy to any size.  (Exhibit D, Manning Declaration, ¶ 10).  The degree of care exercised by consumers will depend on the price of the alloy, which is dictated by the amount purchased.  (Exhibit D, Manning Declaration, ¶ 10).

While Defendant argues that the parties' customers exercise a great degree of care prior to making a purchase, the evidence relied upon relates only to direct customers of Haynes and Electralloy.  Yet, very few, if any, are the ultimate consumer.  Rather, those customers sell to third parties and use the alloy maker's designations in making those sales.  It is these third party customers who are likely to be confused.  Because Defendant has offered no evidence

concerning the care exercised by these customers, consumer care is not a factor that can be considered.

### II.A.2.d   Actual Confusion

The evidence of record clearly shows that Electralloy has received orders for C-22 alloy and has filled those orders with its C22 and/or EC22 alloy. (Exhibit Q, representative copies of Electralloy purchase orders and invoices). Since Electralloy's sales, as well as advertising of its alloy, have been limited, it is understandable that Haynes has found no other evidence of actual confusion. In support of its argument, Defendant has provided declarations from Arcos and Enpar that C22 or C-22 is a common designation used in the industry. (Defendant's App. 41, 42). However, this evidence is undermined by the fact that Arcos, one of the declarants, does not use C22 or C-22 in the sale of its alloy. Rather, Arcos calls its alloy "Arcos alloy 22." (Ex. L, p. HE00854). Enpar, employer of the second declarant, is a European company and does not sell alloys in the United States. (Defendant's App. 45, Lewis Dep., p. 39).

### II.A.2.e   Defendant's intent

Electralloy was aware of Haynes' federally registered trademark for C-22 when it adopted its C22 and/or EC22 marks. (Exhibit I, Defendant's Answer to Plaintiff's Interrogatory No. 3). In fact, Electralloy was approached by a customer who wanted Electralloy to make the same alloy as Haynes' C-22 alloy. (Exhibit O, Weaver Dep., pp. 15-16; Exhibit P, Rudolph Dep., pp. 13-14). Electralloy could have chosen any name for its alloy without impacting its sales. (Exhibit O, Weaver Dep., pp. 46-47; Exhibit P, Rudolph Dep., pp. 23-24). However, despite all of this, Electralloy chose to use the designations C22, EC22 and GOC22 for its alloy; designations which are virtually identical with, and fully incorporate, Haynes' C-22 registered

trademark.  Electralloy's intent to trade on the public recognition of  Haynes' C-22 trademark can and should be inferred from its conduct.

Electralloy attempts to explain away its conduct by arguing that it adopted EC22 to build on its goods bearing prefix "EC."  However, there is no evidence that consumers associate EC with Electralloy.  Only 4 of 71 alloys listed in Electralloy's capabilities sheet, Exhibit B, begin with EC.  None of the customers whose declarations were submitted say they associate EC or alloy designations beginning with EC with Electralloy.  They also did not say that they understood 22 to mean 22% chromium.  None of the witnesses produced by Electralloy selected C22 or EC22 or GOC22 for the alloy composition.  Hence, the argument relating to Electralloy's intent is pure speculation.

The fact remains that Electralloy was approached by a customer who wanted them to make the same alloy as Haynes' C-22 alloy.  Electralloy did so and called its alloy C22 despite the fact that Electralloy could have used any other designation without adversely affecting sales.  Plaintiff submits that Electralloy's intent is clear.

### II.A.2.f   Plaintiff and Defendant target the same customers

Defendant's statement at page 23 of its brief that "Plaintiff and Defendant Targeted Different Customers" is simply contrary to the evidence.

Electralloy began making the alloy when a Haynes customer that wanted Haynes' C-22 alloy that came to Electralloy to see if Electralloy could make the same alloy.  (Exhibit O, Weaver Dep., pp. 15-16; Exhibit P, Rudolph Dep., pp. 13-14).  Electralloy's capabilities sheet lists the alloy as being available in "INGOT-BAR-BILLET" forms.  (Ex. B and J; Defendant's App. 47).  At least one purchase order shows that Electralloy has also sold the alloy in wire form.  (Defendant's App. 48, p. EL00009).  The report of Haynes' actual sales show that Haynes has

sold substantial amounts of C-22 alloy in bar and wire form.  (Defendant's App. 52).  As indicated by the use of quotation marks, the terms "finished" and "semi-finished" are words selected and used by counsel and appear nowhere in the publications or advertising material produced by either party.

The undisputed facts are that both Haynes and Electralloy sell and offer to sell the same alloy composition, an alloy within UNS No. N06022.  Both parties offer that alloy composition in bar and wire form.  At least one customer of Haynes C-22 alloy has purchased the same alloy designated C22 and EC22 from Electralloy.  While Haynes does sell its C-22 alloy in other forms, such as plate and sheet, the fact remains that the forms in which Electralloy sells its alloy overlap those of Haynes.  To argue that Plaintiff and Defendant targeted different customers, as Defendant has done, is ridiculous.  The customers and potential customers of Electralloy's C22, EC22 and GOC22 alloy are the same as the customers and potential customers of Haynes' C-22 alloy.

### II.A.2.g    <u>Advertising and sale</u>

The uncontroverted evidence shows that Haynes conducts a substantial amount of advertising in connection with its C-22 alloy, and that Electralloy has conducted minimum advertising of its alloys sold under its C22, EC22 and GOC22 designations.  During the past six years Haynes' advertising and marketing expenses for C-22 alloy have been about $40,000 per year.  (Ex. L, Manning Declaration, ¶ 2).  The statement that Haynes conducts a paltry amount of advertising in connection with C-22 is simply not true.  Defendant's assertion that Haynes does not advertise other than by brochures, trade journals and trade shows is also not true.  Like Electralloy, Haynes has a website that advertises its alloys, including C-22 alloy.

Defendant's assertion that it does not advertise its C22, EC22 or GOC22 alloys is also untrue. Defendant admits that it maintains a capability chart that lists its alloy products and a specification sheet for EC22 alloy. Both documents are on Electralloy's website and have been given to customers and potential customers. (Defendant's App. 45, Lewis Dep., p. 45). They are advertisements. Electralloy also attends trade shows where it distributes its capabilities sheet and other brochures. (Defendant's App. 45, Lewis dep. 43, 45). Clearly, Electralloy advertises its C22, EC22 and GOC22 alloys.

The amount of Electralloy's advertising and the limited amount of sales to date does not lead to the conclusion that such advertising "could not possibly have contributed to a likelihood of confusion" as Defendant alleges. (Defendant's supporting memorandum of law, p. 24). If anything, they provide an explanation for a lack of evidence of actual confusion.

The fact that Electralloy has engaged in the same type of advertising for its C22 alloy as Haynes conducts for its C-22 alloy indicates that there is a likelihood of confusion.

Given the above analysis of the relevant factors, it is clear that there is likelihood of confusion between Haynes' registered mark C-22 and Electralloy's designations C22, EC22 and GOC22. Electralloy began selling its alloy after a customer approached Electralloy to see if they could make Haynes' C-22 alloy. Despite being aware of Haynes' federal registration for C-22, Electralloy adopted the designation C22. This designation evolved into EC22 and GOC22, which are currently used by Defendant. The designations C22, EC22 and GOC22 designations adopted by Electralloy are virtually identical to Haynes' registered trademark. All three designations also fully incorporate Haynes' federally registered mark C-22.

While Electralloy could have called its alloy anything without impacting its sales, it chose designations virtually identical to Haynes' registered mark for the same goods sold and

- 19 -

offered for sale to the customers and same potential customers and marketed in the same way. Clearly, the intent of Electralloy was to trade off of the goodwill developed by Haynes in its C-22 mark.

Given these factors, it is clear that Defendant's Motion for Summary Judgment as to Counts 1-3 should be denied. Since there are no material facts in dispute, Plaintiff is therefore entitled as a matter law to summary judgment on Counts 1 and 2 of the Complaint for infringement of Haynes' federally registered trademark. Additionally, Plaintiff is also entitled to judgment as a matter of law on Count 3 of the Complaint for Pennsylvania common law trademark infringement.

**II.B    Defendant's motion for summary judgment on Counts 4 and 5 must be denied**

As previously noted, there are disputes as to material facts with respect to Plaintiff's federal and Pennsylvania dilution claims. For this reason, Electralloy's motion for summary judgment on Counts 4 and 5 must be denied.

To succeed on a federal trademark dilution claim, Plaintiff must establish that "(1) its C-22 mark is famous and distinctive; (2) Electralloy's use of its designations at issue is a commercial use in commerce; (3) Electralloy's use began after Haynes' mark became famous; and (4) Electralloy's use has caused dilution of the distinctive quality of Haynes' C-22 mark. *See*, *e.g.*, Times Mirror Magazine, Inc. v. Los Vegas Sports News, LLC, 212 F.3d 157, 163 (3rd Cir. 2000); *see also* 15 U.S.C. § 1125(c). There are disputes as to the material facts relating to this issue and, accordingly, Defendant's motion with respect to Counts 4 and 5 should be denied.

### II.B.1    The Parties' marks are virtually identical

Haynes has established that the designations used by Defendant are virtually identical to Haynes' federally registered C-22 mark.  The designations used by Electralloy are C22, EC22 and GOC22 all use the exact same letter and number combination in the exact some order.

Defendant statement that "Plaintiff's mark C-22 is invariably juxtaposed with the name and mark "Hastelloy" is not true.  There are numerous lists of alloys by Haynes and its customers where C-22 appears alone.  (*See*, *e.g.*, Ex. K, Ex. L, pp. HE00810, HE00827-HE00829).

### II.B.2    Haynes C-22 mark is famous

In order to determine whether Haynes' C-22 mark is famous for purposes of dilution, consideration must be given to the eight non-exclusive criteria set forth in 15 U.S.C. § 1125(c)(1)(A)-(H).  Electralloy relies on its assertion that C-22 is a generic term.  However, the evidence of record clearly points otherwise.  No manufacturer of alloy products uses C-22 or C22 for an alloy composition.

### II.B.2.a    C-22 is distinctive

Electralloy argues that Haynes' C-22 mark now serves as the common term used in the industry to describe a metal of a defined composition, namely, within UNS No. N06022. However, the evidence of record clearly points to the fact that the industry recognizes C-22 as a trademark of Haynes.  (Ex. L, Manning Second Declaration, ¶ 3).  When confronted with various third party improper uses of C-22 in the marketplace, Haynes has sent letters to those third parties requesting correction.  In nearly every instance, the third party has promptly recognized Haynes' trademark rights in its C-22 mark and has corrected the misuse. (Ex. L, Manning Declaration, ¶ 3).  Thus, the evidence of record clearly points to Haynes' C-22 mark being distinctive.

- 21 -

### II.B.2.b    Haynes has used C-22 for over 20 years

The evidence of record indicates clearly indicates that Haynes has used its C-22 designation since 1984.  (Defendant's App. 56, p. 3).  However, Electralloy ignores the fact that Haynes' use of C-22 during this period was virtually exclusive as Haynes held a patent on its C-22 alloy, which patent recently expired.  Haynes has used C-22 as a trademark virtually exclusively for over twenty years for an alloy within UNS No. N06022.  Haynes' use of C-22 cannot be construed as short-lived

### II.B.2.c    Haynes' Advertising

Marketing and advertising of products sold under the C-22 trademark to the relevant purchasers and potential purchasers are not minimal but are significant.  In addition to the brochures specifically directed to C-22 alloy, Haynes has advertised in trade publications, had a booth at several trade shows, and has presented technical papers at industry conferences.  Haynes also has brochures and a website which presents all of its alloys including C-22 alloy.  Haynes has advertised and marketed 36 alloys during the past six years.  Most of Haynes' marketing efforts involve more than one alloy.  The average of Haynes' annual advertising and marketing expenses during the past six years is $1,440,000.00.  Most of those efforts involved C-22 alloy.  If you divide Haynes total marketing and advertising expenses by the 36 alloys Haynes makes (even though C-22 alloy is and has been for the past six years in the top 10 in sales of all Haynes' 36 alloys) it comes out to $40,000.00 per year in advertising and marketing expenses for C-22 alloy.  (Ex. D, Manning Declaration, ¶ 9; Ex. L, Second Manning Declaration, ¶ 2).  Haynes advertising is directed towards its relevant consumer base.  In order for Haynes C-22 mark to be famous, Haynes C-22 mark does not have to be advertised every household in America, but rather can be famous within a particular industry.

The degree of recognition achieved by Haynes' advertising is evidenced by the fact that third party competitors in the industry recognize and respect Haynes' trademark right in its C-22 trademark. (Ex. L, Manning Declaration, ¶ 3 and attachments).

### II.B.2.d    Degree of recognition in the channels of trade

The degree of recognition of Haynes' C-22 trademark is evidenced by the fact that third party competitors and customers recognize Haynes' trademark rights in its mark. (Ex. L, Manning Declaration, ¶ 3 and attachments). There can be no better evidence of a trademark's recognition that having competitors and customers recognize trademark rights in a mark. Even more telling that C-22 is a well-known trademark associated with Haynes is the fact that Mark Lewis, Sales Manager for Melt Products for Electralloy, testified when asked with whom he associates C-22, that "C-22 is a Haynes alloy". (Ex. N, Lewis Dep., p. 18, ln. 18 through p. 19, ln. 14). Thus, it is clear that Haynes' C-22 trademark has a strong degree of recognition in the channels of trade.

The Third Circuit has adopted the "nitch fame" doctrine. *See*, *e.g.*, Times Mirror Magazine, Inc. v. Los Vegas Sports News, LLC, 212 F.3d 157 (3rd Cir. 2000). Thus, Haynes should be entitled at trial to prove its case as to whether or not Haynes C-22 mark has become famous within the relevant purchasing industry. Regardless of Electralloy's opinion of the "nitch fame" doctrine, the Third Circuit has adopted it and it should be applied herein.

In any event, there are disputed material facts with regard to the issue of the degree of recognition achieved by Haynes' C-22 mark, which should be resolved at trial. Thus, Electralloy's motion for summary judgment on Counts 4 and 5 should be denied.

**II.B.3**     **Actual dilution**

The evidence of record clearly shows that Electralloy used C22.  In addition, Electralloy has received purchase orders for C22 or C-22 and has filled it with its own C22, EC22 or GOC22 alloy, rather than an alloy from Haynes. This alone is evidence that Electralloy's use of its designations has caused dilution of the distinctive quality of Haynes' C-22 mark.  In any event, Haynes should have the opportunity to present evidence of dilution at trial.  Haynes is not obligated to present its entire case during discovery, but merely to respond to discovery requests.

There are disputed issues of material fact with regard to the issue of actual dilution that should be resolved at trial.  For this reason, Electralloy's motion for summary judgment on Counts 4 and 5 should be denied.

## CONCLUSION

There is no issue as to any material fact relevant to Counts 1, 2 and 3 of the Complaint. Based upon those undisputed facts, Plaintiff is entitled to a judgment as a matter of law as to Counts 1, 2 and 3 of the Complaint. Defendant's use of C22, EC22 and GOC22 for the same alloy as Haynes sells under its federally registered C-22 mar, constitutes trademark infringement, false designation of origin and unfair competition under Pennsylvania law.

There is a dispute of material facts as to at least whether C-22 is distinctive or well-known and whether there has been actual dilution. Since such facts are material to a determination of Plaintiff's dilution claims (Counts 4 and 5), the dispute over those facts precludes entry of summary judgment as to these counts.

For these reasons, Defendant's Motion for Summary Judgment should be denied. Summary Judgment in favor of Plaintiff on Counts 1, 2 and 3 of the Complaint should be entered.

Respectfully submitted,

BUCHANAN INGERSOLL PC

Dated: October 11, 2005         By: _/s/ Bryan H. Opalko_____
                                    Lynn J. Alstadt
                                    Pa. I.D. No. 23487
                                    Bryan H. Opalko
                                    Pa. I.D. No. 86721
                                    BUCHANAN INGERSOLL PC
                                    301 Grant Street, 20th Floor
                                    Pittsburgh, PA  15219-1410
                                    Phone:  412-562-1632
                                    Fax:  412-562-1041
                                    Attorneys for Plaintiff

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on this 11th day of October, 2005, a true and correct copy of the foregoing PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT was served on the attorneys for Defendant by overnight courier, addressed as follows:

> Timothy D. Pecsenye, Esquire
> Emily Barnhart, Esquire
> Jennifer L. Miller, Esquire
> BLANK ROME LLP
> One Logan Square
> 18th and Cherry Streets
> Philadelphia, PA  19103

> */s/ Bryan H. Opalko*
> Bryan H. Opalko