IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HAYNES INTERNATIONAL, INC., a Delaware corporation, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 04-197(E) |
| v. | ) ) | JURY TRIAL DEMANDED |
| ELECTRALLOY, a Division of G.O. CARLSON, INC., a Pennsylvania corporation, | ) ) ) ) ) | Judge Cohill |
| Defendant. | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S CONCISE
STATEMENT OF UNDISPUTED AND MATERIAL FACTS IN
SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Haynes International, Inc. ("Haynes" or "Plaintiff"), identifies the facts set forth in Defendant's Concise Statement of Undisputed and Material Facts in Support of its Motion for Summary Judgment which are disputed or not disputed and which are material or not material to the Motion for Summary Judgment in like numbered paragraphs as follows:

**Initial Statement**

Throughout its Concise Statement of Facts, Defendant has improperly used C-22 as a noun rather than an adjective. Since C-22 is a registered trademark, Defendant should have said "C-22 alloy" and not "C-22" or "alloy C-22". Where such improper use of "C-22" is the only error in the statement, Plaintiff has indicated that the statement is "Undisputed except as to the improper use of Haynes' registered C-22 trademark." To the extent that the Court adopts any of

Defendant's Concise Statements of Fact, they should be corrected to say "C-22 alloy" rather than "C-22" or "alloy C-22".

Defendant's statements of fact numbered 6, 7, 10, 14, 15, 16, 19, 22, 24, 25, 26, 27, 29 and 30 are based exclusively upon the deposition testimony of Haynes employees and Haynes documents indicating that the testimony and documents are the only evidence as to these facts. Plaintiff disputes these statements because they misstate the testimony. The Court should not regard the indication that these statements are "Disputed" as indicating that the underlying facts are in dispute. Rather the Court should read and accept the testimony as facts not in dispute.

**Plaintiff's Responses to Defendant's Concise Statement of Facts**

1. Undisputed and material.

2. Undisputed and not material.

3. Undisputed and not material.

4. Undisputed except as to the improper use of Haynes' registered C-22 trademark, and material.

5. Undisputed except as to the improper use of Haynes' registered C-22 trademark, and not material.

6. Disputed and not material. Dr. Manning's testimony on the page cited by Electralloy was "Most of the actual order placements go through the service centers." (Defendant's App. 3, Manning Dep., p. 47). Certain orders are sold directly from the mill. The statement improperly uses Haynes' registered C-22 trademark.

7. Disputed and material. Although Haynes has no license agreements that enable manufacturers to use Haynes' C-22 trademark in the United States, customers who purchase and

resell Haynes' C-22 alloy and customers who purchase Haynes' C-22 alloy and fabricate parts from the alloy are permitted to use Haynes' C-22 trademark in connection with the advertising and sale of those products as an indication of the source of the alloy.  (Ex. D, Manning Declaration, ¶ 11).

        8.        Undisputed and not material.

        9.        Undisputed except as to the improper use of Haynes' registered C-22 trademark, and not material.

        10.       Disputed and not material.  The cited testimony says that "Field reps don't typically take an order on a visit."  (Defendant's App. 3, Manning Dep., p. 47) and that "Typically, what would happen is they [the customers] would just call in to the company".  (Defendant's App. 32, Laird Dep., p. 29).  The statement improperly uses Haynes' registered C-22 trademark.

        11.       Undisputed and not material.

        12.       Undisputed except as to the improper use of Haynes' registered C-22 trademark, and not material.

        13.       Undisputed and not material.

        14.       Disputed and material.  Haynes asks some customers and potential customers the intended use of certain alloys.  Typically when a reseller with whom Haynes is not familiar and who will not tell Haynes the end application or country where the product is going, Haynes will not sell to that reseller.  (Defendant's App. 3, Manning Dep., pp. 59-62).  The statement improperly uses Haynes' registered C-22 trademark.

        15.       Disputed and not material.  The cited testimony does not support the statement.  Some Haynes orders are filled with product shipped from the mill and other orders are filled

from product shipped from or picked up at service centers. The witness testified that an acknowledgement of delivery date is sent in the mill direct business, but not for shipments from service centers which ship in a few days. There was no testimony about "exact specifications of the product." (Defendant's App. 3, Manning Dep., p. 56).

16. Disputed and material. As the name indicates, land based turbines are used on land, typically for power generation. They are not used in airplanes. Jet aircraft use a different type of turbine. Haynes' C-22 alloy is used for parts in both types of turbines. The chemical process/waste treatment/environmental industries do more than the processing, disposal and containment of hazardous chemicals. Very few, if any, handle nerve gas. Destruction of nerve gas is at plants that the government is involved in. (Defendant's App. 3, Manning Dep., pp. 30-31). The flue gas desulphurization industry relates to manufacturers of equipment used for air pollution control in power plants that burn coal. (Defendant's App. 32, Laird Dep., p. 82). The statement improperly uses Haynes' registered C-22 trademark.

17. Undisputed except as to the improper use of Haynes' registered C-22 trademark, and material.

18. Undisputed except as to the improper use of Haynes' registered C-22 trademark, and not material.

19. Disputed and not material. The cited deposition testimony does not support the statement. The statement improperly uses Haynes' registered C-22 trademark.

20. Disputed and not material. Defendant's App. 52 is a chart of Haynes' actual sales by fiscal year of C-22 alloy to customers in the United States. Sales in FY 1984, the first year C-22 alloy was sold, total less than four million dollars. It is unclear what is meant by "typically

range." To the extent that sales of C-22 alloy are material, the actual sales per year rather than the range of sales over the life of the product should be considered.

21. Undisputed except as to the improper use of Haynes' registered C-22 trademark, and not material.

22. Disputed and material. Marketing and advertising of products sold under Haynes' C-22 trademark to the relevant purchasers and potential purchasers are not minimal, but are significant. In addition to the brochures specifically directed to C-22 alloy, Haynes has advertised in trade publications, had a booth at several trade shows, and has presented technical papers at industry conferences. Haynes also has brochures and a website which presents all of its alloys, including C-22 alloy. Haynes has advertised and marketed 36 alloys during the past six years. Most of Haynes' marketing efforts involve more than one alloy. The average of Haynes' annual advertising and marketing expenses during the past six years is $1,440,000.00. Most of those efforts involved C-22 alloy. If you divide Haynes' total marketing and advertising expenses by the 36 alloys Haynes makes (even though C-22 alloy is and has been for the past six years in the top 10 in sales of all Haynes' 36 alloys) it comes out to $40,000.00 per year in advertising and marketing expenses for C-22 alloy. (Ex. D, Manning Declaration, ¶ 9; Ex. L, Second Manning Declaration, ¶ 2). Only one witness testified that he did not recall seeing an Electralloy representative at trade shows. Such testimony is not relevant or material. The statement improperly uses Haynes' registered C-22 trademark.

23. Disputed and material. There are hundreds of companies in the United States who purchase alloy product forms within UNS No. N06022 and resell the alloy. The companies listed by Defendant in paragraph 23 are alloy manufacturers. Bohler, Feroni and Krupp, *i.e.*, Krupp VDM, are foreign companies who have no manufacturing facilities in the United States.

Furthermore, there is no evidence that Bohler or Feroni are selling or offering to sell C-22 alloy in the United States. (Defendant's App. 3, Manning Dep., p. 98). The statement improperly uses Haynes' registered C-22 trademark.

24.     Disputed and material. Cabot introduced C-22 alloy.

25.     Disputed and not material. Haynes did use C-22 as a trademark. See, for example, Defendant's App. 1, page HE00064, where there appears next to the bottom picture the phrase "Long-lasting HASTELLOY alloy C-22 sleeve". Since C-22 is now a registered trademark of Haynes, and Electralloy only recently began using C22, the manner in which Haynes used C-22 from 1984 until the end of 1987 is not material.

26.     Disputed and not material. Uses of Haynes' C-22 trademark in the documents identified consistently are used for an alloy manufactured by Haynes. Since C-22 is now a registered trademark of Haynes, the use of C-22 in articles written in 1986 is not material.

27.     Disputed and not material. The internal memorandum relates to use of "C-22" apart from HASTELLOY. The phrase establishing "C-22 as a trademark" refers to using "C-22" in the form "C-22 alloy" rather than "HASTELLOY® alloy C-22".

28.     Disputed and not material. The trademark application claimed a date of first use of "in or around October 29, 1987". (Ex. M, p. HE00345).

29.     Disputed and not material. There was no evidence of record before the trademark Examining Attorney concerning the composition of the products on which the C-22 trademark was used. The initial rejection of C-22 as "merely describes a grade, style or model designation of the goods" was later withdrawn and the C-22 trademark was registered by the United States Patent and Trademark Office. (Ex. A).

30. Disputed and not material. The phrase "The Examiner's initial instinct" is unclear. Apparently, this phrase refers to the descriptiveness rejection quoted in paragraph 30 which was not correct and was withdrawn.

31. Undisputed and not material. The lawsuit also contained claims for patent infringement. (See this Court's docket for Civil Action No. 87-2717.)

32. Undisputed and not material.

33. Undisputed and not material.

34. Disputed and not material. While Haynes does use C-22 in combination with HASTELLOY, Haynes has used C-22 apart from HASTELLOY. See, for example, Exhibit K filed herewith, page 2, Corrosion-Resistant Alloys Nickel-Base table. This often occurs in lists of Haynes' alloys.

35. Disputed and not material. While Haynes does use C-22 in combination with HASTELLOY, Haynes has used C-22 apart from HASTELLOY. See, for example, Exhibit K filed herewith, page 2, Corrosion-Resistant Alloys Nickel-Base table.

36. Disputed and not material. Haynes uses "C-22" apart from other marks. See, for example, Exhibit K filed herewith, page 2, Corrosion-Resistant Alloys Nickel-Base table.

37. Disputed and material. Marketing and advertising of products sold under Haynes' C-22 trademark to the relevant purchasers are not minimal but are significant. In addition to the brochures specifically directed to C-22 alloy, Haynes has advertised in trade publications, had a booth at several trade shows, and has presented technical papers at industry conferences. Haynes also has brochures and a website which presents all of its alloys, including C-22 alloy. Haynes has advertised and marketed 36 alloys during the past six years. Most of Haynes' marketing efforts involve more than one alloy. The average of Haynes' annual advertising and marketing

expenses during the past six years is $1,440,000.00. Most of those efforts involved C-22 alloy. If you divide Haynes' total marketing and advertising expenses by the 36 alloys Haynes makes (even though C-22 alloy is and has been for the past six years in the top 10 in sales of all Haynes' 36 alloys) it comes out to $40,000.00 per year in advertising and marketing expenses for C-22 alloy. (Ex. D, Manning Declaration, ¶ 9; Ex. L, Second Manning Declaration, ¶ 2). Only one witness testified that he did not recall seeing an Electralloy representative at trade shows. Such testimony is not relevant or material. The statement improperly uses Haynes' registered C-22 trademark.

38. Disputed and material. As the deposition testimony cited by Defendant states, Haynes has had a booth at several trade shows, done mailings and has presented technical papers at industry conferences. Haynes also has brochures and a website which presents all of its alloys, including C-22 alloy. Only one witness testified that he did not recall seeing an Electralloy representative at trade shows. Such testimony is not relevant or material.

39. Undisputed and material.

40. Undisputed except as to the improper use of Haynes' registered C-22 trademark, and material.

41. Disputed and material. No manufacturer of an alloy within UNS No. N06022 who operates in the United States uses C-22 for an alloy composition that it manufactures. For a brief period of time, ATI used Nickelvac® C-22 on a webpage. But that use was an error and has been changed to Nickelvac® 22. (Ex. L, Second Manning Declaration, ¶ 3, pages HE00694-HE00696). Corrosion Materials, the author of Manning Dep. Ex. 12, 16 and 25 (Defendant's App. 4, 16 and 20), has corrected its use of C-22 and recognized C-22 as a Haynes trademark. (Ex. L, Second Manning Declaration, ¶ 3, pages HE00719, HE00730). Emerson has

acknowledged that the Technical Monograph 35 does not correctly identify Haynes' C-22 and G-30 trademarks and has ceased distribution of the paper. (Ex. L, Second Manning Declaration, ¶ 3, page HE00765). Penn Machine, author of Laird Dep. Ex. 17 (Defendant's App. 37), apologized for its improper use of C22, acknowledged that C-22 is a Haynes trademark, and corrected its nickel alloy chart. (Ex. L, Second Manning Declaration, ¶ 3, pages HE00823, HE00827 and HE00829). The statement improperly uses Haynes' registered C-22 trademark.

42.    Disputed and material. Many of the third party uses cited by Defendant are by Haynes' customers who have purchased C-22 alloy products from Haynes and are reselling those products. To the extent that such uses have failed to identify C-22 as a Haynes trademark, Haynes has notified the user and the documents have been corrected. (Ex. L, Second Manning Declaration, ¶ 3). The reference to the "Alloy Tree" book (Defendant's App. 17) is an abstract of a publication which was not produced by Defendant. Such hearsay is unreliable and not the best evidence.

43.    Disputed and material. Whenever Haynes discovers a third party misusing C-22 or another of it trademarks, or using C-22 or another Haynes trademark for products not made by Haynes, the company notifies the third party of the infraction and demands correction. In nearly every instance the third party has corrected the misuse or stopped the infringement after receiving such notice. (Ex. L, Second Manning Declaration, ¶ 3).

44.    Undisputed and not material that Haynes does not have a written policy relating to policing C-22. The remainder of the statement is disputed and not material. The deposition testimony cited by Defendant for the statement that "employees designated in charge of protection of the mark have stated that they do not proactively review third party uses that might

be infringing" does not say this.  Dr. Manning testified "Any time we see a misuse of a mark we get a hold of our attorney."  (Defendant's App. 3, Manning Dep., p. 137).

     45.     Undisputed and material.

     46.     Undisputed and not material.

     47.     Undisputed and not material.

     48.     Disputed and material.  Several articles written by Haynes authors and other authors have been published by others and discuss Haynes' C-22 alloy.  See, for example, the papers published in "Metallurgical Transactions" submitted by Defendant as Appendices 29 and 30.  The statement improperly uses Haynes' registered C-22 trademark.

     49.     Disputed and material.  Haynes has produced evidence of sales and marketing of its C-22 alloy, as well as third party papers and publications which identify C-22 as a trademark of Haynes.  Moreover, when asked where he would refer a person who seeks to order C-22 alloy, Mark Lewis, a Marketing Manager for Electralloy, said Haynes. (Ex. N, Lewis Dep., p. 19).

     50.     Undisputed and material.

     51.     Undisputed, but incomplete, and material.  Electralloy also uses, or has used, C22 and GOC22 as designations for this alloy composition. (Ex. B and J; Defendant's App. 45, Lewis Dep., p. 70; Defendant's App. 40, Flower Dep., p. 40).

     52.     Undisputed and not material.

     53.     Disputed and material.  Electralloy has a webpage which contains its capabilities sheet and a general brochure which lists the alloy as C22, EC22 and/or GOC22.  These brochures are distributed to customers and potential customers.  (Ex. B, C and J; Defendant's App. 45, Lewis Dep., pp. 24 and 70; Defendant's App. 40, Flower Dep., p. 40).

     54.     Undisputed and material.

55.     Disputed and not material. The cited testimony refers to past sales of EC22: "The only product we produce is when customers came to us and asked us to produce it." (Defendant's App. 43, Weaver Dep., p. 34).   Electralloy also uses or has used C22 and GOC22 as designations for this alloy composition.  (Ex. B and J; Defendant's App. 45, Lewis Dep., p. 70; Defendant's App. 40, Flower Dep., p. 40).

56.     Undisputed and material.

57.     Disputed and material.  To date, Electralloy has not produced a list of its sales which has been verified under oath or made a statement under oath that all sales records have been produced.  Therefore, Plaintiff does not know if sales have been made to others.

58.     Undisputed and material, except as to statement that "Electralloy does not sell EC22 to end users."  The record does not support the statement that: "Electralloy does not sell EC22 to end users."  Indeed, Electralloy's sales manager for melt products testified that he did not know what his customer Enpar did with the alloy that it purchased. (Defendant's App. 45, Lewis Dep., p. 40).  It appears from the company website that Sandvik is an end user of this type of alloy.

59.     Disputed and not material.  The record does not support the last sentence in this paragraph.

60.     Disputed and material.  The purchase orders show that the material is purchased in standard forms such as ingot, wire and coil, not custom made.  (Defendant's App. 48).  There was no testimony or other evidence that EC22 (or C22 or GOC22) is expensive.  The cited testimony of Mr. Weaver does not support the last sentence of the paragraph.

61.     Disputed and material.  None of the witnesses produced by Electralloy in response to Plaintiff's Rule 30(b)(6) request selected EC22 nor knew who chose it.  They did

testify that Electralloy has used EC followed by a number for other alloys. (Defendant's App. 43, Weaver Dep., pp. 26-27; Defendant's App. 44, Rudolph Dep., p. 47; Defendant's App. 45, Lewis Dep., p. 64). Electralloy's president further testified that any designation could have been selected for the alloy composition without affecting sales of the alloy. (Defendant's App. 44, Rudolph Dep., p. 47).

62.     Disputed and not material. Electralloy also uses, or has used, C22 and GOC22 as designations for this alloy composition. (Ex. B and J; Defendant's App. 45, Lewis Dep., p. 70; Defendant's App. 40, Flower Dep., p. 40). On the capabilities chart (Defendant's App. 47), EC22 does not appear in close proximity to any other mark.

63.     Undisputed and material.

64.     Undisputed and material.

65.     Undisputed and material.

66.     Disputed and material. Documents produced by Electralloy show that Electralloy sold its EC22 and C22 alloy to fill orders for C-22 alloy. (Ex. Q).

67.     Disputed and material. There is substantial evidence of likelihood of confusion. Electralloy is using, or has used, C22, EC22 and GOC22 for the same alloy composition as Haynes' C-22 alloy, sold in the same product forms (bar and wire), to the same customers and potential customers. Like Haynes, Electralloy has promoted its alloy using brochures, product sheets and a website. (Ex. B and J; Defendant's App. 47, 48 and 52).

68.     Disputed and material. Only two of Electralloy's direct customers have said they are not confused. These customers resell the alloy in various forms to others. Enpar distributes, fabricates and makes semi-finished metal alloy products. (Defendant's App. 41, Trenkmann Declaration, ¶ 2). Arcos manufactures welding consumables. (Defendant's App. 42, Wehr

Declaration, ¶ 2). The customers of Arcos and customers of other buyers of Electralloy's C22 and EC22 alloy may have been confused when buying products from the customers of Electralloy, particularly if the sale was made in response to an order for C-22 alloy. (Ex. D, Manning Declaration, ¶ 13).

69.     Disputed and material. To date, Electralloy has not produced a list of its sales which has been verified under oath or made a statement under oath that all sales records have been produced. Therefore, Plaintiff does not know if sales have been made to "only five customers."

70.     Disputed and not material. The declaration of Harry Wehr says that when purchasing UNS N06022 alloy from Electralloy or others, Arcos requests on the purchase order 622, EC22 UNS N06022, C22 or C-22. (Defendant's App. 42, Wehr Declaration, ¶ 7). However, the purchase orders from Arcos to Electralloy use only 622 and C22. (Defendant's App. 48). Enpar is a German company and all sales to Enpar were shipped to Europe. (Defendant's App. 48, p. EC 0034; Defendant's App. 45, Lewis Dep., pp 39-40). Thus, the statement of Mr. Wehr is contradicted by the orders themselves and is not probative as it violates the best evidence rule. The declaration from Mr. Trenkmann is irrelevant because there is no evidence that Enpar is operating in the United States. Electralloy's sales manager for melt products did not know of any Enpar operations in the United States. (Defendant's App. 45, Lewis Dep., p. 39).

71.     Undisputed and material.

72.     Undisputed and material.

**Plaintiff's Additional Facts Pursuant to Local Rule 56.1.C.1.c**

73. Electralloy has used the designations C22, EC22 and GOC22 in the sale of alloy products within UNS No. N06022. (Ex. B and J; Ex. O, Weaver Dep., pp. 37-38).

74. Allegheny Technologies, Inc. is an alloy manufacturer. On September 9, 2005, Plaintiff sent Allegheny Technologies a letter regarding their misuse of Haynes' federally registered C-22 trademark. In response, Allegheny Technologies has removed the reference to "C 22" on its website, and has indicated that its use was inadvertent and unintentional. (Ex. L, Manning Second Declaration, ¶ 3, pp. HE00687-HE00696).

75. Cbol Corporation is a customer of Haynes. On September 12, 2005, Haynes sent Cbol a letter regarding their misuse of Haynes' federally registered C-22 trademark. In response, Cbol has corrected its web pages to correct the misuse and indicate that C-22 is a registered trademark of Haynes. (Ex. L, Manning Second Declaration, ¶ 3, pp. HE00704-HE00716).

76. Corrosion Materials is a customer of Haynes. On September 9, 2005, Haynes sent Corrosion Materials a letter regarding their misuse of Haynes' federally registered C-22 trademark. Corrosion Materials has responded by correcting its brochures and website to remove the reference to C-22. Additionally, Corrosion Materials recognized the more than substantial similarity between the designations C-22 and C22. (Ex. L, Manning Second Declaration, ¶ 3, pp. HE00717-HE00740). Ron Campbell of Corrosion Materials also agreed to correct the materials of a related company CML Alloys. (Ex. L, Manning Second Declaration, ¶ 3, p. HE00730).

77. Fast Alloys, a customer of Haynes, has corrected its website to reflect that C-22 is a registered trademark of Haynes. (Ex. L, Manning Second Declaration, ¶ 3, pp. HE00741-HE00743).

78. Fisher-Rosemount Systems, Inc. is a customer of Haynes. On September 13, 2005, Haynes wrote Fisher-Rosemont regarding their misuse of Haynes' federally registered C-22 trademark. In response, Fisher-Rosemount acknowledged that Haynes' federally registered trademark C-22 was not correctly identified in the document at issue, and has removed this document from its website and has ceased all distribution. (Ex. L, Manning Second Declaration, ¶ 3, pp. HE00744-HE00765).

79. High Performance Alloys, Inc. is a customer of Haynes. On September 12, 2005, Haynes wrote High Performance regarding their misuse of Haynes' federally registered C-22 trademark. In response, High Performance Alloys has indicated that they have initiated a program to make the necessary changes to correct all misuse of Haynes' federally registered C-22 trademark. (Ex. L, Manning Second Declaration, ¶ 3, pp. HE00766-HE00776).

80. Instrument Associates, Inc. is a reseller of alloys. On September 12, 2005, Haynes wrote to Instrument Associates regarding their misuse of Haynes' federally registered C-22 trademark. In response, Instrument Associates apologized for the oversight in using Haynes' trademarks and have removed all references to Haynes' C-22 trademark. (Ex. L, Manning Second Declaration, ¶ 3, pp. HE00777-HE00784).

81. J.M. Canty, Inc. is a customer of Haynes. On September 12, 2005, Haynes sent J.M. Canty a letter regarding their misuse of Haynes' federally registered C-22 trademark. In response, J.M. Canty has informed Haynes that it will continue to use the name C22 in their literature. Haynes is taking steps to initiate legal action against J.M. Canty. (Ex. L, Manning Second Declaration, ¶ 3, pp. HE00785-HE00794).

82. Marphil, International is a reseller of alloys. On September 9, 2005, Plaintiff wrote to Marphil, International their misuse of Haynes' federally registered C-22 trademark. In

response, Marphil has indicated that they will cease use of Haynes' federally registered C-22 trademark and has apologized for their misuse. (Ex. L, Manning Second Declaration, ¶ 3, pp. HE00795-HE00796).

83.    National Specialty Alloys, Inc. is a reseller of alloys. On September 13, 2005, Haynes wrote to National Specialty Alloys, Inc. regarding their misuse of Haynes' federally registered C-22 trademark. In response, National Specialty Alloys has made the requisite changes to its website to indicate that C-22 is a registered trademark of Haynes. (Ex. L, Manning Second Declaration, ¶ 3, pp. HE00797-HE00805).

84.    Newman Flange & Fitting Co. is a customer of Haynes. On September 12, 2005, Haynes sent Newman Flange a letter regarding their misuse of Haynes' federally registered C-22 trademark. In response, Newman Flange has made the appropriate correction to its website to indicate that C-22 is a registered trademark of Haynes. (Ex. L, Manning Second Declaration, ¶ 3, pp. HE00806-HE00810).

85.    Oxford Alloys, Inc. is a customer of Haynes. On September 12, 2005, Haynes sent Oxford Alloys a letter regarding their misuse of Haynes' federally registered C-22 trademark. In response, Oxford Alloys has apologized to Haynes for its misunderstanding related to its trademark use, and has begun making changes to correct its misuse of C-22. (Ex. L, Manning Second Declaration, ¶ 3, pp. HE00811-HE00816).

86.    Penn Machine Works, Inc. is a customer of Haynes. On September 12, 2005, Haynes sent Penn Machine a letter regarding their misuse of Haynes' federally registered C-22 trademark. In response, Penn Machine has apologized to Haynes for utilizing Haynes' federally registered trademark. Penn Machine has also made the necessary changes to their website to

include a statement that C-22 is a registered trademark of Haynes.  (Ex. L, Manning Second Declaration, ¶ 3, pp. HE00817-HE00834).

    87.    TW Metals, Inc. is a customer of Haynes.  On September 12, 2005, Haynes sent TW Metals a letter regarding their misuse of Haynes' federally registered C-22 trademark.  In response, TW Metals has corrected the misuse of Haynes' C-22 trademark on its website.  TW Metals has undertaken steps to correct its brochure, with the brochures to be corrected no later than January 1, 2006.  (Ex. L, Manning Second Declaration, ¶ 3, pp. HE00835-HE00853).

    88.    Arcos Industries uses the designation Alloy 22 for products made from alloy compositions within UNS No. N06022.  (Ex. L, Manning Second Declaration, ¶ 3, p. HE00854).

    Respectfully submitted,

    BUCHANAN INGERSOLL PC

Dated:  October 11, 2005    By: */s/ Bryan H. Opalko*
    Lynn J. Alstadt
    Pa. I.D. No. 23487
    Bryan H. Opalko
    Pa. I.D. No. 86721
    BUCHANAN INGERSOLL PC
    301 Grant Street, 20th Floor
    Pittsburgh, PA  15219-1410
    Phone:  412-562-1632
    Fax:  412-562-1041
    Attorneys for Plaintiff

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned certifies that on this 11th day of October, 2005, a true and correct copy of the foregoing PLAINTIFF'S RESPONSE TO DEFENDANT'S CONCISE STATEMENT OF UNDISPUTED AND MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT was served on the attorneys for Defendant by overnight courier addressed as follows:

> Timothy D. Pecsenye, Esquire
> Emily Barnhart, Esquire
> Jennifer L. Miller, Esquire
> BLANK ROME LLP
> One Logan Square
> 18th and Cherry Streets
> Philadelphia, PA  19103

> */s/ Bryan H. Opalko*
> Bryan H. Opalko