**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| HAYNES INTERNATIONAL, INC., | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 04-197(E) |
| | ) |
| v. | ) JURY TRIAL DEMANDED |
| | ) |
| ELECTRALLOY, a Division of G.O. | ) |
| CARLSON, INC., | ) Judge Cohill |
| | ) |
| Defendant. | ) |

**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION
TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON
COUNTS I AND II OF ITS COMPLAINT AND IN SUPPORT OF DEFENDANT'S
MOTION TO STRIKE THE DECLARATION OF PAUL MANNING**

**BLANK ROME LLP**

Timothy D. Pecsenye
Dennis P. McCooe
Emily J. Barnhart
One Logan Square
Philadelphia, PA 19103
(215) 569-5619

Attorneys for Defendant

# **TABLE OF CONTENTS**

Page

TABLE OF CONTENTS.............................................................................................................. i

TABLE OF AUTHORITIES ...................................................................................................... iii

PRELIMINARY STATEMENT ...................................................................................................1

RESPONSIVE CONCISE STATEMENT ...................................................................................4

ARGUMENT ................................................................................................................................4

I.      PLAINTIFF CANNOT MEET ITS BURDEN UNDER FED. R. CIV. P. 56 ...................4

        A.      The Manning Declaration Must Be Stricken. ..........................................................5

                1.      Manning Lacks Personal Knowledge. .........................................................6

                2.      The Declaration Does Not Rely on Admissible Evidence...........................8

                3.      Manning Is Not Competent...........................................................................9

II.     COUNTS I AND II MUST BE DISMISSED BECAUSE C-22 IS GENERIC ...............10

III.    COUNTS I AND II MUST BE DISMISSED BECAUSE THERE IS NO
        LIKELIHOOD OF CONFUSION .....................................................................................10

        A.      Confusion is Not Likely Because the Parties' Marks Are Dissimilar. .................12

                1.      Electralloy Does Not Use C22...................................................................13

                2.      The Dissimilarities Between the Parties' Marks Make Confusion
                        Unlikely......................................................................................................15

        B.      C-22 is a Weak Mark. ...........................................................................................17

        C.      Plaintiff Fails to Prove the Remaining Likelihood of Confusion  Factors
                Weigh In Its Favor. ...............................................................................................20

                1.      Plaintiff Has Not Shown the High Degree of Customer Care  and Purchase
                        Price Indicate That Confusion is Likely. ...................................................20

                2.      The Lengthy Coexistence Without Confusion Indicates Confusion is
                        Unlikely......................................................................................................21

i

|  | 3. | Plaintiff Provides No Evidence of Bad Faith. | 21 |

|  | 4. | Plaintiff Admits It Has No Evidence of Actual Confusion | 22 |

|  | 5. | None of the Remaining Factors Indicate a Likelihood of Confusion Either | 24 |

| CONCLUSION | | | 25 |

022664.00115/11474043v.2

## TABLE OF AUTHORITIES

### FEDERAL CASES

A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc., 237 F.3d 198 (3d Cir.
2000) ........................................................................................................................5, 17

Advantage Rent-A-Car, Inc. v. Enterprise Rent-A-Car, Co., 238 F.3d 378 (9th
Cir. 2001) ........................................................................................................................19

American Express Company v. American Express Limousine Service Ltd., 772 F.
Supp. 729 (E.D.N.Y. 1991)..........................................................................................16

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)....................................................4, 5

Arnold M. Diamond, Inc. v. Gulf Coast Trailing Co., 180 F.3d 518 (3d Cir. 1999)...........5

Automatic Radio Manufacturing Co. v. Hazeltime Research, Inc., 339 U.S. 827
(1950)................................................................................................................................6

Avery Dennison Corp. v. Sumpton, 189 F.3d 868 (9th Cir. 1999)....................................19

Burke-Parsons-Bowlby Corp. v. Appalachian Log Homes, Inc., 871 F.2d 590 (6th
Cir. 1989). .......................................................................................................................19

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) ....................................................................5

Chase Manhattan Bank, USA, N.A. v. Freedom Card, Inc., 333 F. Supp.2d 239
(D. Del. 2004) ................................................................................................................23

Checkpoint System, Inc. v. Check Point Software Techs, Inc., 269 F.3d 270 (3d
Cir. 2001) ....................................................................................................................5, 10

Commerce Bancorp, Inc. v. BankAtlantic, 285 F. Supp.2d 475 (D.N.J. 2003)....................5

Commerce National Insurance Serv. Inc. v. Commerce Insurance Agency Inc., 55
U.S.P.Q. 2d 1098 (3rd Cir. 2000) .................................................................................12

Cummings v. City of Akron, 418 F.3d 676 (6th Cir. 2005) ...............................................12

Fisons Horticulture, Inc. v. Vigoro Industrial, Inc., 30 F.3d 466 (3d Cir. 1994)...............16

Ford Motor Co. v. Summit Motor Products, Inc., 930 F.2d 277 (3d Cir. 1991)................16

iii

Fowler v. Tillman, 97 F. Supp. 2d 602 (D.N.J. 2000) ..........................................................7

G.D. Searle & Co. v. Chas. Pfizer & Co., 231 F.2d 316 (7th Cir. 1956)............................9

HBP, Inc. v.  American Marine Holdings, Inc., 290 F. Supp. 2d 1320 (M.D. Fla. 2003) ...............................................................................................................................18

Hickman v. Gem Insurance Co., 299 F.3d 1208 (10th Cir. 2002).....................................12

In re Kwik Lok Corp., 217 USPQ 1245 (TTAB 1983) .....................................................19

Lopez-Carrasquillo v. Rubianes, 230 F.3d 409 (1st Cir. 2000)...........................................7

Lujan v. National Wildlife Federation, 497 U.S. 871 (1990) ..............................................6

Nabisco, Inc. v. Warner-Lambert Co., 220 F.3d 43 (2d Cir. 2000)...................................17

Pamintuan v. Nanticoke Mem'l Hospital, 192 F.3d 378 (3d Cir. 1999) .............................8

Smith v. Ames Department Stores, Inc., 988 F. Supp. 827 (D.N.J. 1997) ........................23

Speziale v. Bethlehem Area School District et al., 266 F. Supp. 2d 366 (E.D. Pa. 2003) ...............................................................................................................................12

Steelman v. Carper, 124 F. Supp. 2d 219 (D. Del. 2000) ...................................................7

TCPIP Holding Co. v. Haar Communications, Inc., 244 F.3d 88 (2d Cir. 2001)..............19

Therma-Scan, Inc. v. Thermoscan, Inc., 295 F.3d 623 (6th Cir. 2002).............................18

Trap Rock Industrial, Inc. v. Local 825, International Union of Operating Engineers, AFL-CIO, 982 F.2d 884 (3d Cir. 1992).........................................................5

Versa Products Co. v. Bifold Co., 50 F.3d 189 (3d Cir. 1995)..........................................13

## FEDERAL STATUTES

Fed. R. Civ. P. 56........................................................................................................4, 6, 9

## MISCELLANEOUS

10B Charles Allen Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice
and Procedure § 2738 (3d ed. 1998) ..............................................................................6

Moore's Federal Practice 3d § 56.14(1) ..............................................................................7

v

## PRELIMINARY STATEMENT

Defendant, Electralloy, a Division of G.O. Carlson, Inc. ("Defendant" or "Electralloy"), by and through its undersigned counsel, respectfully submits this Memorandum of Law in Opposition to Plaintiff, Haynes International, Inc.'s ("Plaintiff" or "Haynes") Motion for Partial Summary Judgment on Counts I and II of its Complaint. Defendant also submits this Memorandum in support of its Motion to Strike the Declaration of Paul Manning.

Plaintiff's Memorandum reflects both a failure to comprehend the material facts and a misapplication of the relevant law. Plaintiff's Statement of Facts rests almost entirely upon conclusory allegations contained in the self-serving declaration from Plaintiff's employee, Paul Manning. Once this speculative declaration is stricken pursuant to Rule 56(e), it becomes immediately clear that Plaintiff is unable to present the requisite proof in support of its claims of trademark infringement.

To begin with, Plaintiff's mark is not valid. As shown in Defendant's Motion for Summary Judgment, the evidence of record demonstrates that "C-22" is generic. Based on the evidence of widespread third-party use of "C-22" and its variants, it is clear that customers in the specialty metals industry understand "C-22" to be a common descriptive term used to identify any corrosion-resistant alloy satisfying industry specification UNS N06022 and containing approximately 22% chromium.

While it is true that in the last few months, Plaintiff sent a flurry of cease and desist letters to third parties in a vain attempt to protect its mark, the damage cannot be undone. Plaintiff's failure to police its mark over the past two decades has allowed C-22 to pass into the

public domain. Plaintiff can no more resurrect C-22 as a trademark than the former owners of "aspirin" or "cellophane" can resurrect these now generic words as their trademarks.

Even if the Court should find that C-22 is not generic, there is no doubt that it is an extremely weak mark entitled to a very narrow scope of protection.

An analysis of the applicable likelihood of confusion factors in light of the evidence of record shows that consumers encountering Haynes' C-22 mark and Electralloy's EC22 designation have not been confused and will not be confused. Contrary to the speculative musings proffered by Plaintiff, the evidence of record reflects the following:

- as actually used in the marketplace, the Parties' marks are dissimilar particularly because both are used in conjunction with house marks (HASTELLOY C-22 vs. Electralloy's EC22), thus making confusion unlikely;

- "C-22" functions as a grade designation for a metal alloy containing approximately 22% chromium and satisfying industry standard UNS N06022, indicating weakness and making confusion unlikely;

- The disclaimer of "22", coupled with extensive third party usage of "22" and "C-22," proves the weakness of the mark and makes confusion highly unlikely;

- the complex and attenuated process by which consumers purchase these goods, the large quantities and dollar amounts of purchases, and the degree of care exercised by consumers in making specialty alloy purchasing decisions obviate the likelihood of confusion;

- the Parties' respective goods may only be purchased by contacting Plaintiff and Defendant directly, thereby making confusion as to source unlikely;

2

- the forms in which Plaintiff's and Defendant's relevant goods are sold are different. For example, Defendant sells ingot and coil rod which Plaintiff does not sell and Plaintiff primarily sells plate and sheet which Defendant does not sell, thus making confusion unlikely;

- the parties' consumer targets differ in that Defendant sells *semi-finished* product to investment foundries and forge shops and Plaintiff sells *finished* products to end users and fabricators dispelling confusion;

- Electralloy adopted "EC22" not as a result of bad faith, but rather to continue its use of its family of "EC___" product designations, which it has been using since the 1970s;

- there is no evidence of actual confusion despite coexistence for several years; and

- evidence from consumers in the industry proves that "C-22" is a generic term that is used to refer to any alloy satisfying UNS N06022 specifications.

Plaintiff's assertions to the contrary, it is evident that Plaintiff is using this litigation in an attempt to create an unlawful *monopoly* over "C" and "22" similar to the lawful monopoly it presumably enjoyed prior to the expiration of its patent for C-22. Plaintiff fails to recognize that trademark law, unlike patent law, does not permit such a monopoly because it would unfairly stifle competition by preventing others in the specialty metals industry from using non-confusing designations, such as EC22 or GOC22, as the descriptive names for alloys that satisfy UNS N06022 specifications. In addition to denying Plaintiff's Motion for Partial Summary Judgment, it is entirely appropriate that Defendant's Motion for Summary Judgment be granted and Plaintiff's Complaint dismissed in its entirety.

3

## RESPONSIVE CONCISE STATEMENT

Pursuant to Local Rule of Civil Procedure 56.1(C)(1), Defendant submits herewith and relies upon its Concise Statement of Facts in Opposition to Plaintiff's Statement of Facts in Support of Its Motion for Partial Summary Judgment. Pursuant to Local Rule of Civil Procedure 56.1(C)(1)(c), directly following Defendant's Statement of Facts in Opposition and commencing with new paragraph numbers is Defendant's Additional Material Facts ("DAMF") that are material to the determination of Plaintiff's Motion for Partial Summary Judgment. All documents referenced in the DAMF are contained in Defendant's Opposing Appendix of Exhibits ("Def.'s Opp. App. ___"), which is being filed contemporaneously with this Opposition.

Defendant also relies herein upon its Concise Statement of Undisputed and Material Facts [Docket No. 19] ("DSOF at ¶__") and supporting Defendant's Appendix of Exhibits [Docket Nos. 23 and 26] (Def.'s App. __"), which were submitted in support of Defendant's Motion for Summary Judgment.

## ARGUMENT

## I.    PLAINTIFF CANNOT MEET ITS BURDEN UNDER FED. R. CIV. P. 56

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute is "genuine" if the evidence would allow a reasonable jury to return a verdict for the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Factual disputes that can affect the outcome of the lawsuit are deemed material. Id. If plaintiff fails to make such a showing with respect to any essential

4

022664.00115/11474043v.2

element on which it bears the burden of proof, defendant is entitled to summary judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

Plaintiff cannot survive summary judgment by insisting on its own interpretation of the facts, or by relying on unsubstantiated allegations, general denials, or vague statements. See Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Engineers, AFL-CIO, 982 F.2d 884, 890 (3d Cir. 1992). Likewise, the existence of a scintilla of evidence in support of Plaintiff's position is insufficient. See Anderson, 477 U.S. at 252. In determining whether summary judgment is warranted, the court is required to view the record, and to draw all reasonable inferences therefrom, in the light most favorable to the non-moving party. See Arnold M. Diamond, Inc. v. Gulf Coast Trailing Co., 180 F.3d 518, 521 (3d Cir. 1999).

To succeed in its claims for federal trademark infringement (Count I) and federal unfair competition and false designation of origin (Count II), Plaintiff must prove that: (1) the C-22 mark is valid and legally protectable; (2) Haynes owns the mark; and (3) Electralloy's use of EC22 is likely to cause confusion concerning the origin of the goods. See Checkpoint Sys., Inc. v. Check Point Software Techs, Inc., 269 F.3d 270, 279 (3d Cir. 2001). Plaintiff bears the burden of proof on all elements. See Commerce Bancorp, Inc. v. BankAtlantic, 285 F. Supp.2d 475, 483 (D.N.J. 2003) (citing A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc., 237 F.3d 198, 210-11 (3d Cir. 2000)). As shown below, Plaintiff cannot establish that C-22 is a valid and protectable mark, or that there is a likelihood of confusion. Accordingly, Plaintiff's Motion must be denied and summary judgment granted in Electralloy's favor.

## A.     The Manning Declaration Must Be Stricken.

Plaintiff's Motion rests almost exclusively upon the self-serving declaration of Paul Manning, a Haynes employee. See generally Pl.'s Brief, Pl.'s Concise Statement of Facts, and

5

022664.00115/11474043v.2

the Declaration of Paul Manning, attached as Exhibit D to Pl.'s Motion (the "Manning Decl.").

Federal Rule of Civil Procedure 56(e) provides as follows:

> [s]upporting . . . affidavits shall be made on personal knowledge,
> shall set forth such facts as would be admissible in evidence, and
> shall show affirmatively that the affiant is competent to testify to
> the matters stated therein. Sworn or certified copies of all papers
> or parts thereof referred to in an affidavit shall be attached thereto
> or served therewith.

Rule 56(e) is intended to prevent a party from simply trying to "replace conclusory allegations of

the complaint or answer with conclusory allegations of an affidavit." Lujan v. National Wildlife

Fed'n, 497 U.S. 871, 888 (1990). Affidavits in support of a motion for summary judgment that

do not comply with all the requirements of Rule 56(e) may not be considered by the court. See

Automatic Radio Mfg. Co. v. Hazeltime Research, Inc., 339 U.S. 827, 831 (1950); 10B Charles

Allen Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2738 (3d

ed. 1998).

The Manning Decl. must be stricken from consideration on Plaintiff's Motion because:

(i) vast portions, including almost the entirety of the material "facts," are not based upon

personal knowledge; (ii) it is not based on documents or other evidence that would be admissible

at trial; and (iii) Manning has not demonstrated that he is competent to testify to the matters

stated therein. Once the Manning Decl. is eliminated from consideration, it becomes

immediately obvious that Plaintiff has no facts to support its Motion.[1]

## 1.    Manning Lacks Personal Knowledge.

It is self-evident that Manning does not have personal knowledge sufficient to support the

material "facts" he asserts in his declaration. For example, Manning purports to have personal

---

[1] Based upon the legal arguments stated herein, Defendant is contemporaneously filing a Motion
to Strike the Declaration of Paul Manning.

6

knowledge regarding alleged events and practices which took place from 1994 through 2000;

even though he admits that he did not work for Haynes at that time. Compare Paragraph 8

(reciting facts occurring in 1996) and Paragraphs 9-11 (reciting facts regarding yearly advertising

expenditures, sales, and policing during the 1994-2000 time period) with Paragraph 3 (stating

that Manning did not work for Haynes from 1994 through 2000). Additionally, the Manning

Decl. includes numerous statements regarding the thoughts, practices and opinions of third party

consumers and customers in the special metals industry for which Manning obviously lacks

personal knowledge.[2] The following chart provides but a few examples of the areas where

Manning lacks personal knowledge regarding the material facts alleged in his declaration.

| ¶ | Alleged Fact | Evidence of Record |
|---|---|---|
| 8 | "In 1996, Haynes registered C-22 as a trademark . . . Haynes filed Affidavits under Sections 8 & 15 of the Lanham Act, which were accepted and acknowledged by the United States Patent and Trademark Office." | Manning did not even work for Haynes in 1996 (see Manning Decl. at ¶ 3). Manning was not involved in the trademark registration process (see Def.'s App. 3, at p. 120, lines 7-13 (Manning Dep.)). Manning had no personal knowledge of the prosecution and opposition history relating Haynes' application to register C-22 (see generally Def.'s App. 3, at pp. 121-34 (Manning Dep.)). |
| 9 | "Since its introduction in 1984, Haynes has advertised and promoted C-22 alloy in brochures, industry publications such as Chemical Engineering, Chemical Processing and Materials Performance, magazines … Haynes annually spends about $10,000.00 to advertise and promote its alloy products sold under its C-22 trademark." | See DSOF at ¶¶ 37-38 (Def.'s Statement of Facts evidencing that Haynes' annual advertising expenditure relating to C-22 is far less and that Haynes does not advertise in industry publications). |
| 9 | "C-22 is well known among purchasers and users of | Plaintiff has no evidentiary support for |

---

[2] The statement included at the end of the Manning Decl. that the foregoing statements are "made on information and belief and are believed to be true" does not satisfy the personal knowledge requirement. See Lopez-Carrasquillo v. Rubianes, 230 F.3d 409, 414 (1st Cir. 2000) ("to the best of my knowledge" is insufficient support for summary judgment); Fowler v. Tillman, 97 F. Supp.2d 602, 607 (D.N.J. 2000) (affidavit based on "information and belief" properly subject of motion to strike); Steelman v. Carper, 124 F. Supp.2d 219, 227 n.25 (D. Del. 2000) ("personal awareness" not the same as personal knowledge); 11 Moore's Federal Practice 3d § 56.14(1)(c).

7

| ¶ | Alleged Fact | Evidence of Record |
|---|---|---|
| | corrosion resistant alloys and is a strong mark." | this assertion. |
| 10 | "The price of Haynes' C-22 alloy is similar to comparable alloys and is dependent upon the quantity ordered." | Plaintiff has no evidentiary support for this assertion. |
| 10 | "The degree of care exercised by consumers often will depend on the price of the alloy which is dictated by the amount purchased." | See DSOF at ¶¶ 6-15, 55, 60 (Def.'s Statement of Facts evidencing high degree of care exercised by sophisticated consumers and expensive nature of purchases). |
| 11 | "Haynes actively polices use of its trademarks by others. Whenever Haynes discovers a third party misusing C-22 or another of its trademarks . . . the company notifies the third party of the infraction and demands correction.  In nearly every instance the third party has corrected the misuse or stopped the infringement after receiving such a notice." | Plaintiff has no evidentiary support for this assertion. Manning did not even work at Haynes from 1994-2000 ((Manning Decl. at ¶ 3). See also DSOF ¶¶ 43-44 and Def.'s App. 3 at pp. 140-41 (Manning Dep.) (Showing Manning's marketing responsibility since only 2001 and his limited knowledge of C-22 policing). |
| 13 | ENTIRE PARAGRAPH. | Plaintiff has no evidentiary support for the assertions or conclusions in this Paragraph. |

## 2.    The Declaration Does Not Rely on Admissible Evidence.

The second requirement of Rule 56 is that assertions made in support of summary

judgment must be of the type of evidence that would be admissible if the affiant were to testify at

trial. Fed. R. Civ. P. 56(e).  If the assertion would not be admissible at trial, it cannot be

considered in support of the motion.  Pamintuan v. Nanticoke Mem'l Hosp., 192 F.3d 378, 387

(3d Cir. 1999).  Among the more egregious and material of these are the following: Manning's

statement that the C-22 mark is a "strong mark"; that Electralloy's EC22 designation is "likely to

cause confusion and mistake;" and that purchasers "may" act in certain ways or be confused

because of Electalloy's designation.  The Manning Decl. is replete with such unsupported

conclusory allegations and speculation:

| ¶ | Examples of Unsupported Conclusory Allegations and Speculation |
|---|---|
| 4 | "We are a leader in the development of new nickel based and cobalt based alloys and methods of manufacturing these alloys." |
| 6 | "The alloy has been widely used and is a very successful product of Haynes." |

8

| 9 | "As a result of Haynes' extensive sales and advertising of its C-22 alloy, C-22 is well known among purchasers and users of corrosion resistant alloys and is a strong mark." |
|---|---|
| 10 | "The degree of care exercised by consumers often will depend on the price of the alloy which is dictated by the amount purchased." |
| 13 | "The use of C22, EC22 and GOC22 by Electralloy for the same alloy that Haynes sells under its registered C-22 trademark is likely to cause confusion and mistake. This is particularly true among purchasers of corrosion resistant alloys who buy from resellers and fabricators." |
| 13 | "Even if the reseller or fabricator identifies the material as EC22 the designation EC22 is so similar to C-22 that the purchasers may not notice the difference or may attribute the difference to a typographical error, believing he or she received Haynes' material" (emphasis added). |
| 14 | "Haynes could suffer irreparable damage" (emphasis added). |

Such conclusory statements and blatant assumptions do not constitute admissible evidence and must be stricken.

### 3.    **Manning Is Not Competent.**

The final requirement under Rule 56(e) is that the affidavit "shows affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e). At best, Manning is competent to testify about his activities during the past four years as Haynes' Director of Marketing. See Pl.'s Exh. D, Manning Decl. at ¶¶ 1-2. Certainly, Manning is not competent to testify regarding Haynes' activities from 1994 to 2000 when he did not work for Haynes. Id. at ¶ 3. Further, nothing about his education or background makes him competent to testify about the alleged strength of a mark, the alleged confusion of consumers, or what third parties "may" do in the marketplace.

Because the Manning Decl. fails to satisfy any of the prerequisites for or in Fed. R. Civ. P. 56(e), it should be given no consideration. See G.D. Searle & Co. v. Chas. Pfizer & Co., 231 F.2d 316, 318 (7th Cir. 1956) ("[a]ffidavits which are inadequate under Rule 56(e) must be disregarded").

9

## II.   COUNTS I AND II MUST BE DISMISSED BECAUSE C-22 IS GENERIC

As more fully discussed in Defendant's Memorandum of Law in Support of Its Motion

for Summary Judgment, C-22 has become a generic term in the specialty metals industry used to

identify a corrosion-resistant alloy satisfying industry standard UNS N06022 specifications and

containing approximately 22% chromium.[3]  Because C-22 has become generic, Plaintiff is

unable as a matter of law to prove that C-22 is a valid and legally protectable mark.  See

Checkpoint, 269 F.3d at 282 ("generic marks do not receive trademark protection"); 800 Spirits

Inc. v. Liquor By Wire, Inc., 14 F. Supp. 2d 675, 679 (D.N.J. 1998) (granting summary judgment

in favor of defendant after finding mark generic because "generic terms receive no trademark

protection".  Accordingly, Plaintiff's Motion for Partial Summary Judgment must be denied.

## III.   COUNTS I AND II MUST BE DISMISSED BECAUSE THERE IS NO LIKELIHOOD OF CONFUSION

Even if Haynes were able to show that C-22 is not generic, Plaintiff's Motion for

Summary Judgment would still fail.  As noted above, once the Manning Decl. is removed from

consideration, Plaintiff is unable to show that there are no genuine issues of material fact

regarding its trademark infringement claims.  Nor are Plaintiff's problems limited to the

worthless Manning Decl. It would appear Plaintiff cribbed the entirety of its legal authority and

related arguments from a brief used in an unrelated *opposition* proceeding before the United

States Patent & Trademark Office's Trademark Trial and Appeal Board (the "TTAB").  See e.g.

Plaintiff's Brief at p. 7 referencing "opposers," the "Trademark Trial and Appeal Board," and the

"Board," as well as pp. 7-10 which contain numerous citations to TTAB opinions and appeals

---

[3] In legal and factual support of this argument, Defendant incorporates herein its discussion and
evidence demonstrating genericism of "C-22" from pages 4-7 of its Memorandum of Law in
support of its Motion For Summary Judgment.

10

from TTAB decisions. At no point does Plaintiff make any effort to explain how the cited TTAB cases are relevant to this trademark infringement suit in federal court.[4]

While it is true that determinations regarding "likelihood of confusion" are made before the TTAB in opposition proceedings, it is axiomatic that the "likelihood of confusion" analysis in a federal trademark infringement action in the Third Circuit (which is based upon an analysis of the parties' use of the marks in commerce) is materially different from an opposition proceeding before the TTAB (in which analysis is somewhat removed from actual use in commerce and is based upon statements in the trademark application being challenged). The legal distinctions can be significant. For example, on page eight of its Memorandum, Plaintiff cites two Federal Circuit opinions (relating to appeals of TTAB opposition decisions) for the proposition that all doubts regarding likelihood of confusion must be resolved in Plaintiff's favor. This is plain wrong. First, as the Plaintiff, Haynes has the burden of proof on all the elements of its prima facie case. Second, all facts, and reasonable inferences therefrom, must be construed in the light most favorable to the non-movant, here Defendant. By relying as it does on TTAB opposition standards and decisions, Plaintiff's entire analysis of likelihood of confusion is skewed and leads to erroneous conclusions.

As discussed in Defendant's Memorandum of Law in support of its Motion for Summary Judgment, and as shown below, a considered analysis of the applicable law in light of the

---

[4] In the few instances in which Plaintiff does **not** cite to TTAB and Federal Circuit TTAB appellate decisions, it cites either no law whatsoever or outdated opinions or opinions from non-controlling jurisdictions. See e.g., Pl.'s Brief at pp. 11-14 (no citations) and pp. 9, 10 and 16 (citations to a 1991 Eastern District of New York case and 11th, 6th and 2d Circuit cases from the late 1980s and early 1990s. To call Plaintiff's brief a "memorandum of law" is a misnomer of the highest order.

11

undisputed factual evidence leads to a conclusion that the likelihood of confusion between C-22 and EC22 is non-existent.[5]

## A.    Confusion is Not Likely Because the Parties' Marks Are Dissimilar.

Plaintiff avers that Electralloy is using the designations C22, EC22 and GOC22, and that all three are confusingly similar to Plaintiff's mark. See Pl.'s Brief at p. 8. Plaintiff provides no evidence to support these claims.

Well past the close of discovery, Plaintiff now raises for the first time the claim that Defendant's use of "GOC22" infringes Plaintiff's "C-22" registration. Given that "GOC' obviously stands for "G.O. Carlson," and that the "22" portion of Plaintiff's mark has been disclaimed by Plaintiff and continues to be widely used by numerous others, it is altogether incomprehensible that Plaintiff should raise this allegation.[6] Moreover, Electralloy does not even use C22.

_____

[5] While Plaintiff's brief does contain the occasional citation to Third Circuit authority (see Pl.'s Brief at p. 8 citing Commerce Nat'l Ins. Serv. Inc. v. Commerce Ins. Agency Inc., 55 U.S.P.Q.2d 1098 (3rd Cir. 2000) for a listing of the likelihood of confusion factors), at no point does Plaintiff ever apply Third Circuit law to its analysis of the likelihood of confusion factors.

[6] Nor is it legally permissible for such a claim to be raised at this late date. Not one allegation in the Complaint or any discovery requests regarding "GOC22" were ever made by Plaintiff, yet Plaintiff asks the Court to make an infringement determination on summary judgment. Given that such claims are not properly before the Court, the Court should ignore Plaintiff's request and all references to "GOC22." See e.g., Cummings v. City of Akron, 418 F.3d 676, 681 (6th Cir. 2005) (a party may not seek summary judgment on allegations not raised in the counts recited in the complaint, "and this Court sees no need to expand upon issues which were not raised"); Hickman v. Gem Ins. Co., 299 F.3d 1208, 1216 (10th Cir. 2002) ("[t]o the extent that Plaintiffs are moving for summary judgment on these statutory violations, the motion is denied because Plaintiffs have not alleged violations of these statutes in their Complaint"); Speziale v. Bethlehem Area School District et al., 266 F. Supp.2d 366, 371 n.3 (E.D. Pa. 2003) ("Plaintiff's counsel cannot reasonably expect to amend the complaint after the close of discovery merely by raising new arguments in [summary judgment] papers. I will therefore not address plaintiff's [never before raised] arguments").

12

### 1.    **Electralloy Does Not Use C22.**

In support of its averment that Electralloy is using "C22", Plaintiff cites an outdated capabilities sheet that is no longer accessible by customers. See Pl.'s Brief at p. 5; Pl.'s Exhibit B (which is Exhibit B to its Complaint); Pl.'s Exhibit J. Plaintiff asserts that its employee, Lee Flower, retrieved this capability sheet from Electralloy's current website on July 15, 2004 and August 30, 2005. Id. Plaintiff has no evidence that anyone other than Mr. Flower has viewed this sheet on Defendant's website. See Versa Prods. Co. v. Bifold Co., 50 F.3d 189, 200 (3d Cir. 1995) (plaintiff can prevail on its claims "only if it shows that an appreciable number of ordinarily prudent consumers of the type of product in question are likely to be confused as to the source of the goods").

Eugene Hynes, Electralloy's Senior Programmer, is responsible for the content and maintenance of Electralloy's website <www.electralloy.com>. See DAMF at ¶ 1 (citing Decl. of Eugene Hynes at ¶ 2, attached as Def.'s Opp. App. A). Electralloy's website has a "Capabilities" section, which contains a two-page sheet listing Electralloy's "Alloys and Capabilities" (hereinafter, the "Capabilites Sheet"). See DAMF at ¶ 2. The Capabilities Sheet, which is dated August 28, 2001, contains a reference under "Electrode Slag Remelt (ESR)" to "EC22." See DAMF at ¶ 3. Persons viewing Electralloy's website may also download a PDF version of each page of the same two-page Capabilities Sheet that is embedded within the Capabilities section of Electralloy's website. See DAMF at ¶ 4. As indicated on Electralloy's website, the content of the Capabilities section of Electralloy's website, including the two-page capabilities sheet referencing "EC22" was last updated April 03, 2003. See DAMF at ¶ 5. Whenever Mr. Hynes updates portions of Electralloy's website, he also updates the information at the bottom of the section indicating the last modification of that portion of the website. See DAMF at ¶ 6. The

022664.00115/11474043v.2

new and most up-to-date version of Electralloy's Capabilities Sheet, which references EC22 (not

C22), has been available on Electralloy's website since at least as early as April 3, 2003.[7]  See

DAMF at ¶ 7.

Electralloy's website also contains a "Data Bulletins" section, which includes

downloadable, PDF versions of various Electralloy bulletins. See DAMF at ¶ 8. There are no

bulletins related to C22. There is, however, a bulletin entitled "Nickel-Based High Performance

Alloy EC22 Product Data Bulletin" (hereinafter, the "EC22 Bullentin"). See DAMF at ¶ 9. The

EC22 Bulletin, which is dated August 1, 2003, has been available on this section of Electralloy's

website since at least as early as August 3, 2003. See DAMF at ¶ 10.

As Defendant's employees and officers have testified, the earlier, brief inclusion of

"C22" on the Capabilities Sheet was a typographical error. Upon discovery, this error was

rectified. Employees of Electralloy were told to cease use of the old Capabilities Sheet and to

use only the new sheet dated on August 28, 2001. See DAMF at ¶ 11. Most importantly,

although the old version of the Capabilities Sheet did mistakenly refer to "C22," the

uncontroverted facts show that Defendant never made any sales in connection with its brief use

of "C22." The first sale of an alloy complying with UNS NO6022 specifications did not occur

until 2002, well after the introduction of the revised Capabilities Sheet which lists only "EC22."

See DAMF at ¶ 12.

_____

[7] Indeed, the print outs appearing at Pl.'s Exhibits B and J could not have been printed from the
then-current versions of Electralloy's website available to web browsers on those dates. The old
Capabilities Sheet Plaintiff refers to has been removed from the web. While Mr. Flower may
have printed those pages by typing in an exact web reference to a static version of that page
archived on a version of Electralloy's website no longer in use, there is no evidence that
consumers who go to Electralloy's website or who generally searching for Electralloy on the web
would view anything other than Electralloy's current website.

14

Finally, Plaintiff cites to its Exhibit Q[8] in an attempt to make the argument that

Electralloy has made widespread use of "C22," and did so in bad faith. See Pl.'s Brief at pp. 12-

13. An objective reading of the evidence shows that Defendant's use was far from sinister.

These documents show that Electralloy's use occurred when an employee made a simple

typographical error in regards to a single transaction. The Electralloy documents in Exhibit Q

(see bates pgs. EC18-EC24, EC26-EC29) relate to the single customer order (336196) and heat

number (E2593), created by the same employee (Duane E. Kline) within two consecutive days

(1/27-28/04).[9] See Def.'s App. 45, at pp. 83-85 (Electralloy's employee, Mark Lewis'

deposition testimony that these documents relate to the same heat and customer order). A single

error made by one employee in a single transaction does not an infringement make, particularly

given that Plaintiff has no evidence that product in question was labeled in a manner other than

Electralloy's typical practice of labeling the product "EC22."

## 2.    The Dissimilarities Between the Parties' Marks Make Confusion Unlikely.

Plaintiff's assertion that EC22 is likely to be confused with C-22 fares no better. Plaintiff

relies upon numerous TTAB opposition decisions in support of its novel theory that there is, *de*

*jure*, a likelihood of confusion in all instances in which a mark entirely "incorporates" another

mark. See Pl.'s Brief, at p. 9. There is neither factual nor legal support for Plaintiff's assertion.

Plaintiff's argument ignores the uncontroverted evidence that "EC", as used in "EC22"

unmistakably refers to "Electralloy Corporation," and that EC22 is part of a family of "EC"

---

[8] Exhibit Q references both documents originating from Electralloy's customers, as well as documents originating with Electralloy.

[9] Citations to this order could not evidence consumer confusion in any event. This customer, Enpar, provided a declaration that it has never been confused with respect to its EC22 purchases, and that it always intended to make purchases from Electralloy, not Haynes.

prefixed designations which Electralloy has been using since the 1970s. See DSOF at ¶ 61. The "EC," and particularly the "E," portion of Defendant's designation is the primary and dominant feature a viewer sees in this designation. Thus, this case is decidedly not like American Express Company v. American Express Limousine Service Ltd., 772 F. Supp. 729 (E.D.N.Y. 1991), where the Court held that the inclusion of "subordinate matter" does not avoid a finding of likelihood of confusion. See Pl.'s Brief at p. 9. Given the longstanding association between EC and Electralloy, the "EC" portion of "EC22" can hardly be characterized as subordinate. Far from proving that Electralloy's use of "EC" makes confusion likely, the long association of "EC" with Electralloy Corporation eviscerates any likelihood of confusion between Plaintiff's C-22 mark and Defendant's EC22 designation.

In analyzing the degree of similarity between Haynes' C-22 mark and Electralloy's EC22 designation, the test is whether the marks create the "'same overall impression,' when viewed separately." Fisons Horticulture, Inc. v. Vigoro Indus., Inc., 30 F.3d 466, 477 (3d Cir. 1994).[10] As such, confusion "should be determined by viewing the two marks from the perspective of an ordinary consumer of the goods or services." Ford Motor Co. v. Summit Motor Products, Inc., 930 F.2d 277, 293 (3d Cir. 1991). Contrary to Plaintiff's improper side-by-side analysis of the Parties' marks, the focus must be on the overall impression of the marks as the typical consumer would find them in the actual marketplace.

___

[10] First, the Court will examine the sight, sound and meaning of the conflicting marks. Aside from the common use of the generic descriptor, "22," there are obvious differences in the appearance and sound of Plaintiff's "C-22" mark and Defendant's "EC22" designation. See Defendant's Memorandum of Law in Support of its Motion for Summary Judgment at pp. 8-11 for a more detailed discussion of the differences in the sight, sound and meaning of the Parties' marks.

16

C-22 and EC22 must be evaluated in the context of the Parties' common practice of using prominently displayed house marks. Not only does Plaintiff claim to imprint every metal alloy product with "HASTELLOY® C-22®" before shipping it to customers (see DSOF at ¶ 34), but its documents reflect that "C-22" almost always appears in conjunction with the house mark "HASTELLOY" and on documents containing Plaintiff and its predecessor's well-known trade names: "HAYNES" and "CABOT" (see DSOF at ¶¶ 35-36). Similarly, Electralloy sells its product as "Electralloy's EC22," and its sales documents prominently feature the Electralloy house mark. See DSOF at ¶ 62. Use of these house marks all but eliminates the already low likelihood of confusion. See A & H Sportswear, 237 F.3d at 218 ("affixing a well-known housemark. . . can help diminish the likelihood of confusion"); Nabisco, Inc. v. Warner-Lambert Co., 220 F.3d 43, 47 (2d Cir. 2000) ("prominent use of [defendant's] DENTYNE house mark significantly reduces, if not altogether eliminates, any likelihood of consumer confusion").

When due consideration is given to the overall impression of the designations as found in the marketplace, no reasonable jury could find that Haynes' C-22 mark is so similar to Electralloy's EC22 designation as to create a likelihood of confusion.

## B.    C-22 is a Weak Mark.

Plaintiff's argument regarding the alleged strength of C-22 typifies Plaintiff's entire Memorandum. See Pl.'s Brief at pp. 10-11. Plaintiff not only proffers no evidence, it cites no law. A thoughtful consideration of the facts of record in light of the applicable law reveals the truth – C22 is a weak mark, entitled to limited protection at best, if any.

The undisputed evidence shows the following: C-22 was originally adopted as the product name, not a trademark, for a metal alloy containing approximately 22% chromium that meets UNS N06022 specifications (DSOF at ¶ 25); Plaintiff was forced to disclaim the "22"

17

portion of its mark (DSOF at ¶¶ 28-33); Plaintiff has conducted almost no advertising of C-22 (DSOF at ¶¶ 37-38); and Plaintiff stood by idly while competitors adopted C-22 or similar designations to describe their own UNS N06022-compliant goods (DSOF at ¶¶ 42-45). If it were not for the wholly unsupported and inadmissible "evidence" from Mr. Manning (e.g. "C-22 is well known among purchasers and users of corrosion resistant alloys and is a strong mark") (see Pl.'s Brief at p. 11; Exhibit D, Manning Decl. at ¶ 9), Plaintiff would have no evidence at all regarding the alleged strength of its mark.

While Plaintiff cites the incontestability of its trademark registration as indicia of strength, the law makes clear that incontestability relates to validity, not strength. See Therma-Scan, Inc. v. Thermoscan, Inc., 295 F.3d 623, 632 (6th Cir. 2002) (incontestable status of plaintiff's mark was not "particularly relevant to the ultimate issue of whether confusion is likely to occur" where mark was "descriptive"and lacked "broad public recognition"); HBP, Inc. v. American Marine Holdings, Inc., 290 F. Supp.2d 1320, 1329 (M.D. Fla. 2003) ("incontestability only addresses the first part of the infringement analysis, that is, whether a mark is valid, entitled to protection, and owned by a plaintiff; incontestable status – somewhat of a misnomer – does not mean that a mark's strength cannot be attacked"). Any presumption of strength is easily overcome by evidence of rampant third party usage of C-22 and similar terms to designate an alloy that satisfies UNS N06022 specifications. See DSOF at ¶ 26, 42-45.

Plaintiff's discussion that its expenditures on advertising proves strength is, in a word, absurd. Plaintiff cites no case law for the proposition that voluminous advertising expenditures equates to a strong mark. See Pl.'s Brief, at pp. 10-11 (claiming Plaintiff spends $10,000 per year in advertising C-22 and that, as a result, C-22 is a strong mark). Even if Plaintiff spent that amount on advertising (the evidence of record reflects that it spent considerably less (see DSOF

18

at ¶ 22)), such a paltry figure is woefully short of the amount of advertising that might lead to an inference that the mark is famous or strong. See e.g., TCPIP Holding Co. v. Haar Communications, Inc., 244 F.3d 88, 99-100 (2d Cir. 2001) (evidence of \$280 million in annual sales and advertising expenditures in the tens of millions found insufficient to prove fame); Advantage Rent-A-Car, Inc. v. Enterprise Rent-A-Car, Co., 238 F.3d 378, 382 (9th Cir. 2001) (advertising expenditures in excess of \$130 million insufficient to prove fame); Avery Dennison Corp. v. Sumpton, 189 F.3d 868, 879 (9th Cir. 1999) (no fame found where mark was used for over seventy years, annual sales exceeded 3\$ billion and annual advertising costs exceeded \$5 million).[11]

Ultimately, Plaintiff's entire discussion of its meager advertising as proof of strength is misguided for another reason. Without proof that the claimed advertising had an impact on the relevant consumers, advertising expenditures cannot be used to prove strength. See Burke-Parsons-Bowlby Corp. v Appalachian Log Homes, Inc., 871 F.2d 590, 596 (6th Cir. 1989) ("Advertising expense also is relevant but will not, standing alone, establish secondary meaning. Where advertising expenditures are required to 'merely survive' in the competitive market, advertising expenditures cannot be used to prove secondary meaning .") Citations omitted).; see also In re Kwik Lok Corp., 217 USPQ 1245 (TTAB 1983) (evidence held insufficient to establish acquired distinctiveness for configuration of bag closures made of plastic, notwithstanding applicant's statement that advertising of the closures involved several hundred thousands of dollars, where there was no evidence that the advertising had any impact on

---

[11] Defendant incorporates herein its discussion of the weakness of Plaintiff's mark from Defendant's Memorandum of Law In Support of Its Motion For Summary Judgment, at Section II 2(A) 2(b), pp. 11-18. As discussed therein, Plaintiff's C-22 mark is extremely weak, if not generic, because it functions as a grade designation and, is widely used by third parties.

19

purchasers in perceiving the configuration as a mark). Despite its burdens, Plaintiff has provided

no evidence that any consumers recognize C-22 as a trademark, as opposed to a generic grade

designation. For all these reasons, Haynes fails to prove its mark is strong. This factor weighs

strongly in Defendant's favor.

## C.     Plaintiff Fails to Prove the Remaining Likelihood of Confusion Factors Weigh In Its Favor.

Throughout the remainder of its discussion of the likelihood of confusion factors,

Plaintiff provides no case citation whatsoever, let alone any legal analysis that comports with the

Third Circuit's treatment of the relevant factors. See Pl.'s Brief at pp. 11-13. Plaintiff provides

little more than its own misguided notions of what the factors should mean and how they might

relate to a determination of likelihood of confusion. As if to further complicate the Court's

efforts to unravel Plaintiff's arguments, some sections contain no *factual* citations while others

are supported only by citations to inadmissible conclusions contained in the Manning Decl.

Unable to meet its burden with respect to the applicable likelihood of confusion factors,

Plaintiff's Motion must be denied.

### 1.     Plaintiff Has Not Shown the High Degree of Customer Care and Purchase Price Indicate That Confusion is Likely.

Plaintiff's allegations with respect to the degree of consumer care in this section are

either completely unsupported or are supported only by conclusory averments in the Manning

Decl. See Pl.'s Brief at pp. 11-12. Plaintiff would have the Court believe that the typical

purchaser of a UNS N06022 alloy (C-22) is as thoughtless as the purchaser of a tabloid in a

grocery check-out line.[12]  The sworn evidence of record from Plaintiff's own witnesses indicates

---

[12] Defendant would also like to clarify a misconception. Plaintiff states, "Haynes also sells to

20

that nothing could be further from the truth. See DSOF at ¶¶ 8-15; see also Def.'s Brief In

Support of Its Motion for Summary Judgment, Section II, 2c, pp. 18-20 (evidencing the

sophistication of the Parties' consumers, the lengthy and detailed inquiries consumers make prior

to purchasing these goods and the expensive nature of the purchases). This factor weighs

strongly against a finding of likelihood of confusion.

### 2.    The Lengthy Coexistence Without Confusion Indicates Confusion is Unlikely.

Plaintiff readily admits that Electralloy's use of EC22 has coexisted with Haynes' use of

C-22 without actual confusion. See Pl.'s Brief, at p. 12 ("Given the limited sales and advertising

of Electralloy's alloy, it is understandable that there is no evidence of actual confusion"). Given

the uncontroversial evidence regarding Defendant's low current sales levels and lack of

advertising for EC22, a simple question must be asked: where is the evidence that actual

confusion is either imminent or likely? The answer is simple – consumers have not been

confused in the past and will not be confused in the future. This factor weighs in favor of

Defendant.

### 3.    Plaintiff Provides No Evidence of Bad Faith.

Even if it were proven that Electralloy possessed prior knowledge of Haynes' trademark

or registration, which is debatable (see Def.'s App. 44 at pp. 21-22 (Dep. Testimony of

Electralloy's President)), such prior knowledge in no way gives rise to an inference that

Electralloy acted in bad faith in selecting EC22. The evidence shows that Electralloy adopted

---

service centers who will sell the alloy in lesser amounts." Pl.'s Brief, at p. 11. The "service
centers" Plaintiff refers to are not separate entities purchasing from Haynes, but are Haynes' *own*
facilities. The service centers are the only way a consumer can purchase a product and place an
order with Haynes' mill (other than an occasional direct order to Haynes' mill). See DSOF at ¶¶
5-10. The fact that Haynes sells only its own product through its own service centers is a factor
that strongly weighs against a finding of confusion.

EC22 in good faith: (1) to build on the already existing consumer association between Electralloy and goods bearing prefix "EC"; and (2) to expressly communicate that the product complies with UNS N06022 specifications. See DSOF at ¶¶ 51, 61.

In an attempt to create something out of nothing, Plaintiff resorts to mischaracterizing Defendant's testimony regarding how it first came to manufacture an alloy that satisfies industry standard UNS N06022 specifications. Pl.'s Brief at p. 13. Plaintiff states, "Electralloy was approached by a customer who wanted Electralloy to make the same alloy as Haynes' C-22 alloy." See Pl.'s Brief, at p. 13. Id. Apparently, Plaintiff would have the Court draw an inference that the customer asked Electralloy to knock-off Haynes' product. Once again, the truth is not so complicated. As Electralloy's officers and employees testified, a single customer who was unable to find any UNS N06022 alloy in the marketplace in the desired form or shape asked Electralloy whether it could produce a UNS N06022-compliant alloy in the desired form. See Def.'s App. 44 at pp. 13-16; Def.'s App. 43 at pp. 15-16. Electralloy did so. There is no testimony whatsoever that the customer in question made reference to Haynes' C22 mark. Certainly there is no evidence that Electralloy "used" Plaintiff's C-22 mark to help it obtain the order. Plaintiff is unable to prove bad intent on the part of Electralloy. This factor weighs in favor of Defendant.

### 4.    Plaintiff Admits It Has No Evidence of Actual Confusion.

Having previously admitted that it has no evidence of actual confusion (see Pl.'s Brief, at p. 12 (". . .it is understandable that there is no evidence of actual confusion")), Plaintiff has the audacity to imply that such evidence exists. Id. at p. 13. Plaintiff got it right the first time –

22

there is no evidence of actual confusion.[13]   The fact that Electralloy's customers use various names when ordering an alloy that satisfies UNS N06022 (including C-22, C22, N06022, 622 and EC22 (see DSOF at ¶¶ 70-71; Def.'s App. 42 at ¶ 7; Def.'s App. 41 at ¶ 7)) proves that C-22 is generic. It does nothing to prove that consumers were confused as to the source of their purchases. The uncontroverted evidence shows that customers, including Haynes' customers, use these names interchangeably when purchasing alloys that satisfy UNS N06022. There is not a scintilla of evidence that even one such customer was confused. See DSOF at ¶¶ 68-72; Def.'s App. 42 at ¶¶ 6-8; Def.'s App. 41 at ¶¶ 6-8.

Finally, the fact that EC22 and C-22 have coexisted for numerous years without confusion is a strong indicator that confusion between the Parties' respective designations is unlikely. See Chase Manhattan Bank, USA, N.A. v. Freedom Card, Inc., 333 F. Supp.2d 239, 249-50 (Del. 2004) (stating the "'most relevant evidence of actual confusion is the testimony of a reasonably prudent purchaser who was in fact confused by defendant's trademark'" and holding this factor "weighs significantly against a finding of likelihood of confusion" where no such evidence was proffered) (internal citation omitted.); see also Smith v. Ames Dep't Stores, Inc., 988 F. Supp. 827, 841 (D. N.J. 1997) ("[b]ecause the Court finds that plaintiff has not presented any evidence of actual confusion, it weighs this factor in favor of the defendants").

---

[13] Plaintiff's further citation to Electralloy's documents relating to its fulfillment of customer orders also provides no support for Plaintiff's contention that actual consumer confusion exists. Actions of Electralloy cannot provide evidence of consumer confusion because such evidence necessarily would have to emanate from consumers in the specialty metals industry. Regardless, Defendant has disputed Plaintiff's contention that it filled orders with "its C22 . . . alloy." See supra, Section III A.1, at pp. 13-15.

23

022664.00115/11474043v.2

### 5. None of the Remaining Factors Indicate a Likelihood of Confusion Either.

Plaintiff contends the Parties' channels of trade are the same, that the Parties target the same consumers, and that the Parties goods are identical. See Pl.'s Brief, at pp. 13-14.

First, Plaintiff provides no evidence to support its allegations of overlapping trade channels. To the contrary, the evidence of record demonstrates that the Parties' trade channels cannot overlap because Plaintiff sells only its own alloy through its own service centers and, on occasion, through its mills upon receipt of a purchase order or visit from a customer. See DSOF at ¶¶ 6, 10; Def.'s App. 3, at p. 36 (Haynes' service centers "act like a reseller or a distributor") and p. 59 (Haynes has no U.S. distributors). It is not possible to purchase Defendant's products through Haynes' service centers or mills. Electralloy only produces and sells EC22 when a customer specifically orders the alloy. See DSOF at ¶ 55. These facts dispel any likelihood of confusion.

Second, the Parties do not target the same consumers or sell the same goods. Although Plaintiff and Defendant both sell their alloys to customers in the specialty metals industry, Electralloy does not undertake any special activities to market EC22 or to target customers of EC22. Id. at ¶¶ 53, 55. In essence, Electralloy only fills custom orders for EC22 at a customer's specific request. Moreover, the Parties' primary customers for their respective C-22 and EC22 products differ. Electralloy sells primarily "semi-finished" forms, such as ingot, to non-end users. Id. at ¶ 58. Electralloy does not sell to end users. Id. Haynes sells C-22 in "finished" forms, such as plate and sheet predominantly, which are not EC22 product forms sold by Electralloy. Id. at ¶¶ 16, 58. By contrast, Haynes almost exclusively sells its finished products to end-users and fabricators who incorporate Haynes' finished products into products, such as

24

022664.00115/11474043v.2

factory equipment, manufactured for and sold to end users. Id. at ¶ 16. This factor weighs in Electralloy's favor.

## CONCLUSION

For all of the reasons set forth herein, and in Electralloy's Motion for Summary Judgment and supporting filings, it is respectfully requested that the Declaration of Paul Manning be stricken, and that Plaintiff's Motion for Partial Summary Judgment on Counts I and II of Its Complaint be denied. It is further requested that Defendant Electralloy's Motion for Summary Judgment be granted, that Plaintiff's Complaint be dismissed in its entirety with prejudice, and that the United States Patent and Trademark Office be instructed to cancel Plaintiff's U.S. trademark Registration No. 1,953,864.

Respectfully submitted,

**BLANK ROME LLP**

Date:  October 14, 2005                By:

Timothy D. Necsenye
Dennis P. McCooe
Emily J. Barnhart
One Logan Square
Philadelphia, PA 19103
(215) 569-5619

Attorneys for Defendant

25

## CERTIFICATE OF SERVICE

I, Emily J. Barnhart, hereby certify that on this 14th day of October, 2005, a true and

correct copy of DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND IN SUPPORT OF

DEFENDANT'S MOTION TO STRIKE THE DECLARATION OF PAUL MANNING and

DEFENDANT'S OPPOSITION APPENDIX OF EXHIBITS were served on the attorneys for

Plaintiff by Federal Express, addressed as follows:

> Lynn J. Alstadt, Esquire
> Bryan H. Opalko, Esquire
> BUCHANAN INGERSOLL PC
> One Oxford Centre
> 301 Grant Street
> Pittsburgh, Pennsylvania  15219

EMILY J. BARNHART