IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HAYNES INTERNATIONAL, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 04-197(E) |
| | ) | |
| v. | ) | JURY TRIAL DEMANDED |
| | ) | |
| ELECTRALLOY, a Division of G.O. CARLSON, INC., | ) ) | Judge Cohill |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S REPLY BRIEF IN FURTHER SUPPORT OF ITS MOTION
FOR SUMMARY JUDGMENT AND IN SUPPORT OF ITS MOTION
TO STRIKE THE SECOND DECLARATION OF PAUL MANNING**

**BLANK ROME LLP**

Timothy D. Pecsenye
Dennis P. McCooe
Emily J. Barnhart
One Logan Square
Philadelphia, PA 19103
(215) 569-5619

Attorneys for Defendant

# **TABLE OF CONTENTS**

Page

TABLE OF CONTENTS ............................................................................................................. i

TABLE OF AUTHORITIES ...................................................................................................... iii

SUMMARY OF ARGUMENT .................................................................................................... 1

RESPONSIVE STATEMENT OF FACTS TO PLAINTIFF'S ADDITIONAL
ALLEGED FACTS SUBMITTED IN OPPOSITION TO DEFENDANT'S MOTION ............... 2

ARGUMENT ................................................................................................................................ 2

I.   THE SECOND MANNING DECLARATION MUST BE STRICKEN
     PURSUANT TO FED. R. CIV. P. 56(E) ........................................................................... 2

II.  PLAINTIFF HAS NOT CREATED A GENUINE ISSUE OF FACT THAT C-22
     IS NOT GENERIC .............................................................................................................. 4

III. PLAINTIFF HAS NOT CREATED A GENUINE ISSUE OF FACT THAT
     THERE IS NO LIKELIHOOD OF CONFUSION BETWEEN THE PARTIES'
     MARKS ............................................................................................................................... 7

     A.   C-22 Is A Weak Mark. ............................................................................................ 8

     B.   Plaintiff's Attempt to Undermine the Testimony of Third Party Consumers
          In the Specialty Metals Industry Fails. .................................................................... 8

     C.   Haynes' Own Documents Prove That Haynes Uses C-22 In Conjunction
          With Its House Marks .............................................................................................. 9

     D.   The Submission of the New Rendition of Haynes' Alleged C-22
          Advertising Expenditures Does Nothing to Save the Complaint From
          Dismissal on Summary Judgment. .......................................................................... 9

IV.  PLAINTIFF HAS NOT CREATED A GENUINE ISSUE OF FACT THAT ITS
     DILUTION CLAIM SHOULD NOT BE DISMISSED ................................................... 10

     A.   The C-22 Mark Is Not Famous. ............................................................................ 11

          1.   C-22 Is Not Distinctive. .............................................................................. 11

          2.   C-22 Has Been Abandoned Due to Widespread Third Party Use. ............. 11

          3.   Haynes Advertising Is De Minimus. ........................................................... 12

      4. C-22 Lacks Niche Fame. ................................................................ 12

  B. Plaintiff Failed To Prove Actual Dilution Of The Distinctive Quality Of The Mark. ........................................................................................................ 13

CONCLUSION ................................................................................................................ 14

022664.00115/11476516v.1

# TABLE OF AUTHORITIES

## FEDERAL CASES

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) ...................................................... 7

Automatic Radio Manufacturing Co. v. Hazeltime Research, Inc., 339 U.S. 827 (1950) ........................................................................................................................ 3

Avery Dennison Corp. v. Sumpton, 189 F.3d 868 (9th Cir. 1999) .............................. 11, 12

Eagle Snacks, Inc. v. Nabisco Brands, Inc., 625 F. Supp. 571 (D.N.J. 1995) ..................... 8

I.P. Lund Trading ApS v. Kohler Co., 163 F.3d 27 (1st Cir. 1998) ................................. 11

Lewis v. Casey, 518 U.S. 373 (1996) ................................................................................ 13

Merriam-Webster, Inc. v. Random House, Inc., 35 F.3d 65 (2d Cir. 1994) ................... 7, 8

Mushroom Makers, Inc. v. R.G. Barry Corp., 441 F. Supp. 1220 (S.D.N.Y. 1997) .......... 8

Official Airline Guides, Inc. v. Goss, 6 F.3d 1385 (9th Cir. 1993) .................................... 5

Surgicenters of American, Inc. v. Medical Dental Surgeries, Co., 601 F.2d 1011 (9th Cir. 1979) ............................................................................................................. 7

TCPIP Holding Co., Inc. v. Haar Communications, Inc., 244 F.3d 88 (2d Cir. 2001) ........................................................................................................................ 12

Times Mirror Magazines, Inc. v. Las Vegas Sports News, LLC, 212 F.3d 157 (3d Cir. 2000) .................................................................................................................. 13

Trap Rock Industrial, Inc. v. Local 825, Intern. Union of Operating Engineers, AFL-CIO, 982 F.2d 884 (3d Cir. 1992) .................................................................... 13

Versa Products Co. v. Bifold Co., 50 F.3d 189 (3d Cir. 1995) .......................................... 7

## FEDERAL STATUTES

15 U.S.C. § 1125 ............................................................................................................... 13

## OTHER AUTHORITY

Fed. R. Civ. P. 56 .................................................................................................... 1, 2, 3

Local Rule of Civil Procedure 56.1 ............................................................................. 1, 2

10B Charles Allen Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice
    and Procedure § 2738 .......................................................................................... 3

1 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition (4th
    ed. 2003) ..................................................................................................... passim

## SUMMARY OF ARGUMENT

Pursuant to Federal Rule of Civil Procedure 56(b) and Local Rule of Civil Procedure 56.1(D), Defendant, Electralloy, a Division of G.O. Carlson, Inc. ("Defendant" or "Electralloy"), by and through its undersigned counsel, respectfully submits this Reply Memorandum of Law in response to the opposition filed by Plaintiff, Haynes International, Inc. ("Plaintiff" or "Haynes") and in further support of its Motion for Summary Judgment on all five counts of the Complaint.[1] Defendant also submits this Memorandum in support of its Motion to Strike the Second Declaration of Paul Manning.

In a vain attempt to create a genuine issue of material fact, Plaintiff proffers the Second Declaration of Paul Manning (the "2nd Manning Decl."). Like the first Manning Decl., this declaration must also be stricken because it is not supported by admissible evidence and because Manning lacks personal knowledge and competence to testify regarding the matters therein. See Fed. R. Civ. P. 56(e).

Plaintiff also relies upon documents relating to a flurry of cease and desist letters sent out in the weeks after the September 6, 2005 close of discovery. Given that Defendant only just received a copy of these documents, and has yet to question Plaintiff's witnesses regarding these "policing" efforts, this tardily manufactured evidence should be accorded little weight.

To the extent the Court chooses to credit this information, it must find that the evidence of widespread third party use of C-22 of C22 undermines any claim that Plaintiff's mark is

---

[1] Electralloy notes that Plaintiff, through its Opposition to Defendant's Motion, seeks an order granting summary judgment in its favor on Count III of its Complaint. See Pl.'s Opp. at pp. 5-6. Plaintiff did not move for summary judgment on Count III of its Complaint. See Plaintiff's Motion for Partial Summary Judgment [Docket No. 16]. There is no motion pending by Plaintiff with respect to Count III and, consequently, the Court should not grant summary judgment in Plaintiff's favor on Count III in the event the Court does not grant Defendant's Motion.

1

strong, distinctive or famous. After doing nothing to protect its mark for almost two decades, Plaintiff cannot put the genie back in the bottle a week before summary judgment papers are due. Rather than creating a genuine issue of fact sufficient to deny Electralloy's Motion, the proffered evidence of third party use proves that Plaintiff's mark is generic.

Because Plaintiff's Opposition raises neither law nor fact sufficient to defeat Defendant's Motion, summary judgment must be granted in Electralloy's favor on all Counts of Plaintiff's Complaint.

### RESPONSIVE STATEMENT OF FACTS TO PLAINTIFF'S ADDITIONAL ALLEGED FACTS SUBMITTED IN OPPOSITION TO DEFENDANT'S MOTION

Pursuant to Local Rule of Civil Procedure 56.1(D), Defendant responds in the accompanying Defendant's Responsive Statement of Facts to the additional alleged facts submitted by Plaintiff in opposition to Defendant's Motion for Summary Judgment and incorporates Defendant's Responsive Statement of Facts herein.

### ARGUMENT

I.  **THE SECOND MANNING DECLARATION MUST BE STRICKEN PURSUANT TO FED. R. CIV. P. 56(E)**

The 2nd Manning Decl. no more meets the requirements of the Fed. R. Civ. P. 56(e) than the first Declaration of Paul Manning, and similarly must be stricken from consideration on summary judgment.[2] As discussed in more detail on pages 5-9 of Defendant's Opposition to Plaintiff's Motion for Partial Summary Judgment, affidavits in support of summary judgment

---

[2] Defendant filed a Motion to Strike the Declaration of Paul Manning submitted in support of Plaintiff's Motion for Partial Summary Judgment, and incorporates herein its discussion of the requirements for affidavits pursuant to Fed. R. Civ. P. 56(e), located at pp. 5-9 of Def.'s Memorandum in Opposition to Pl.'s Motion for Partial Summary Judgment [Docket No. 38]. The 2nd Manning Declaration fails for identical reasons.

will only be considered if they meet the requirements dictated by Rule 56(e).  See Automatic Radio Mfg. Co. v. Hazeltime Research, Inc., 339 U.S. 827, 831 (1950); 10B Charles Allen Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2738 (3d ed. 1998).  Rule 56(e) requires that affidavits be "made on personal knowledge," "set forth such facts as would be admissible in evidence," and "show affirmatively that the affiant is competent to testify to the matters stated therein."  Fed. R. Civ. P. 56(e).

The 2nd Manning Decl. cannot meet the requirements of Federal Rule 56(e) for the reasons stated in the following chart:

| ¶ | Alleged Fact | Why Rule 56(e) Insufficient |
|---|---|---|
| 2 | Numerous factual assertions that Hanyes' advertising of C-22 amounts to $40,000 per annum. | -None of the figures or calculations upon which the $40,000 figure is derived are supported by any admissible evidence.<br>-Manning is not competent to testify to Haynes' marketing practices from five and six years ago because he did not work for Haynes from 1994 to 2000, nor can he testify regarding C-22 advertising practices prior to 1994 when he was not Director of Marketing for Haynes.  See First Manning Decl. at ¶¶ 1, 3. |
| 3 | Numerous factual assertions related to Haynes' alleged policing practices. | -Manning is only competent to testify to Haynes' policing efforts since he became in charge of marketing and policing in 2001, and Manning cannot testify to any practices by Haynes during the 1994-2000 time period he did not work for Haynes.  See First Manning Decl. at ¶¶ 1, 3.<br>-Plaintiff has provided no support evidencing its policing practices, and the evidence of record belies the statements in Paragraph 3.  Particularly, Plaintiff provides no evidence of U.S. policing from the 1995 registration of C-22 until actions taken against Defefendant.  See Def.'s DSOF at ¶¶ 43-44.<br>-Contrary to Manning's assertion, Plaintiff waited six months before taking any action with respect to the third party uses of C-22 produced by Defendant in March 2005.<br>-Plaintiff has provided no evidentiary support demonstrating who its customers are, and therefore, statements about the same are unsupported.<br>-Documents related to responses to Plaintiff's Sep't 2005 policing speak for themselves and do not support the conclusions made by Manning. |

| 4 | Numerous factual assertions related to the business practices of third party company, Arcos. | -Plaintiff has no evidentiary support for these assertions.<br>-Manning has not demonstrated competence to testify regarding Arcos' business operations. |
|---|---|---|
| 4 | "[i]t is common practice for resellers of alloy products within UNS No. N06022 who purchase the alloy from several manufacturers to use Alloy 22 or UNS No. N06022 to identify products the sell [sic] which have this alloy composition." | -Plaintiff has no evidentiary support for this assertion.<br>-Manning has not demonstrated competence to testify to this assertion. |

For all these reasons, the 2nd Manning Decl. must be stricken.

## II. PLAINTIFF HAS NOT CREATED A GENUINE ISSUE OF FACT THAT C-22 IS NOT GENERIC

Plaintiff does not assert facts sufficient to raise a genuine issue of material fact regarding Defendant's evidence that C-22, and its variants, are generic terms used in the specialty metals industry to refer to alloy satisfying UNS N06022 specifications, namely, alloys that are corrosion resistant and contain approximately 22% chromium. In addition, Plaintiff refutes none of the case law cited by Defendant regarding genericism.

Plaintiff's sole citation in this section of its Opposition is to the same section of McCarthy on Trademarks and Unfair Competition cited by Defendant, Section 3.3. See Pl.'s Opp. Brief, at pp. 6-7. However, Plaintiff omits a critical component of Section 3.3 in its discussion – that the source identifier must "identify one source and distinguish it from other sources," and that "[i]f it does not do this, then it is not protectable as a trademark." See Def.'s Brief at p. 4 (quoting 1 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, § 3.3 at 3-5-3-6 (4th ed. 2003)). Without evidence that consumers associate C-22 with only one source, Haynes, cannot prove that it owns a mark.

Third party documents and Plaintiff's own evidence proves that C-22 is generic. Such evidence includes use of C-22 and its variants by competitors as generic terms (see Def.'s DSOF at ¶¶ 41-42; Def.'s App. 4, 6-27, 33, 36, 38-39, 51), Plaintiff's use as the generic name of its

4

product (see Def.'s DSOF at ¶¶ 24-27; Def.'s App. 1), media usage as a generic term (see Def.'s DSOF at ¶¶ 26, 41-42; Def.'s App. 4-6, 29-30), and testimony of persons in the trade stating that C-22 and C22 are generic terms used in the industry to refer to alloy satisfying UNS N06022 specifications (see Def.'s DSOF at ¶ 41; Def.'s App. 41-42). See McCarthy § 1213 (stating that all of the above types of evidence are probative of genericism). In particular, the third party documents submitted by Defendant serve as strong evidence that C-22 has become generic. Such rampant uncontrolled third party uses of C-22 and its variants, has effectively prevented consumers from forming the necessary association between C-22 and a single source. See Official Airline Guides, Inc. v. Goss, 6 F.3d 1385, 1391 (9th Cir. 1993) ("[t]he generic name of a product – what it is – can never serve as a trademark").

Plaintiff's sole evidence to rebut Defendant's evidence of genericism consists of its selective interpretation of some of the responses to its eleventh hour flurry of cease and desist letters.[3] This last ditch effort cannot undo the damage caused by the many years in which Haynes neglected to police the mark. See Def.'s DSOF at ¶¶ 26, 42 (third party documents (with varying copyrights) evidencing years of unchecked use of C-22 as a generic term, unassociated

---

[3] Despite having possession of these third party uses since Defendant produced them in March 2005, Plaintiff did nothing for six months until it realized it needed to have something to discuss in its summary judgment opposition papers. Defendant is not surprised that C-22 has become generic, given Plaintiff's history of doing nothing to protect alleged rights in C-22. Plaintiff was unable to produce any documents evidencing any policing efforts in the United States from the 1995 registration of C-22 (or earlier) (see Def.'s DSOF at ¶¶ 43-44) until its actions against Electralloy. Plaintiff also stalled in its efforts against Electralloy. Plaintiff sent a cease and desist letter to Electralloy in July 2003. Despite not being satisfied with Defendant's written response that its use of EC22 was not confusingly similar to Plaintiff's C-22, Plaintiff was silent and did nothing for another 12 months until it filed its Complaint against Electralloy in July 2004.

5

with Plaintiff). The very fact that Plaintiff needed to send so many letters proves that C-22 does not function as a trademark. The response of one recipient illustrates the point:

> We have read your letter and looked into the use of C22 in our literature. . . . *We use the industry accepted name C22* in our literature. If Haynes was our only and exclusive supplier then we would use the C-22 registered trademark. But to use it at this time it would be false advertising since we also use other sources.

See 2nd Manning Decl. (Ex. L) attachment (bates number HE 00792) (emphasis added).

Plaintiff also states that some of its customers (without any citation to the record proving these entities are its customers) were making improper use of its C-22 mark. Plaintiff cites the fact that a few of these customers modified their sales materials is evidence consumers recognize "C-22" as a trademark of Haynes.[4] Once again, the actual evidence is far less compelling than Plaintiff would have the Court believe. Some of the companies in question stated that they had no knowledge of C-22 or that it was a registered trademark. See e.g., 2nd Manning Decl. (Ex. L) attachment (bates number HE 00796 ("We did not know about 'C 22'") and HE 00823 ("we were not aware that 'C-22' was a registered trademark of Haynes")). Their past ignorance of the mark speaks volumes while their present knowledge proves nothing.

The recent spate of cease and desist letters does not change the fact that, in the minds of consumers, C-22 is a generic term used to identify alloy satisfying UNS N06922 specifications,

---

[4] Plaintiff now claims -- for the first time during summary judgment briefing -- that it had given its customers the right to use its mark, i.e. that it had licensed use of its C-22 mark to third parties. However, Plaintiff provides no written licenses. Moreover, the September 2005 cease and desist letters to Plaintiff's customers evidences that Plaintiff had not been monitoring its customers, and that it was not monitoring quality control of its customer's uses of its mark. At best, Plaintiff admits it has given out innumerable naked licenses, which is further indicia of the resultant genericism of the term C-22. See McCarthy § 18:42 ("Without quality control . . . the goods or services are not truly 'genuine,'" and "[t]his dissonance and deception erodes the significance of the designation as an accurate indication of origin: a trademark.").

6

and not a trademark of Haynes. See Surgicenters of American, Inc. v. Medical Dental Surgeries, Co., 601 F.2d 1011, 1016 (9th Cir. 1979) (to establish a trademark, "plaintiff must show more than a subordinate meaning which applies to it. It must show that the *primary* significance of the term *in the minds of the consuming public* is not the product but the producer" (internal citation and quotations omitted)). Accordingly, Counts I through III of Plaintiff's Complaint must be dismissed.

### III. PLAINTIFF HAS NOT CREATED A GENUINE ISSUE OF FACT THAT THERE IS NO LIKELIHOOD OF CONFUSION BETWEEN THE PARTIES' MARKS

As with genericness, Plaintiff fails to raise a genuine issue of material fact or law that Defendant's EC22 is likely to be confused with Plaintiff's C-22.[5][6] In order to prevail on its infringement claims, Plaintiff must be able to demonstrate "that an appreciable number of ordinarily prudent consumers of the type of product in question are likely to be confused as to the source of the goods." See Versa Prods. Co. v. Bifold Co., 50 F.3d 189, 200 (3d Cir. 1995). The "evidence" submitted to the Court in Opposition to Defendant's Motion is irrelevant, does not prove the points for which Plaintiff cites the information, and, consequently, fails to raise genuine issues of material fact. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986) (the mere existence of a scintilla of evidence in support of Plaintiff's position is insufficient).[7]

---

[5] In Opposition, Plaintiff discusses Electralloy's alleged use of "GOC22," however, as discussed in Def.'s Opposition Brief (at p. 12 n. 6), such discussions must be disregarded as impermissible, given that Plaintiff made not one allegation in its Complaint or any discovery requests regarding "GOC22."

[6] Similarly, Plaintiff's references to C22 are irrelevant, as Defendant is not using "C22" and never made a sale of C22 product. See Defendant's discussion regarding its non-use and sale of "C22" at Def.'s Opposition Brief at pp. 13-15.

[7] Further, Plaintiff's failure to conduct a relevant survey is highly probative. See Merriam-Webster, Inc. v. Random House, Inc., 35 F.3d 65, 72 (2d Cir. 1994) (Court counted plaintiff's

7

A.   **C-22 Is A Weak Mark.**

To refute Defendant's seven-page discussion proving the weakness of C-22, Plaintiff again relies on responses from its September 2005 letters. Plaintiff argues that C-22 is "strong and has a high degree of distinctiveness in the marketplace" because some of the companies ultimately made some changes to their materials. See Pl.'s Opp. at p.11. In turth, the responses only bolster Defendant's claim that the mark not only is weak and unrecognized (see 2nd Manning Decl. (Ex. L) attachment (bates number HE 00796 ("We did not know about 'C 22'") and HE 00823 ("we were not aware that 'C-22' was a registered trademark of Haynes")), but is generic (see id. at bates number HE 00792 ("[w]e use the industry accepted name C22 in our literature"). Of course, proffered information regarding <u>competitors</u> proves nothing about how <u>consumers</u> view Plaintiff's alleged mark.

B.   **Plaintiff's Attempt to Undermine the Testimony of Third Party Consumers In the Specialty Metals Industry Fails.**

Defendant submitted declarations from consumers (Arcos and Enpar) in support of its arguments both that Electralloy's customers have not been confused and that C-22 and its variants are generic terms in the specialty metals industry. See Def.'s App. 41, 42. Arcos' declarant states, "[i]t is common in the special metals industry to refer to UNS N06022 alloy as 622, EC22, UNS N06022, C22 or C-22[sic]." See Def.'s App. 42, at ¶ 7. In Opposition, Plaintiff attempts to rebut this declaration by stating that it is "undermined by the fact that Arcos

---

failure to present a survey against it); Mushroom Makers, Inc. v. R.G. Barry Corp., 441 F. Supp. 1220, 1231 (S.D.N.Y. 1997) (adverse inference drawn from failure to submit a survey, particularly where part is "a substantial corporation with the means to have undertaken . . . a survey"); Eagle Snacks, Inc. v. Nabisco Brands, Inc., 625 F. Supp. 571, 583 (D.N.J. 1985) (plaintiff's failure to conduct a survey, where it had the means to do so, "may give rise to an inference that contents of the survey would be unfavorable").

8

. . . does not use C22 or C-22 in the sale of its alloy." See Pl.'s Opp. at 16; see also 2nd Manning Decl. ¶ 4 (cites attachment (HE 00854)). Plaintiff misses the point. What Arcos' own alloy is called is not the issue and does nothing to discredit its statement regarding numerous common terms Arcos and other third parties use to refer to an alloy satisfying UNS N06022.

### C. Haynes' Own Documents Prove That Haynes Uses C-22 In Conjunction With Its House Marks.

Defendant submitted ample Haynes documents and Haynes' witnesses' deposition testimony excerpts to prove that Haynes markets its alloy as HASTELLOY C-22, not C-22. See Def.'s DSOF at ¶¶ 24-25, 34-36; Def.'s App. 1, 13, 15, 31, 52). Defendant also proffered overwhelming evidence that HASTELLOY C-22 is seen by consumers with one or more Haynes' house marks. See id. iven that Electralloy likewise uses EC22 in connection with Electralloys' house mark, confusion as to source is extremely unlikely. Haynes' entire rebuttal consists of one page from a two-page document. See Pl.'s Ex. K at p. 2. This single page cannot refute the documentary proof *from Haynes' own documents* showing how C-22 has been used over the last two decades. Indeed, Exhibit K only bolsters the arguments Defendant has been making -- the document is plastered with Haynes' house marks HASTELLOY and HAYNES. See Pl.'s Ex. K.

### D. The Submission of the New Rendition of Haynes' Alleged C-22 Advertising Expenditures Does Nothing to Save the Complaint From Dismissal on Summary Judgment.

Not in its Complaint, not in its answers to interrogatories, not in its documentary evidence produced in discovery, not in its witnesses' deposition testimony, and not in its Motion for Summary Judgment papers, but for the first time in opposition to Defendant's Motion for Summary Judgment Plaintiff alleges that it spends four times more per year ($40,000) in

9

exclusive C-22 advertising expenditures than ever before claimed ($10,000[8]). This new evidence should be disregarded because none of the figures or the calculations used to concoct this figure are supported by evidence of record, and instead are only supported by the statements of Paul Manning -- who himself has admittedly only been Director of Marketing for the past four years and who did not even work for Haynes from 1994 through 2000 (which are two of the years expenditures from which the averaged figure is allegedly derived). See 2nd Manning Decl. at ¶¶ 1, 4; see also Manning Decl. at ¶¶ 1, 3.

Even taking the $40,000 figure as true, advertising expenditures of $40,000 does not, without more, prove that there is a likelihood of confusion. See Pl.'s Opp. at pp. 18-19. Without proof that such de minimus advertising expenditures actually resulted in consumer association of C-22 and Haynes, Plaintiff's new contention means nothing and has no impact on the likelihood of confusion analysis proffered by Defendant's in its opening brief. See Def.'s brief at pp. 23-34.

Plaintiff has failed to supply the Court with facts or law sufficient to deny Defendant summary judgment in its favor on Counts I through III of Plaintiff's Complaint alleging trademark infringement, and as such, these Counts must be dismissed.

## IV. PLAINTIFF HAS NOT CREATED A GENUINE ISSUE OF FACT THAT ITS DILUTION CLAIM SHOULD NOT BE DISMISSED

Plaintiff asserts that "disputes as to material facts" prevent the Court from granting Defendant's Motion for Summary Judgment as to Count 4 (Federal Trademark Dilution Act ("FTDA")) and Count 5 (Pennsylvania dilution). Pl.'s Opp. at p. 20. Yet, search as the Court might, it will find no evidence that would create a genuine issue of material fact relating to (1)

---

[8] Defendant disputes the $10,000 to begin with and believes the evidence reveals Plaintiff spent far less than $10,000 advertising C-22. See Def.'s DSOF at ¶¶ 37-38.

the alleged distinctiveness and fame of C-22, or (2) actual dilution of that mark. Accordingly, summary judgment must be granted in Defendant's favor.

### A.   The C-22 Mark Is Not Famous.

Plaintiff's bald, unsupported assertion that C-22 is a famous mark ignores the well-established principle that, "[d]ilution is a cause of action invented and reserved for a select class of marks -- those marks with such powerful consumer associations that even non-competing uses can infringe their value." Avery Dennison Corp. v. Sumpton, 189 F.3d 868, 875 (9th Cir. 1999). Likewise, Plaintiff ignores the teaching that in order to meet the famousness requirement under the FTDA, a mark must be "truly prominent and renowned." Id. (quoting I.P. Lund Trading ApS v. Kohler Co., 163 F.3d 27, 46 (1st Cir. 1998) (internal quotation omitted)). As discussed at length in Defendant's brief, C-22 is, if not generic, a very weak mark entitled to limited protection. It is by no means famous.

#### 1.   C-22 Is Not Distinctive.

The undisputed facts show that third parties have for many years been making widespread use of C-22 and that Plaintiff took its first steps to halt such use only last month. Plaintiff asserts this evidence "clearly points to Haynes' C-22 mark being famous." Pl.'s Opp. at p. 21. Just the opposite is true. Haynes' long failure to police its mark has effectively resulted in the destruction of what limited trademark rights Plaintiff might otherwise have possessed, if any.

#### 2.   C-22 Has Been Abandoned Due to Widespread Third Party Use.

Plaintiff asserts that it "has used C-22 as a trademark virtually exclusively for over twenty years. . ." Plaintiff's Opp. at p. 22. In light of Plaintiff's prior admission that it only recently took steps to halt the widespread third party use of C-22, the Court must find that Plaintiff's claim to "exclusivity" is frivolous and in bad faith.

### 3. Haynes Advertising Is De Minimus.

Plaintiff cannot seem to make up its mind regarding the extent of its advertising in connection with C-22. Even crediting Haynes' new claim that it spent $40,000 per annum, such a pittance falls short of proving fame. See e.g., TCPIP Holding Co. v. HAAR Communications, Inc., 244 F.3d 88, 99-100 (2d Cir. 2001) (evidence of $280 million in annual sales and advertising expenditures in excess of $130 million insufficient to prove fame); Avery Dennison, 189 F.3d at 879 (no fame found where mark was used for over seventy years, annual sales exceeded $3 billion and annual advertising costs exceeded $5 million). Haynes' unsupported belief that its paltry advertising expenditures supports a claim to fame, ignores both common sense and established law.

### 4. C-22 Lacks Niche Fame.

In a last-ditch effort to prove fame, Plaintiff claims that C-22 enjoys "nitch [sic] fame." Pl.'s Opp. at p. 23. While it may be too harsh a conclusion, Plaintiff's misspelling suggests it has never read the relevant "niche fame" case law. Certainly, Plaintiff's niche fame argument provides no indication of any familiarity. Having no survey or other reliable evidence to show that C-22 has achieved fame among *consumers* of specialty metals, Haynes points to evidence that third party manufacturers and sellers have acceded to Haynes' demand that they cease unauthorized use of C-22 (or similar marks). It goes without saying that this proves only that certain industry competitors would rather adopt a new name than fight an expensive lawsuit. Even if it were true that certain third parties have lately come to recognize Plaintiff's rights in C-22, this proves nothing about the seminal issue – whether C-22 is famous amongst *consumers*. Plaintiff has failed to point to any credible evidence that C-22 is famous among consumers in the specialty metals market or any other market.

### B. Plaintiff Failed To Prove Actual Dilution Of The Distinctive Quality Of The Mark.

Plaintiff failed to submit any evidence that Defendant's use of its description has diluted the distinctive quality of the C-22 mark. See Times Mirror Magazines, Inc. v. Las Vegas Sports News, LLC, 212 F.3d 157, 163 (3d Cir. 2000) (to succeed on a FTDA claim, plaintiff must establish four elements including that the alleged use has caused dilution of the distinctive quality of a famous and distinctive mark); see also 15 U.S.C. § 1125(c). Ignoring its burden under Rule 56, Plaintiff asserts: "In any event Haynes should have the opportunity to present evidence of dilution at trial." Pl.'s Opp. at p. 24. This final assertion by Plaintiff is the legal equivalent of the waiving of a white flag of surrender. See Lewis v. Casey, 518 U.S. 373, 378 (1996) ("[i]n response to a summary judgment motion, however, the plaintiff can no longer rest on mere allegations, but must set forth by affidavit or other evidence specific facts" (citations and quotation marks omitted)); Trap Rock v. Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs, AFL-CIO, 982 F.2d 884, 890 (3d Cir. 1992) (plaintiff cannot survive summary judgment by insisting on its own interpretation of the fact, or by relying on unsubstantiated allegations, general denials, or vague statements). Having never raised any issues of material fact, Counts 4 and 5 of Plaintiff's Complaint must be dismissed.

13

## CONCLUSION

For all of the reasons set forth herein, in Electralloy's initial Motion filing, and in its Opposition to Plaintiff's Motion for Partial Summary Judgment, it is respectfully requested that Defendant Electralloy's Motion for Summary Judgment be granted, that Plaintiff's Complaint be dismissed in its entirety with prejudice, and that the United States Patent and Trademark Office be instructed to cancel Plaintiff's U.S. trademark Registration No. 1,953,864.

Respectfully submitted,

**BLANK ROME LLP**

Date: October 18, 2005        By: _____
Timothy D. Pecsenye
Dennis P. McCooe
Emily J. Barnhart
One Logan Square
Philadelphia, PA 19103
(215) 569-5619

Attorneys for Defendant

## CERTIFICATE OF SERVICE

I, Emily J. Barnhart, hereby certify that on this 18th day of October, 2005, a true and correct copy of the foregoing DEFENDANT'S REPLY BRIEF IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF ITS MOTION TO STRIKE THE SECOND DECLARATION OF PAUL MANNING was served on the attorneys for Plaintiff by Federal Express, addressed as follows:

> Lynn J. Alstadt, Esquire
> Bryan H. Opalko, Esquire
> BUCHANAN INGERSOLL PC
> One Oxford Centre
> 301 Grant Street
> Pittsburgh, Pennsylvania 15219

*[signature]*
EMILY J. BARNHART