# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HAYNES INTERNATIONAL, INC., | ) | |
| a Delaware corporation, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 04-197(E) |
| | ) | |
| v. | ) | JURY TRIAL DEMANDED |
| | ) | |
| ELECTRALLOY, a Division of G.O. | ) | |
| CARLSON, INC., | ) | Judge Cohill |
| a Pennsylvania corporation, | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S
## MOTIONS TO STRIKE THE DECLARATIONS OF PAUL MANNING

Lynn J. Alstadt
Pa. I.D. No. 23487
Bryan H. Opalko
Pa. I.D. No. 86721
BUCHANAN INGERSOLL PC
301 Grant Street, 20th Floor
Pittsburgh, PA 15219-1410
Phone: 412-562-1632
Fax: 412-562-1041
Attorneys for Plaintiff

## **TABLE OF CONTENTS**

Page

I.    The Manning Declarations Meet the Requirements of Fed.Civ.P.(56)e......................1

   A.  The Manning Declarations Are Made on Personal Knowledge ...........................2

   B.  The First Manning Declaration ............................................................................3

      a.  Paragraphs 4 and 6 of the first Manning Declaration .....................................4

      b.  Paragraph 8 of the first Manning Declaration..................................................5

      c.  Paragraph 9 of the first Manning Declaration..................................................7

      d.  Paragraph 10 of the first Manning Declaration...............................................11

      e.  Paragraph 11 of the first Manning Declaration...............................................13

      f.  Paragraph 13 of the first Manning Declaration ...............................................14

      g.  Paragraph 14 of the first Manning Declaration...............................................16

   C.  The Second Manning Declaration........................................................................17

      a.  Paragraph 2 of the second Manning Declaration ...........................................18

      b.  Paragraph 3 of the second Manning Declaration ...........................................18

      c.  Paragraph 4 of the second Manning Declaration ...........................................21

Conclusion ........................................................................................................................23

Third Declaration of Paul Manning ......................................................................Exhibit R

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S**
<u>**MOTIONS TO STRIKE THE DECLARATIONS OF PAUL MANNING**</u>

Plaintiff, Haynes International, Inc. ("Plaintiff" or "Haynes"), by and through its undersigned counsel, hereby submits this Opposition to Defendant's Motions to Strike the Declarations of Paul Manning in Support of Plaintiff's Motion for Partial Summary Judgment and Plaintiff's Opposition to Defendant's Motion for Summary Judgment.

Defendant filed its Motion to Strike the Manning Declaration dated September 26, 2005 (the "first Manning Declaration") on October 14, 2005 with its Opposition to Plaintiff's Motion for Partial Summary Judgment. Defendant filed its Motion to Strike the Manning Declaration dated October 10, 2005 (the "second Manning Declaration") on October 18, 2005 with its Reply in Support of its Motion for Summary Judgment. Defendant did not file a separate memorandum in support of either motion, but rather incorporated its arguments into its Opposition and Reply briefs, respectively.

In its Reply brief, Defendant alleges that the second Manning Declaration fails for the same reasons as the first Manning Declaration. (Defendant's Reply, p. 2, n. 2). Thus, for judicial efficiency, Plaintiff believes it can, and should, respond to both motions in one Opposition brief.

## I.      <u>The Manning Declarations Meet the Requirements of Fed.R.Civ.P. 56(e)</u>

As set forth below, the Manning Declarations meet all of the requisites of Federal Rule of Civil Procedure 56(e), namely: (1) they are based on Dr. Manning's personal knowledge and experience; (2) they set forth facts that would be admissible at trial; and (3) Dr. Manning is clearly competent to testify to the statements contained therein at trial.

In its Opposition and Reply briefs, Defendant has cited specific portions of the Manning Declarations which it alleges must be stricken. Plaintiff will respond specifically to those portions cited by Defendant. Because the remaining portions are not challenged, those portions

are considered to meet the requirements of Fed.R.Civ.P. 56(e).  *See* <u>Perma Research & Dev. Co.</u>
<u>v. Singer Co.</u>, 410 F.2d 572, 579 (2nd Cir. 1969) ("We also note that the motion to strike was
much too general in that it did not specify which parts of the Chanler affidavit should be stricken
and why."); <u>Zayre Corp. v. S.M.&R. Co.</u>, 882 F.2d 1145, 1150 (7th Cir. 1989) (challenges to
computer printouts containing improperly authenticated business records and affidavit containing
hearsay were deemed waived, since objections to admissions were first made on appeal); <u>Gault</u>
<u>.v Zellerbach</u>, 981 F.Supp. 533, 536 (N.D.Ohio 1997), *aff'd without opinion*, 172 F.3d 48 (6th
Cir. 1998) (evidence not meeting standards of Rule 56(e) may be considered by district court
unless opposing party affirmatively raises specific defects).

To the extent the first and second Manning Declarations are deficient, Plaintiff is
submitting herewith as Exhibit  R a Third Declaration of Paul Manning (the "third Manning
Declaration"), which Plaintiff submits cures any and all deficiencies.  The third Manning
Declaration affirmatively shows that Dr. Manning is competent to testify to the matters stated in
the first and second Manning Declaration, that those statements constitute admissible evidence,
and that the statements contained therein are based on Dr. Manning's personal knowledge and
experience.

## A.     <u>The Manning Declarations Are Made On Personal Knowledge</u>

Initially, Defendant contests the first and second Manning Declarations alleging that
those statements were made on information and belief.  The third Manning Declaration
submitted herewith clearly states that the statements made in the first and second Manning
Declarations, as well as statements made in the third Manning Declaration, are made on Dr.
Manning's personal knowledge and experience.  <u>Cattawba Indian Tribe v. South Carolina</u>, 978
F.2d 1334, 1342 (4th Cir. 1992) (although first affidavit did not state that it was based on

personal knowledge, this defect was remedied by a second affidavit by the same person which did state that it was based on personal knowledge).  Additionally, as set forth below, the third Manning Declaration provides sufficient support that Dr. Manning has personal knowledge of the various facts contested by Defendant in the first and second Manning Declarations.

Defendant has provided charts identifying the paragraphs and specific statements in the Manning Declarations that Defendant alleges are deficient.  Plaintiff has reproduced below each contested paragraph then explains how the third Manning Declaration cures or overcomes the alleged deficiencies.

B.    **The First Manning Declaration**

Defendant has contested certain statements set forth in paragraphs 8 through 10 and 13 of the first Manning Declaration alleging that Dr. Manning lacks personal knowledge, challenged paragraphs 4, 6, 9, 10, 13 and 14 as not being the type of evidence that would be admissible at trial, and asserted that Dr. Manning does not have the education or experience to be competent to testify about the strength of Haynes' federally registered C-22 mark, alleged confusion of customers or what third parties may do in the marketplace.  No specific paragraphs were identified with respect to the competency objection.  The third Manning Declaration coupled with other evidence of record demonstrates that Dr. Manning has personal knowledge of the various facts, that his statements are admissible evidence and that Dr. Manning is competent to testify as to the statements made.

a.    **Paragraphs 4 and 6 of the first Manning Declaration**

Paragraphs 4 and 6 read:

4.    Haynes is a manufacturer of nickel based alloys and cobalt based alloys. We are a leader in the development of new nickel based and cobalt based alloys and methods of manufacturing these alloys. During the past three years Haynes received eight United States patents in this field.

6.    In the late 1970's, Haynes developed a nickel based corrosion resistant alloy which we designated as C-22 alloy. U.S. Patent No. 4,533,414 was issued to Haynes for this alloy on August 6, 1985 and expired August 6, 2002. This alloy has a nominal composition of 56% nickel, 22% chromium, 13% molybdenum, 3% iron, 3% tungsten, 2.5% cobalt, and minor amounts of other alloying elements. Haynes first sold this alloy in 1984 as Haynes Developmental Alloy C-22 in wire form to repair welds on a bleach plant mixer at the Crown Zellerback plant in Carmas, Washington. Since that time, Haynes has sold C-22 alloy in the form of sheet, plate, wire, bar, tubing, piping, coated electrodes, and welding filler material, such as welding rods. Haynes' C-22 trademark is roller marked in ink on most forms of the alloy. Welding rods are sold in containers bearing a label having the C-22 trademark. Because this alloy is resistant to a variety of industrial chemicals, the alloy has been fabricated into a variety of components for chemical and pharmaceutical processing equipment, as well as equipment used in flue gas desulfurization and waste processing. The alloy has been widely used and is a very successful product of Haynes.

Defendant has challenged two statements as unsupported and speculation:

4

> "We are a leader in the development of new nickel-based and cobalt-based alloys and methods of manufacturing these alloy."

> "The alloy has been widely used and is a very successful product of Haynes."

Defendant cites no rule of evidence which would prevent admission of these statements. Rule 701 of the Federal Rules of Evidence permits lay testimony in the form of opinions or inferences which are rationally based upon the perception of the witness, helpful to a determination of a fact in issue and not based on scientific, technical or other specialized knowledge. Paragraphs 4 and 6 certainly meet those requirements.

Dr. Manning has been Marketing Manager for Haynes International for the past four years. As Director of Marketing he is responsible for all marketing activities of the company. (third Manning Declaration, paragraph 8). He spends a majority of his time speaking to and meeting with customers and potential customers of Haynes. (third Manning Declaration, paragraph 9). He regularly receives and reviews periodic sales reports which recite the sales in dollars and pounds of each of Haynes' alloys. He also regularly receives and reviews call reports submitted by Haynes' field salesmen. (third Manning Declaration, paragraph 6). He knows the number of new alloys which Haynes International has introduced over the past years and when new alloys have been introduced by competitors. (third Manning Declaration, paragraph 24). Based upon this knowledge he can testify to the fact that Haynes is a leader in the development of nickel-based and cobalt-based alloys and methods of manufacturing these alloys. He can also testify that C-22 alloy has been widely used and is a very successful product of Haynes.

### b.    <u>Paragraph 8 of the first Manning Declaration</u>

Paragraph 8 reads:

> In 1996, Haynes registered C-22 as a trademark for "unwrought and partially wrought common metals and their alloys in various forms including

sheet, plate, wire, bar, billet, tubing, piping, coated electrodes, fittings and welding filler material and castings".  Haynes filed Affidavits under Sections 8 & 15 of the Lanham Act, which were accepted and acknowledged by the United States Patent and Trademark Office.

Defendant asserts that Dr. Manning cannot testify about Haynes' registration of C-22 as a trademark, and that Haynes' C-22 trademark has become incontestable through the filing of Section  8 and 15 affidavits because he has no personal knowledge of those facts.  That is not true.

The third Manning Declaration, at paragraph 13, affirmatively states that Dr. Manning is responsible for the trademark portfolio of Haynes International.  Those files are under Dr. Manning's direction and control, and those files include copies of the Certificates of Registration, as well as reports indicating dates of registration and when renewals for further actions are due. Based on Dr. Manning's personal knowledge of Haynes' trademark portfolio, which are clearly business records, Dr. Manning has personal knowledge that Haynes registered C-22 as a trademark in 1996 and that Haynes filed affidavits under Sections 8 and 15 of the Lanham Act, which were accepted and acknowledged by the United States Patent and Trademark Office.  (*See* third Manning Declaration, paragraph 13).  Even though Dr. Manning did not work for Haynes in 1996, he still has personal knowledge of Haynes' registration for C-22 through his review of the files under his control. Contemporaneous knowledge of the issuance of the registration and the filing of the Section 8 and 15 affidavits are not necessary.  Dalton v. FDIC, 987 F.2d 1216, 1223 (5th Cir. 1993) (affidavit of a corporate officer was not defective simply because he learned of the transaction after it had occurred).

Moreover, the Section 8 and 15 affidavits were filed in 2002, six (6) years after the date of registration.  Dr. Manning had personal knowledge of these affidavits, as Director of Marketing for Haynes at the time the affidavits were filed.

### c.    Paragraph 9 of the first Manning Declaration

Paragraph 9 reads:

Since its introduction in 1984, Haynes has advertised and promoted C-22 alloy in brochures, industry publications such as <u>Chemical Engineering</u>, <u>Chemical Processing</u> and <u>Materials Performance</u>, magazines, on its website, and at approximately six to eight trade shows per year.  The product brochure for C-22 alloy is on Haynes' website.  In addition, over 25 technical papers have been written describing uses of, and tests conducted on, Haynes' C-22 alloy.  Haynes distributes these technical papers at various trade shows.  During the past ten years, Haynes' average worldwide sales of its C-22 alloy have been about $22.8-million, and its average sales to customers in the United States have been about $10-million.  Haynes annually spends about $10,000.00 to advertise and promote its alloy products sold under its C-22 trademark.  As a result of Haynes' extensive sales and advertising of its C-22 alloy, C-22 is well known among purchasers and users of corrosion resistant alloys and is a strong mark.

Defendant alleges Dr. Manning lacks personal knowledge concerning the publications in which Haynes has advertised and promoted its C-22 alloy, Haynes annual advertising expenditures to promote alloys sold under its C-22 trademark, and that C-22 is well known among purchasers and users of corrosion resistant alloys and is a strong mark.  Defendant also asserts that the latter statement is not admissible evidence and that Dr. Manning is not competent

to make the statement.  The third Manning Declaration clearly demonstrates that none of the objections are sustainable.

From 1983 to 1987, Dr. Manning was actively involved in introducing Haynes' C-22 alloy to the marketplace.  Dr. Manning reviewed technical data relating to the performance of the alloy, identified potential users for the alloy, and determined who could buy and use the alloy. Dr. Manning met with many potential customers of Haynes' C-22 alloy to try to interest them in using that alloy for various applications.  (third Manning Declaration, paragraph 3).

Dr. Manning prepared a press release (Defendant's App. 1, pages HE00021-HE00027), and was the company contact person for the media and customers who requested information about Haynes' C-22 alloy.  In addition, Dr. Manning prepared various reports and publications regarding Haynes' C-22 alloy and its uses.  (third Manning Declaration, paragraph 4).

In 1992, Dr. Manning became the marketing manager for Haynes.  He was responsible for the marketing activities of Haynes, including the production of brochures and other marketing materials, placement of adds in technical journals, and review of technical papers published by Haynes' authors.  Dr. Manning regularly met with customers and potential customers for Haynes' alloys, and received and reviewed call reports submitted by Haynes' field salesmen.  Dr. Manning also received and reviewed periodic sales reports which recited the sales in dollars and pounds of each of Haynes' alloys.  As a result, Dr. Manning was fully aware of how well C-22 alloy was selling, how well it was being received in the marketplace, and who was buying the alloy.  (third Manning Declaration, paragraph 6).

Upon Dr. Manning's return to Haynes in 2000, he spent six months in research and development to regain an understanding of the company's products, and then moved back to

marketing.  In 2001, he became Director of Marketing.  (third Manning Declaration, paragraph 7).

As Director of Marketing, Dr. Manning is responsible for all marketing activities of the company.  He provides strategic direction to the company, handles introduction of new products, oversees technical services, assists the sales force in determining what type of advertising and promotion will be done, and is also responsible for developing the marketing budget.  In developing the marketing budget, he regularly reviews marketing budgets and expenditures from previous years.  Thus, Dr. Manning has personal knowledge of Haynes' marketing activities and expenses for the years he did not work at Haynes.  (third Manning Declaration, paragraph 8).

Haynes' records of advertising and placement of ads in industry publications are under his direction and control.  Dr. Manning knows from both personal experience and a review of the records of Haynes' advertising, that Haynes has advertised and promoted its C-22 alloy in brochures and in industry publications such as "Chemical Engineering," "Chemical Processing," and "Materials Performance Magazines".  Dr. Manning personally reviews the records of advertising expenses of Haynes and is able to determine how much Haynes spends a year in advertising for its alloys in total, as well as individually for its C-22 alloy.  (third Manning Declaration, paragraphs 14-15).

Interestingly enough, examples of Dr. Manning's extensive involvement with Haynes' C-22 alloy are contained in Defendant's Appendix 1.  For example, document HE 00056 includes a picture of Dr. Manning and in the caption reads "Paul E. Manning (r) commercial developer of Hastelloy® Alloy C-22."  Document HE 00028, an article about Haynes' C-22 alloy, includes a picture of Dr. Manning in which the caption reads "Dr. Paul E. Manning, Market Development Engineer, 317-456-6099".  Additionally, document HE 00021 is a news release for Cabot's,

9

Haynes' predecessor, release of its new C-22 alloy. The news release says "For further information contact: Paul E. Manning". Therefore, it is clear that Dr. Manning had and has extensive personal knowledge of Haynes' advertising and promotion of its C-22 alloy, as well as Haynes' annual advertising expenses. There is no person who would have more personal knowledge of whether C-22 is well known among purchasers and users of corrosion resistant alloys, and also the strength of the mark, than the person who was in charge of its commercial development, namely, Dr. Paul Manning.

Plaintiff produced Dr. Manning in response to Defendant's 30(b)(6) deposition request. During the deposition of Dr. Manning, Manning Ex. 29 was marked for identification. Manning Ex. 29 is attached at Defendant's App. 29. Defendant questioned Dr. Manning extensively on the various technical papers and promotional materials that comprise Manning Ex. 29. Defendant never objected to Dr. Manning's competency or knowledge with respect to Manning Ex. 29. Additionally, Dr. Manning testified to the advertising expenditures of Haynes based on his own personal knowledge from reviewing Haynes' files and advertising reports.

Dr. Manning spends about 20-30% of his time traveling to customer locations, which includes both resellers and fabricators. Dr. Manning spends the majority of his time speaking to and meeting with customers and potential customers of Haynes, as well as speaking to and meeting with their customers who use or could use Haynes' alloys. (third Manning Declaration, paragraph 9). Dr. Manning regularly attends industry trade shows, such as the National Association of Corrosion Engineers show. While at those shows, he speaks to customers and potential customers, as well as visits booths at the trade show and looks at competitors' presentations. (third Manning Declaration, paragraph 10). Dr. Manning, for at least the past five (5) years, has regularly reviewed competitor's literature. (third Manning Declaration, paragraph

12).   Based on Dr. Manning's conversations with customers and potential customers, and his review of call reports from salesmen, Dr. Manning is in a position to conclude, based on personal knowledge, that C-22 is well-known among purchasers and users of corrosion resistant alloys and that those purchasers recognized C-22 as a Haynes alloy.  (third Manning Declaration, paragraph 16).

Customers have approached Dr. Manning and requested permission to use C-22 in their advertising materials for Haynes' products they are reselling or products formed from Haynes' C-22 alloy.  Based on the desire of Haynes' customers to use C-22 in their advertising to identify Haynes as the source of the alloy, and Dr. Manning's conversations with purchasers and users of corrosion resistant alloys, as well as Dr. Manning's personal knowledge of various publications which describe uses or tests involving Haynes' C-22 alloy, Dr. Manning is in a position to conclude that C-22 is a strong mark.  (third Manning Declaration, paragraph 16).

Accordingly, based on at least the above, Dr. Manning clearly has knowledge of the facts set forth in paragraph  9 of the first Manning Declaration relating to the advertising of Haynes, its advertising expenditures, and whether C-22 is well known among purchasers and users of corrosion resistant alloys and is a strong mark.

### d.    Paragraph 10 of the first Manning Declaration

Paragraph 10 reads:

The price of Haynes' C-22 alloy is similar to comparable alloys and is dependent upon the quantity ordered.  Haynes sells to a variety of different consumers who purchase in different quantities.  The degree of care exercised by consumers often will depend on the price of the alloy  which is dictated by the amount purchased.  For example, Haynes sells mill quantities to consumers who

purchase in large volumes of 650-pounds or more. Haynes also sells to service centers who will sell the alloy in lesser amounts. Additionally, Haynes sells to fabricators and resellers. Fabricators will form the alloy into a product or into parts that are assembled with other parts to form a product, and sell the product to an end user. Resellers will cut various forms of the alloy to any size and resell the alloy in smaller quantities.

Defendant challenges this paragraph saying Dr. Manning lacks personal knowledge, there is "no evidentiary support" that the price of Haynes' C-22 alloy is similar to comparable alloys and dependent upon the quantity ordered, and that the stated degree of care exercised by consumers as being depending upon the price of the alloy, which in turn is dictated by the amount purchased is contradicted by Defendant's Statement of Facts asserting a high degree of care by sophisticated customers. The third Manning Declaration demonstrates Dr. Manning's personal knowledge and the experience to make these statements.

In all of the marketing positions held by Dr. Manning, he has been fully aware of the prices of Haynes' alloys. He has also been fully aware of the users of Haynes' C-22 alloy and other Haynes alloys. Dr. Manning has personal knowledge regarding competitors' alloys which are comparable to Haynes' C-22 alloy and the prices of those alloys. This has been, and still is, a part of Dr. Manning's job responsibilities. As a result, Dr. Manning has personal knowledge that the price of Haynes' C-22 alloy is similar to comparable alloys. (third Manning Declaration, paragraph 18). In addition, this statement is confirmed by the testimony of James Laird (Laird Dep., pp. 96-97, 103; Defendant's App. 32).

Based on various discussions Dr. Manning has had with the customers and potential customers, a review of documents involved in sales transactions with the customers, and a

review of call reports, Dr. Manning has personal knowledge that the price of Haynes' C-22 alloy

is dependent upon the quantity ordered.  (third Manning Declaration, paragraph 19).

Haynes' C-22 alloy is sold in larger quantities by Haynes, and resold in smaller quantities

by resellers.  Based upon various discussions Dr. Manning has had with resellers and customers,

as well as visits to their locations and observations of customers who have purchased C-22 alloy,

Dr. Manning is fully aware that the degree of care exercised by consumers often depends upon

the price of the alloy, which is in turn dictated by the amount purchased.  (third Manning

Declaration, paragraph 20).  The evidence asserted by Defendants as establishing "sophisticated

consumers and expensive nature of purchases," relates to direct purchases from the parties and

does not apply to consumers who purchase from resellers.

> ### e.    Paragraph 11 of the first Manning Declaration

Paragraph 11 reads:

> Haynes permits its customers who resell or fabricate Haynes alloys to use
> the Haynes' trademarks in advertising such products. However, Haynes actively
> polices use of its trademarks by others. Whenever Haynes discovers a third party
> misusing C-22 or another of it trademarks, or using C-22 or another Haynes
> trademark for products not made by Haynes, the company notifies the third party
> of the infraction and demands correction.  In nearly every instance the third party
> has corrected the misuse or stopped the infringement after receiving such notice.

Defendant also takes issue with the statement in this paragraph  regarding Haynes'

policing of its trademarks saying Dr. Manning lacks personal knowledge sufficient to enable him

to give this testimony demonstrates that Dr. Manning has sufficient knowledge to testify about

policing.

As Director of Marketing, Dr. Manning is responsible for the policing of Haynes' trademarks. He periodically receives reports from salesmen and others in the company of uses of Haynes' trademark which would be unauthorized or incorrect. Whenever Dr. Manning receives such a notice, he further investigates and contacts counsel as appropriate. Copies of all correspondence from counsel to third parties are sent to Dr. Manning, and he also receives copies of the responses that counsel receives from third parties. Haynes maintains several files relating to its trademarks, and has at least one file containing correspondence with third parties who have misused Haynes' trademark. In connection with the discovery requests in this lawsuit, Dr. Manning has recently reviewed those files. Accordingly, Dr. Manning has personal knowledge of the efforts which Haynes has made over the years involving third party misuse of C-22. (third Manning Declaration, paragraph 20).

### f.     Paragraph 13 of the first Manning Declaration

Paragraph 13 reads:

The use of C22, EC22 and GOC22 by Electralloy for the same alloy that Haynes sells under its registered C-22 trademark is likely to cause confusion and mistake. This is particularly true among those purchasers of corrosion resistant alloys who buy from resellers and fabricators. A reseller or fabricator who receives an order for C-22 alloy bar or other form from a reseller who has purchased an alloy of similar composition from Electralloy and has the material in stock is likely to fill the order for C-22 alloy with the Electralloy material. Similarly, a fabricator asked to make a part from C-22 alloy who has defendant's material may choose to fill the order with the material made by Electralloy. Even if the reseller or fabricator identifies the material as EC22 the designation EC22 is

14

so similar to C-22 that the purchasers may not notice the difference or may attribute the difference to a typographical error, believing he or she received Haynes' material.

Defendant has contested the entire paragraph alleging Dr. Manning lacks personal knowledge and is not competent to testify concerning what a reseller or fabricator may do. The third Manning Declaration clearly shows that Dr. Manning speaks from personal experience and is well qualified to make these statements.

Dr. Manning has been responsible for introducing Haynes' C-22 alloy to the marketplace since the alloys inception. (third Manning Declaration, paragraph 3). Dr. Manning prepared a press release for the C-22 alloy and numerous reports and publications. (third Manning Declaration, paragraph 4). Dr. Manning accepted the Vaaler Award given by "Chemical Processing Magazine" for Haynes' C-22 alloy. (third Manning Declaration, paragraph 5). During the initial introduction of Haynes' C-22 alloy, Dr. Manning regularly met with customers and potential customers for Haynes' alloy. (third Manning Declaration, paragraph 6). Dr. Manning reviewed and received the various call reports submitted by Haynes' field salesmen, and also received and reviewed periodic sales reports which recited the sales in dollars and pounds of each of Haynes' alloy. (third Manning Declaration, paragraph 6). Dr. Manning spends the majority of his time speaking to and meeting with customers and potential customers of Haynes, as well as speaking to and meeting with their customers who use or could use Haynes' alloys. (third Manning Declaration, paragraph 9). 20 to 30 percent of Dr. Manning's time is spent traveling to customer locations. (third Manning Declaration, paragraph 9). These customers include both resellers who purchase Haynes' materials and resells them to others, as

15

well as fabricators who purchase Haynes' materials and fabricate them into parts.  (third Manning Declaration, paragraph 9).

Dr. Manning reviews competitor's literature, and is well aware of the various trademarks being used by competitors.  (third Manning Declaration, paragraph 12).

Dr. Manning has had conversations with resellers and fabricators of corrosion resistant alloys.  (third Manning Declaration, paragraph 22).  He has seen situations where a reseller or fabricator has sold an alloy made by a competitor in response to an order for a Haynes' alloy which had been ordered using a Haynes' trademark.  (third Manning Declaration, paragraph 22). Dr. Manning has also spoken to customers who have received alloys manufactured by other manufacturers believing them to have been produced by Haynes.

Dr. Manning's extensive experience with fabricators, resellers and their customers make him well qualified to tell this Court what these individuals are likely to do.  Paragraph 13 of the first Manning Declaration is based on Dr. Manning's personal knowledge as a result of his job responsibilities and years of experience in the industry.

### g.    Paragraph 14 of the first Manning Declaration

Paragraph 14 reads:

Should Electralloy be permitted to continue to sell and offer to sell an alloy under the designations C22, EC22 or GOC22, particularly an alloy having the same or similar composition as C-22 alloy, Haynes could suffer irreparable damage.

Defendant asserts that this conclusory statement is not admissible evidence, but cites no rule which would preclude the testimony.  Indeed there is no such rule.  Rule 701 of the Federal Rules of Evidence permits lay testimony in the form of opinions and inferences which are

16

rationally based upon the perception of the witness, helpful to a determination of a fact in issue and not based on scientific, technical or other specified knowledge. Paragraph 14 certainly meets these requirements.

Dr. Manning, as Director of Marketing, receives copies of all call reports from field salespeople. (third Manning Declaration, paragraph 18, 19 and 21). Therefore, Dr. Manning is fully aware of all of Haynes' sales of its C-22 alloy. Dr. Manning is also aware of resellers and fabricators of corrosion resistant alloys resell their various alloys. (third Manning Declaration, paragraph 22). Dr. Manning is also aware of the degree of care exercised by consumers, as that degree of care often depends on the price of the alloy, which is in turn dictated by the amount purchased. (third Manning Declaration, paragraph 20). Therefore, Dr. Manning is in the best position to testify as to the harm that Haynes could suffer as a result of Electralloy's use of C22, EC22 and GOC22 for a competing alloy. Thus, the statements contained in paragraph 14 are clearly admissible.

## C.     The Second Manning Declaration

Defendant has contested certain facts set forth in paragraphs 2, 3, and 4 of the second Manning Declaration. First, Defendant asserts that the declaration is deficient because the statements are not made on personal knowledge. To the extent the second Manning Declaration is deficient in this regard, the third Manning Declaration says that Dr. Manning has personal knowledge of the various facts contested by Defendant in the second Manning Declaration, that these facts.

Defendant also asserts that Dr. Manning is not competent to testify as to certain matters in paragraphs 2, 3 and 4 and that certain portions of those paragraphs are not supported by

admissible evidence.  These paragraphs are reproduced below followed by an explanation as to why Defendant's objections should not be sustained.

### a.    Paragraph 2 of the second Manning Declaration

Paragraph 2 reads:

> Haynes has advertised and marketed 36 alloys during the past six years. Most of Haynes' marketing efforts involve more than one alloy.  The average of Haynes' annual advertising and marketing expenses during the past six years is $1,440,000.00.  Most of those efforts involved C-22 alloy.  If you divide Haynes total marketing and advertising expenses by the 36 alloys Haynes makes (even though C-22 alloy is and has been for the past six years in the top 10 in sales of all Haynes' 36 alloys) it comes out to $40,000.00 per year in advertising and marketing expenses for C-22 alloy.

Defendant contents the factual assertions that Haynes spends approximately $40,000 per year in advertising on its C-22 alloy as not being supported by admissible evidence, and further that Manning is not competent to testify to Haynes' advertising.  To the extent the first Manning Declaration is sufficient in this regard, the third Manning Declaration cures these deficiencies.

Haynes' records of advertising and placement of ads in industry publications are under Dr. Manning's direction and control.  In an effort to determine a more complete figure of Haynes' advertising expenses to promote its C-22 alloy, Dr. Manning reviewed Haynes' actual advertising expenses for all of Haynes' alloys for the past six years.  Dr. Manning determined, based on his review, that Haynes has advertised and marketed 36 alloys during the past six years.  Most of Haynes' marketing efforts involve more than one alloy.  Dr. Manning took the average of Haynes' annual advertising and marketing expenses during the past six years and divided that

18

total by the 36 alloys Haynes manufactures.  That calculation comes out to $40,000 per year in advertising and marketing expenses for C-22 alloy.  A report of the marketing expenses used by Dr. Manning in his calculation was produced for Defendant's counsel during discovery and marked as Manning Deposition Ex. 9 during Dr. Manning's deposition.  (third Manning Declaration, paragraph 15).

Clearly, the above figures and calculations upon which the $40,000 figure is derived is supported by admissible evidence.  Dr. Manning as Director of Marketing, is clearly competent to testify to Haynes' marketing practices, as Haynes' records of advertising and placements of ads in industry publications are under Dr. Manning's direction and control.  (third Manning Declaration, paragraph 14).  These are business records of Haynes, and through Dr. Manning's review of them, he is clearly competent to testify as to their content.

### b.    Paragraph 3 of the second Manning Declaration

Paragraph 3 reads:

Whenever Haynes discovers a third party misusing C-22 or another of its trademarks or using C-22 and another Haynes trademark on products not made by Haynes, the company notifies the third party of the infraction and demands correction.  When I learned of uses of C-22 or C22 by others identified by counsel for Electralloy, I instructed our counsel to contact those parties and demand that the misuse of the trademark be stopped or corrected.  Attached is a list of companies and their responses along with the correspondence which is identified on that list.  The list also identifies those companies who are Haynes' customers and have purchased the C-22 alloy from Haynes.  All but one of the notified companies that does business in the United States have corrected their mistakes.

They either withdrew or corrected their web pages, brochures, or other materials in which C-22 was improperly used. Those who have continued to use C-22 are Haynes customers who buy C-22 alloy from Haynes. All have added a notice to their publications which says C-22 is a registered trademark of Haynes International. We are in the process of instituting legal action against the one company that said they will continue to use C22. One foreign company has yet to respond.

Defendant contests the facts set forth in this paragraph relating to Haynes' policing practices with respect to its trademarks. Defendant alleges that Dr. Manning cannot testify to any practices by Haynes during the 1994-2000 time period he did not work for Haynes. Defendant alleges that Plaintiff has provided no support evidencing its policing practices or who Haynes' customers are. Those contents have no merit.

Dr. Manning is responsible for the policing of Haynes' trademarks. Dr. Manning periodically receives reports from salesmen and others in the company of uses of Haynes' trademarks which may be unauthorized or incorrect. Whenever he receives such a notice, he further investigates and contacts counsel as appropriate. Copies of all correspondence from counsel to third parties are copied to Dr. Manning, and Dr. Manning also receives copies of the responses which counsel has received. (third Manning Declaration, paragraph 21).

In addition, Haynes maintains several files relating to its trademarks. The company has at least one file containing correspondence of third parties who have misused Haynes' trademarks. Dr. Manning recently reviewed those files in connection with the discovery requests in this litigation. Therefore, Dr. Manning has personal knowledge of the efforts which Haynes

has made over the years, including the 1994-2000 time frame, involving third party misuse of C-22. (third Manning Declaration, paragraph 21).

Thus, Dr. Manning has personal knowledge of Haynes' policing efforts, and is competent to testify to such at trial. Additionally, to the extent that the Court may consider that this statement of the second Manning Declaration constitutes hearsay, it falls within a recognized hearsay exception. This statement is made in Dr. Manning's position as custodian of Haynes' business records, namely, its records involving its policing of its trademarks. As such, this section of the second Manning Declaration should be admitted as a business record affidavit. Federal Savings & Loan Ins. Corp. v. Griffin, 935 F.2d 691, 702 (5th Cir. 1991). *Cert. denied sub nom.*, Griffin v. First Gibralter Bank, FSB, 502 U.S. 1092 (1992).

### c.      **Paragraph 4 of the second Manning Declaration**

Paragraph 4 reads:

> Also attached is a product sheet from Arcos Industries. Arcos sells welding rod within UNS No. N06022. Arcos has purchased the alloy used for these welding rods from manufacturers other than Haynes. Arcos does not use C-22 or any Haynes trademark to identify this alloy composition. Arcos uses the designation Alloy 22. Indeed, it is common practice for resellers of alloy products within UNS No. N06022 who purchase the alloy from several manufacturers to use Alloy 22 or UNS No. N06022 to identify products the sell which have this alloy composition.

Defendant contests statements relating to the business practices of third party company Arcos, as well as the factual assertion regarding the common practice by resellers of identifying products within alloy composition No. UNS N06022 as Alloy 22. Defendant also asserts that Dr.

Manning is not competent to testify concerning practices of resellers. Defendant's objections have no merit.

As part of his job responsibilities, Dr. Manning regularly reviews competitors' literature. (third Manning Declaration, paragraph 12). Dr. Manning also reviewed the product sheet from Arcos Industries that was attached to the second Manning Declaration. This product sheet supports many of the statements he made about Arcos It says that Arcos is selling welding rods within UNS No. N06022 and clearly evidences that Arcos uses the designation at "Alloy 22". During his years at Haynes, Dr. Manning has regularly met with customers and potential customers for Haynes' alloys. (third Manning Declaration, paragraph 4, 6, 9, 10, 16, 18, 19, 20 and 22). Since Dr. Manning is aware of what Arcos has purchased from Haynes, he knows whether Arcos purchased the alloy composition it used as welding rods from someone other than Haynes. Thus, based on a review of the product sheet from Arcos Industries, Dr. Manning is competent to testify as to the statements about Arcos contained in paragraph 4 of the second Manning Declaration.

Based on Dr. Manning's extensive knowledge and experience in the alloy industry, regarding customers, competitors, fabricators, resellers, described above, Dr. Manning clearly has personal knowledge and is competent to testify as to the common practice of resellers of alloy products within UNS No. N06022 to concerning how they identify their products.

**Conclusion**

Because the Manning Declarations, as fully discussed above, satisfy all of the criteria under Fed. R. Civ. P. 56(e), the Manning Declarations should not be stricken.  Dr. Manning clearly has personal knowledge on the issues to which he testifies, the evidence is admissible at trial, and Dr. Manning is competent to testify as to those facts or allegations.  Thus, Defendant's Motions to Strike the Manning Declarations must be denied.  An appropriate form of Order is attached.

Respectfully submitted,

BUCHANAN INGERSOLL PC

Dated:  October 21, 2005                    By:     */s/ Bryan H. Opalko*
                                                   Lynn J. Alstadt
                                                   Pa. I.D. No. 23487
                                                   Bryan H. Opalko
                                                   Pa. I.D. No. 86721
                                                   BUCHANAN INGERSOLL PC
                                                   301 Grant Street, 20th Floor
                                                   Pittsburgh, PA  15219-1410
                                                   Phone:  412-562-1632
                                                   Fax:  412-562-1041
                                                   Attorneys for Plaintiff

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on this 21st day of October, 2005, a true and correct copy of the foregoing PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTIONS TO STRIKE THE DECLARATIONS OF PAUL MANNING was served on the attorneys for Defendant by overnight courier addressed as follows:

> Emily Barnhart, Esquire
> BLANK ROME LLP
> One Logan Square
> 18th and Cherry Streets
> Philadelphia, PA  19103

> */s/ Bryan H. Opalko*
> Bryan H. Opalko