IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HAYNES INTERNATIONAL, INC., a Delaware corporation, ) ) ) | |
| Plaintiff, ) ) | Civil Action No. 04-197(E) |
| v. ) ) | JURY TRIAL DEMANDED |
| ELECTRALLOY, a Division of G.O. CARLSON, INC., a Pennsylvania corporation, ) ) ) ) | Judge Cohill |
| Defendant. ) | |

## THIRD DECLARATION OF PAUL MANNING

1. I am Director of Marketing for Haynes International, Inc. ("Haynes"), and have held that position for the past four years. I am the same Paul Manning who submitted a declaration dated September 26, 2005, and a second declaration on October 10, 2005. The statements made in those declarations are based upon personal knowledge and experience described below.

2. I have a Bachelor of Science Degree and a PhD in materials engineering from Rensselear Polytechnic Institute.

3. I joined Haynes International, then a division of Cabot Corporation, as a corrosion engineer in 1979 and became corrosion group leader in 1981. In late 1983, I moved to the marketing department as a project manager. One of my responsibilities in that position was to introduce Haynes' C-22 alloy, then a new alloy, to the marketplace. In order to fulfill that responsibility, I reviewed technical data relating to the performance of the alloy, identified potential uses for the alloy and determined who could buy and use the alloy. I then met with



many of the potential customers of C-22 alloy in an effort to interest them in using C-22 alloy for various applications.

4. As the person responsible for the marketing of Haynes' C-22 alloy, I prepared a press release which is pages HE 00021 through HE 00027 of Defendant's Appendix 1. I was the company contact person for the media and customers who requested information about this product. I was also responsible for preparing reports and publications about C-22 alloy and its uses. Document HE 00028 in Defendant's Appendix 1 is one of several reports that I prepared.

5. Shortly after its introduction, 39 judges chosen by "Chemical Processing Magazine" from the chemical industry selected C-22 alloy for the Vaaler Award given by this industry publication. The selection was based upon the perceived potential of this alloy for contributing to efficient and effective operation of chemical processing plants. As reported in the article, that is page HE 00056 of Defendant's Appendix 1, I attended the awards ceremony and received the award on behalf of the company.

6. In 1986 or 1987 I became marketing manager for corrosion alloys. In 1992 I became marking manager for the entire company. In those positions I was responsible for the marketing activities of Haynes International, including production of brochures and other marketing materials, placement of ads in technical journals and review of technical papers published by Haynes' authors. I regularly met with customers and potential customers for Haynes alloys. I received and reviewed the call reports submitted by Haynes' field salesman. I also received and reviewed periodic sales reports which recited the sales in dollars and pounds of each of Haynes' alloys. Consequently, I knew how well C-22 alloy was selling, how well it was being received in the marketplace, and who was buying the alloy.

7. I left Haynes in November 1994 and returned in May, 2000. Upon my return, I spent six months in the research and development department to regain an understanding of the company's products, and then moved back to marketing. In 2001, I became Director of Marketing.

8. As Director of Marketing, I am responsible for all marketing activities of the company. I provide strategic direction to the company, handle introduction of new products, oversee technical services, assist the sales force and determine what type of advertising and promotion will be done. I am also responsible for developing the marketing budget. In developing marketing budgets, I regularly review marketing budgets and expenditures from previous years. Thus, I am well aware of Haynes' marketing activities and expenses for the years I did not work for Haynes.

9. I spend a majority of my time speaking to and meeting with customers and potential customers of Haynes, as well as speaking to and meeting with their customers who use or could use Haynes' alloys. Each year I spend 20-30% of my time traveling to customer locations. These customers include both resellers who purchase Haynes' materials and resell them to others and fabricators who purchase Haynes materials and fabricate them into parts.

10. While I held all of my marketing positions, I regularly attended industry trade shows, such as the National Association of Corrosion Engineers Show. While at those trade shows, I spoke to customers and potential customers. I also visited each of the booths at the trade show and looked at presentations by competitors.

11. As Marketing Director, I receive copies of all call reports from field sales people. These reports describe sales calls on customers who buy directly from Haynes and users who purchase Haynes' alloys through customers of Haynes, as well as potential customers and users

of Haynes' materials. On occasion, I also see purchase orders received from customers and related sales documents for C-22 alloy and other Haynes' alloys.

12. For at least the past five years I have regularly reviewed competitor's literature.

13. I am also responsible for the trademark portfolio of Haynes International. The company's trademark files are under my direction and control. As a result of those responsibilities, I know which trademarks are registered. In those files, I have copies of the Certificates of Registration as well as reports indicating dates of registration and when a renewal or further action is due. Whenever employees of Haynes International have questions about trademark usage or status they usually come to me to answer those questions. Because of my responsibilities for Haynes' trademarks, I know that Haynes registered C-22 as a trademark in 1996 and that Haynes filed affidavits under Sections 8 & 15 of the Lanham Act which were accepted and acknowledged by the United States Patent and Trademark Office.

14. The company's records of advertising and placement of ads in industry publications are under my direction and control. I know both from personal experience and a review of the records of Haynes' advertising that Haynes advertised and promoted its C-22 alloy in brochures and in industry publications such as "Chemical Engineering," "Chemical Processing" and "Materials Performance Magazines." I personally reviewed the records of advertising expenses of Haynes International and determined that Haynes annually spends about $10,000.00 per year to advertise and promote its alloy products under its C-22 trademark. This estimate is based only on the cost of printing brochures specifically directed to Haynes' C-22 alloy.

15. In an effort to determine a more complete figure of Haynes' advertising expenses to promote its C-22 alloy, I reviewed Haynes' actual advertising expenses for all of Haynes

alloys for the past six years. Haynes has advertised and marketed 36 alloys during the past six years. Most of Haynes' marketing efforts involve more than one alloy. The average of Haynes' annual advertising and marketing expenses during the past six years is $1,440,000.00. Most of those efforts involved C-22 alloy. If you divide Haynes total marketing and advertising expenses by the 36 alloys Haynes makes (even though C-22 alloy is and has been for the past six years in the top 10 in sales of all Haynes' 36 alloys) it comes out to $40,000.00 per year in advertising and marketing expenses for C-22 alloy. A report of these marketing expenses was produced for Defendant's counsel during discovery and marked as Manning Deposition Ex. 9 during my deposition.

16. Based upon my conversations with customers and potential customers, as well as discussions with customers and potential customers at trade shows, and my reviews of call reports from Haynes' field sales force, I have concluded that C-22 is well-known among purchasers and users of corrosion resistant alloys and that such purchasers and users understand that C-22 alloy is a Haynes alloy.

17. Several of our customers have used and requested permission to use C-22 in their advertising and promotional materials for products purchased from Haynes which they are reselling or for products which are formed from Haynes' C-22 alloy. I am also aware of numerous publications by others in which Haynes' C-22 alloy is identified. Based upon the desire of our customers to use C-22 in their advertising to identify Haynes as the source of the alloy, and my conversations with purchasers and users of corrosion resistant alloys, as well as the publications which describe uses or tests involving C-22 alloy, I have concluded that C-22 is a strong mark.

18. In all of the marketing positions I have held at Haynes, I have been aware of the prices of all Haynes alloys. I have also been aware of the users of C-22 alloy and other Haynes' alloys. I knew then, and now know, the competitors' alloys which are comparable to Haynes' C-22 alloy and the prices of those alloys. That has been, and still is, a part of my job responsibilities. Consequently, I know that the price of Haynes C-22 alloy is similar to several comparable alloys.

19. Based upon my discussions with customers and potential customers, review of documents involved in sales transactions with customers, and review of call reports, I know that the price of Haynes' C-22 alloy is dependent upon the quantity ordered.

20. Haynes' C-22 alloy is sold in larger quantities by Haynes and resold in smaller quantities by its resellers. Based upon discussions with resellers and customers, visits to their locations and observations of customers who have purchased C-22 alloy, I know that the degree of care exercised by customers often depends upon the price of the alloy which is dictated by the amount purchased.

21. As Director of Marketing, I am responsible for the policing of Haynes' trademarks. I periodically receive reports from salesmen and others in the company of uses of Haynes' trademarks which may be unauthorized or incorrect. Whenever I receive such a notice, I further investigate and contact counsel as appropriate. Copies of all correspondence from counsel to third parties are sent to me. I also receive from counsel copies of the responses which he has received. In addition, the company maintains several files relating to its trademarks. The company has at least one file containing correspondence with third parties who have misused Haynes' trademarks. I recently reviewed those files in connection with the discovery requests in

this litigation. Therefore, I have personal knowledge of the efforts which Haynes has made over the years involving third party misuse of C-22.

22. Based upon my conversations with resellers and fabricators of corrosion resistant alloys, I have seen situations where a reseller or fabricator has sold an alloy made by a competitor in response to an order for a Haynes alloy which had been ordered using a Haynes trademark. I have also spoken to customers who have received alloys manufactured by other manufacturers believing them to have been produced by Haynes International. Based upon this information and experience, I know that a reseller or fabricator who receives an order for C-22 alloy and who has purchased an alloy of similar composition from Electralloy, or a fabricator who has been asked to make a part from C-22 alloy who has purchased Defendant's material, may choose to fill the order with a material made by Electralloy.

23. As Director of Marketing, I know the annual sales of all of the Haynes alloys. I am also aware of the level of sales of competitive alloys. Consequently, I know that C-22 alloy has been widely used as a very successful product of Haynes.

24. Since I have been responsible for the introduction of new alloys, I know the number of new alloys which Haynes International has introduced over the past several years. I also know what new alloys have been introduced by competitors. From my conversations with customers and potential customers of Haynes' alloys, reports from field salesmen and attendance at trade shows, I also know the reputation of Haynes in the marketplace. From that knowledge, I have concluded that Haynes is a leader in the development of new nickel based and cobalt based alloys.

I declare that the foregoing, as well as the statements made in my declarations dated September 26, 2005 and October 10, 2005, is and are based upon my personal knowledge and is true and correct, and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code.

Date: October 19, 2005

_____
Paul Manning