# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HAYNES INTERNATIONAL, INC., | ) | |
|    a Delaware corporation, | ) | |
| | ) | |
|                Plaintiff, | ) | Civil Action No. 04-197(E) |
| | ) | |
|        v. | ) | JURY TRIAL DEMANDED |
| | ) | |
| ELECTRALLOY, a Division of G.O. | ) | |
| CARLSON, INC., | ) | Judge Cohill |
|    a Pennsylvania corporation, | ) | |
| | ) | |
|            Defendant. | ) | |

**PLAINTIFF'S BRIEF IN REPLY TO DEFENDANT'S MEMORANDUM
OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT ON COUNTS 1 AND 2 OF ITS COMPLAINT**

Lynn J. Alstadt
Pa. I.D. No. 23487
Bryan H. Opalko
Pa. I.D. No. 86721
BUCHANAN INGERSOLL PC
301 Grant Street, 20th Floor
Pittsburgh, PA  15219-1410
Phone:  412-562-1632
Fax:  412-562-1041
Attorneys for Plaintiff

# TABLE OF CONTENTS

Page

SUMMARY JUDGMENT SHOULD BE ENTERED IN FAVOR
OF PLAINTIFF ON COUNTS 1, 2 AND 3 OF THE COMPLAINT..................................1

I.    C-22 is not Generic ..............................................................................................3

      A.    Competitor's Use ......................................................................................3

      B.    Plaintiff's Use ...........................................................................................5

      C.    Media Usage .............................................................................................5

      D.    Testimony by Persons in the Trade...........................................................6

II.   Defendant's Use of C22, EC22 and GOC22 is
      Likely to Cause Confusion.....................................................................................6

      A.    The Undisputed Facts Establish Confusion is Likely ..............................8

            1.  Similarities of the Marks..................................................................9

            2.  C-22 is a Strong Mark....................................................................10

            3.  Degree of Customer Care and Purchase Price ................................13

            4.  Actual Confusion ...........................................................................13

            5.  Evidence of Bad Faith....................................................................14

III.  Conclusion ..........................................................................................................17

## <u>TABLE OF CASES</u>

<u>Page</u>

Advantage Rent-A-Car v. Enterprise Rent-A-Car Co.,
    238 F.3d 378 (9th Cir. 2001) ........................................................................12

Avery Dennison Corp. v. Sumpton, 189 F.3d 868 (9th Cir. 1999)......................................12

Century 21 Real Estate Corp. v. Century Life of America,
    970 F.2d 874 (Fed. Cir. 1992).......................................................................16

Dr. Seuss Enterprises, LP v. Penguin Books USA, Inc.,
    109 F.3d 1394, n. 14 (9th Cir. 1997) .............................................................15

Dranoff-Perlstein Assocs. v. Sklar, 967 F.2d 852,
    23 USPQ2d 1174 (3rd Cir. 1992) ....................................................................2

Interspace Corp. v. Lapp, Inc., 721 F.2d 460 (3rd Cir. 1983) ...............................................2

Lois Sportswear, U.S.A. Inc. v. Levi Strauss & Co.,
    799 F.2d 867 (2nd Cir. 1986)..................................................................... 13-14

Opticians Ass'n' of Am. v. Independent Opticians of Am.,
    920 F.2d 187 (Fed Cir. 1990)........................................................................1

Standard Oil Company v. Standard Oil Company,
    56 F.2d 973 (10th Cir. 1932) .......................................................................13

TCPIP Holding Co. v. Haar Communications, Inc.,
    244 F.3d 88 (2nd Cir. 2001).........................................................................12

<u>Trump v. Caesars World, Inc.</u>, 645 F.Supp. 1015,
    230 USPQ 594, (D.C.N.J. 1986),
    *aff'd*, 819 F.2d 1135, 2 USPQ2d 1806 (3rd Cir. 1987)....................................10

## <u>OTHER AUTHORITES</u>

<u>Page</u>

McCarthy on Trademarks, Volume 3, § 12.12 ........................................................................3

McCarthy on Trademarks, § 12.13 ........................................................................................3

McCarthy on Trademarks on Trademarks and Unfair Competition
   Volume 3, § 23.12, pages 23-56 ....................................................................................14

McCarthy on Trademarks on Trademarks and Unfair Competition
   Volume 3, § 23.64, pages 23-193 ..................................................................................15

15 U.S.C. §  1057(b) ............................................................................................................1

15 U.S.C. § 1114 ................................................................................................................17

15 U.S.C. § 1125(a) ...........................................................................................................17

**SUMMARY JUDGMENT SHOULD BE ENTERED IN FAVOR
OF PLAINTIFF ON COUNTS 1, 2 AND 3 OF THE COMPLAINT**

A careful review of Defendant's submissions demonstrates that there are no issues of material fact with respect to Counts 1, 2 and 3 of the Complaint and that Plaintiff is entitled to summary judgment on those counts.  Defendant's motions to strike the declarations of Dr. Paul Manning, discussed in its Memorandum in opposition to plaintiff's motion for partial summary judgment and in its Reply Brief in further support of its motion for summary judgment, are without merit for the reasons stated in Plaintiff's Opposition to those motions and Exhibit R separately filed this day.

At page 4 of Defendant's Memorandum of Law in Support of its Motion for Summary Judgment [Docket No. 18], Defendant has correctly stated the law applicable to Counts 1, 2 and 3:

> To prevail on its trademark infringement/unfair competition claims, Haynes must show that:  (1) the C-22 mark is valid and legally protectable; (2) Haynes owns the mark; and (3) Electralloy's use of EC22 is likely to cause confusion concerning the origin of the goods or services.  See Opticians Ass'n. of Am. v. Independent Opticians of Am., 920 F.2d 187, 192 (3rd Cir. 1990) (listing elements).

Section 7(b) of the Lanham Act states:

> (b) *Certificate as prima facie evidence.* -- A certificate of registration of a mark upon the principal register provided by this Act shall be prima facie evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods and services specified in the certificate, subject to any conditions or limitations stated in the certificate.  15 U.S.C. § 1057(b).

In paragraph 6 of Defendant's Responsive Concise Statement of Facts in Opposition to Plaintiff's Statement of Facts in Support of its Motion for Partial Summary Judgment [Docket No. 37], Defendant states, "Defendant admits that Plaintiff holds a trademark registration for C-22." Hence, Haynes has established the first two elements required to prevail on Counts 1, 2 and 3 of the Complaint.

While the parties disagree concerning the third element, likelihood of confusion, the issue of likelihood of confusion poses a question of law. A likelihood of confusion exists when "consumers viewing the mark would probably assume that the product or service it represents is associated with the source of a different product or service identified by a similar mark." Dranoff-Perlstein Assocs. v. Sklar, 967 F.2d 852, 862, 23 USPQ2d 1174 (3rd Cir. 1992). In Interspace Corp. v. Lapp, Inc., 721 F.2d 460 (3rd Cir. 1983), the Court of Appeals for the Third Circuit stated that when the goods involved in a trademark infringement action directly compete with each other, a court "need rarely look beyond the mark itself " to determine likelihood of confusion. Interspace Corp., 721 F.2d at 462. For noncompeting goods, the courts have developed a nonexhaustive list of factors to consider in determining whether there is a likelihood of confusion between marks.

Here, the facts concerning the use of the infringing designations by Defendant and the products sold and offered for sale under those designations cannot be disputed and are fully set forth in the record. That record clearly shows that Electralloy has sold and offered to sell under the designations C22, EC22 and GOC22 the same alloy composition as Haynes sells under its registered trademark C-22. Such use occurred in capabilities sheets and a brochure that have been given to customers and potential customers and posted on Defendant's website. Electralloy has offered the product in ingot, bar, billet and plate forms, while Haynes has sold the alloy in

the form of sheet, plate, wire, bar, tubing, piping, coated electrodes, and welding filler material. Hence, the goods directly compete with one another and confusion is likely because the designations used by defendant fully incorporate Haynes federally registered trademark. Moreover, an analysis of the factors considered for non-competing goods set forth in the case law reveals that confusion is likely.

I.     **C-22 is not Generic**

Defendant has asserted that C-22 is generic. Yet, Plaintiff's federal registration constitutes a strong presumption that the term is not generic and Defendant bears the burden of overcoming the presumption. *See* Volume 3, McCarthy on Trademarks, § 12.12 and cases there cited. A copy of that section is attached as Attachment 1. Professor McCarthy has identified the following types of evidence which can prove genericness: competitor's use which has not been contested, Plaintiff's use, dictionary definitions, media usage, testimony of persons in the trade and consumer surveys. Volume 3, McCarthy on Trademarks § 12.13. There are no consumer surveys or dictionary definitions of C-22. The other types of evidence which has been presented does not overcome the strong presumption that C-22 is not generic.

A.     **Competitor's Use**

There is no uncontested use of C-22 or C22 by a third party. No competitor of Haynes uses C-22. The chart submitted as Defendant's App. 4 lists alloy manufacturers throughout the world. The chart identifies eight companies who make an alloy within UNS No. N06022. Two of those companies, Foroni, an Italian company, and Bohler, an Australian company, do not operate in the United States. (Defendant's App. 3, Manning Dep., p. 98). VDM uses Nicrofer 5621 hMoW. Special Metals and Carpenter use Alloy 22. Allvac is listed as using Nickelvac C22, but that use was "inadvertent and unintentional" and was changed to Nickelvac 22. (Ex. L,

second Manning Declaration, pp. HE 00694-HE 00695). Allegheny uses AL 22. None of these entities use the character string C22 in the body of their designations. Hence, the only United States manufacturer of an alloy within UNS No. N06022 that uses C-22 to designate their alloy is Haynes. Even Defendant says that it no longer uses C22 and alleges that any such use was a mistake.

In its statement of undisputed facts, at paragraph 42, Defendant has asserted that third party use is rampant, and elsewhere Defendant has characterized such use as "evidencing years of unchecked use of C-22 as a generic term, unassociated with Plaintiff." (Defendant's Reply Brief in Further Support of its Motion for Summary Judgment, pp. 5-6). At pages 1-2 of its Opposition memorandum, Defendant asserts, "Plaintiff's failure to police its mark over the past two decades has allowed C-22 to pass into the public domain." But, inspection of the documents upon which Defendant relies, coupled with the chart and correspondence submitted as Plaintiff's Exhibit L, demonstrates that both statements are contrary to the undisputed facts.

The documents submitted as Defendant's Appendices 5, 16, 17, 18, 20-24 and 27-37 have no date other than the date within the past year on which they were retrieved and printed by Defendant's counsel. Most bear the printed date of 3/10/2005. One was printed on 11/11/2004, another on 2/17/2005, and another on 8/28/2005. Many of the documents clearly relate to the alloy made and sold by Haynes under its C-22 trademark. The documents in Defendant's Appendices 17, 18, 29 and 30 identify the alloy using Haynes' HASTELLOY trademark. The studies of C-22 alloy referenced in Defendant's Appendices 38 and 39 involved material supplied by Haynes (Defendant's App. 32, Laird Dep., pp. 224, 238). The authors of Defendant's Appendices 16, 17, 19- 22, 24, 25, 27, 35 and 37 are Haynes' customers. (Ex. L, second Manning Declaration, ¶¶ 3-4 and HE 00713). Just as the local grocery store who buys products

from H. J. Heinz Company and Pepsico can advertise that they sell Heinz ketchup and Pepsi soft drinks, Haynes' customers may advertise that they offer C-22 alloy.  Many resellers and fabricators of C-22 alloy who are Haynes customers used C22 (Haynes' registered C-22 trademark without the dash) to promote the alloy composition.  At best, this use was permissible and at worst it was an innocent misuse.  When asked to correct any misuse, these companies corrected the mistake.[1]  Several placed notices on their websites that C-22 is a registered trademark of Haynes International.

Defendant also alleges that "C-22" functions as a grade designation."  But, that contention was advanced and overcome during the prosecution of the application that led to Haynes' federal registration.  Issuance of the registration resolved the issue, determining that C-22 was a trademark, not a grade designation.

## B.    Plaintiff's Use

Plaintiff has not used C-22 generically.  Since the mark was registered in 1996, Haynes has used the ® notation with C-22.  Oftentimes, Haynes has used the generic term alloy and the UNS No. N06022 in combination with C-22.  (*See* Defendant's App. 1).

## C.    Media Usage

The only evidence that could be considered media usage are the technical papers presented as Defendant's Appendices 28, 29 and 30.  But in every article, it is clear that C-22 refers to an alloy made by Haynes International.

---

[1] Except for one company, J. M. Canty, against whom legal action will be commenced.

### D.     Testimony by Persons in the Trade

There is no testimony from anyone in the trade that C-22 is generic.  Not even the declarations from friendly customers, Ulrich Trenkman and Harry Wehr, say that C-22 is generic.  All they say is that they have used C-22 as well as EC22, 622 and UNS N0622 to order and refer to an alloy composition within UNS No. N06022.  The fact that each uses several designations to order the same composition is itself an indication that C-22 is not generic or being used in the same way as the generic terms "aspirin" and "cellophane" have been used.

Thus, the evidence relied upon by Defendant for support of its claim that C-22 is generic fails to establish or even suggest genericness.  There is a strong presumption that the federally registered C-22 trademark is not generic.  That strong presumption has not been overcome.  The undisputed evidence reveals that C-22 is a valid and legally protectable mark owned by Haynes International.

## II.     Defendant's Use of C22, EC22 and GOC22 is Likely to Cause Confusion

Defendant, in its Motion for Summary Judgment, totally ignores its use of C22 and GOC22.  Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Partial Summary Judgment, says "Electralloy does not even use C22".  (p. 13).  Then, Defendant admits to "its brief use of C22".  (p. 14).  As to GOC22, Defendant complains that "Plaintiff now raises for the first time the claim that Defendant's use of 'GOC22' infringes Plaintiff's 'C-22' registration".  (p. 12).  But, there is no denial that Electralloy has used GOC22.

Although there appears to be a contradictory evidence as to the period of time over which Electralloy used C22, there is no dispute that Electralloy did use the designation for the same alloy as Haynes sells under its registered C-22 trademark.  Electralloy's sales manager for melt products testified "The Exhibit B is a capability statement or capability chart showing alloys that

6

we are capable of producing."  (Defendant's App. 45, Lewis Dep., p. 29).  The footer on

Exhibit B says, "http://www.electralloy.com/remelt.htm    7/15/2004".  This footer is applied by

a computer when a web page is printed to show the URL or location of the page on the

worldwide web and the date on which the page was printed.  Exhibit J is another printout of the

same page on a later date as indicated by the computer applied footer

"http://www.electralloy.com/remelt.htm    8/30/2005".  Mr. Lewis testified that at some date not

known to him, the capabilities chart was changed to replace C22 with EC22 and the alloy

composition corresponding to those designations would be within UNS No. N06022.

(Defendant's App. 45, Lewis Dep., pp. 26, 37-38).

    Defendant has submitted a declaration of Eugene Hynes in which he declares that the

"Capabilities section of Electralloy's website, including the two-page capabilities sheet

referencing 'EC22' was last updated April 3, 2003."  In support of that statement he provides a

capabilities chart similar to Exhibit B but containing EC22 rather than C22 and bearing the

footer "http://www.electralloy.com/more of electralloy capabilities.htm    10/5/2005."  The footer

indicates that this page was printed on October 5, 2005 and is at a location different from the

location of Exhibits B and J on Electralloy's website.  We know the locations are different from

the specific portions of the URL that follow "electralloy.com/".  Exhibits B and J are at page

"remelt.htm", while the recently printed page is at page "more of electralloy capabilities.htm".

Thus, the evidence shows use of C22 at one location and use of EC22 at another location.  The

computer generated dates on Exhibits B and J reliably show that Electralloy was using C22 on its

website on July 15, 2004 and August 31, 2005.  One can reasonably infer that such use also

occurred between those dates.  Whether the page corresponding to Exhibits B and J is today

available on Electralloy's website cannot be determined from the record.  Mr. Hynes' Declaration

does not say that the page is no longer available. All the declaration says is that another page, an alleged updated page, is available.

At the time of filing the Complaint, Plaintiff was aware that Electralloy had used C22 and EC22 for its alloy products. In the Plaintiff's prayer for relief for each of Counts 1 and 2, Plaintiff requested the following relief:

> (b)     That ELECTRALLOY be enjoyed and restrained from the manufacture, sale, and offer for sale of any alloy product under the trademarks "C-22" and/or "EC22" or any colorable variations thereof."

GOC22 is clearly a colorable variation of C22 and EC22.

Plaintiff learned of the use of GOC22 during discovery. During depositions of Electralloy's employees, there was testimony that Electralloy also used the designation GOC22 for an alloy having the same composition as that sold under Haynes' federally registered C-22 mark. (Defendant's App. 45, Lewis Dep., pp. 70-71; Defendant's App. 43, Weaver Dep., p. 38). Thus, the issue as to whether Defendant's use of GOC22 infringes Plaintiff's federally registered C-22 trademark is properly before the Court.

### A.     The Undisputed Facts Establish Confusion is Likely

There is no dispute as to the factors to be considered in determining likelihood of confusion. Moreover, the underlying facts relating to most of those factors is also not in dispute. Indeed, the only contradictory evidence relates to the period of time during which Defendant's capabilities sheet containing the C22 designation was available. The exact period of such use is not material.

1.    **Similarities of the Marks**

Plaintiff's registered mark is C-22.  Defendant has used the designations C22, EC22 and GOC22.  Plaintiff contends that C22, EC22 and GOC22 incorporate Haynes registered C-22 mark.  Defendant responds, "There is neither factual or legal support for Plaintiff's assertion."  Yet, anyone can clearly see that the letter C and number 22, which comprise the predominate elements in Plaintiff's trademark, are present in the same order in the designations used by Defendant.  Hence, the designations used by Defendant are similar in appearance and sound to Plaintiff's registered C-22 trademark.

Defendant's argues that the designation EC22 is dissimilar because EC unmistakably refers to "Electralloy Corporation" and that EC22 is part of a family of EC prefixed designations which Electralloy has been using since the 1970's.  But there is no document of record that shows a recognizable "family" of EC marks.  The capabilities sheet that Electralloy submitted with the Declaration of Eugene Hynes (pgs. 2-3 of Tab 1) as the current capabilities sheet utilized by Electralloy, lists 151 alloys.  Only 11 (approximately 7%) of the listed alloys have EC as a prefix and they are not grouped together.  There is no survey evidence or even a single customer declaration which says that members of the public understand EC to refer to Electralloy Corporation.  James Laird has been with Haynes since 1983 as a field salesman, marketing manager, vice president of marketing and vice-president of international sales and marketing.  He certainly is familiar with the relevant market.  Mr. Laird answered "No." when asked, "Are you aware that Electralloy uses a family of EC prefix designations for many if its different alloys?"  (Defendant's App. 32, Laird Dep., pp. 16-17, 175).

Defendant further attempts to skew the issue at hand by alleging that C-22 is always used next to Plaintiff's registered mark "Hastelloy" and that Defendant's designation EC22 is always

used next to the word "Electralloy". However, the capabilities sheet which Electralloy submitted with the declaration of Eugene Hynes directly refutes Electralloy's position. In its capabilities sheet, EC22 is used alone. It is not preceded by Electralloy.

Even if Electralloy always used Electralloy in front of C22 or EC22 or GOC22 and Haynes always used HASTELLOY in front of C-22, that would not negate the similarity. The situation would then be similar to the dispute between Donald Trump and Caesars World, Inc. over Trump's use of "Trump's Palace" for a casino despite Caesar's trademark "Caesar's Palace" for a casino. The trial court, in finding a likelihood of confusion observed, "Inevitably many persons will shorten the proposed Trump name to the 'Palace'". Trump v. Caesars World, Inc., 645 F.Supp. 1015, 230 USPQ 594, (D.C.N.J. 1986), aff'd, 819 F.2d 1135, 2 USPQ2d 1806 (3rd Cir. 1987). Here, the public would inevitably drop Electralloy and use C22, EC22 or GOC22, just as they have used C-22 alone to refer to Plaintiff's alloy.

When due consideration is given to the overall impressions of the designations as found in the marketplace, Defendant's designations C22, EC22 and GOC22 are so similar to Haynes' C-22 designation that they create a likelihood of confusion.

### 2.    <u>C-22 is a Strong Mark</u>

The parties differ as to whether the undisputed facts of record demonstrate that C-22 is a strong mark. Defendant points to the fact that Plaintiff disclaimed the "22" portion of its mark after a settlement with Jessop Steel. That disclaimer reads "No claim is made to the exclusive right to use '22' apart from the mark as shown." (Ex. A). Here, Defendant has not used 22 apart from C-22, but instead has used C22 in each of its designations C22, EC22 and GOC22. This fact cannot be disputed. Defendant also alleges that Plaintiff has conducted almost no advertising of C-22 and stood idly by while competitors adopted C-22 or a similar designation to

describe their own goods under UNS No. N06022.  But, this allegation is not supported by the evidence.

Plaintiff has submitted evidence of its advertising of C-22 alloy in brochures, trade magazines and at trade shows.  In addition, there are several technical papers written by Haynes authors and other which promote the use of C-22 alloy.  (*See* Defendant's App. 1).  The record also shows that when third party misuse of C-22 was brought to Plaintiff's attention, Plaintiff notified the users of the misuse and requested prompt correction.  In almost every instance, those entities recognized and respected Plaintiff's trademark rights in its C-22 trademark and corrected the error.  (Exhibit L and attachments).  Defendant further alleges, at page 18 of its Opposition, that even though the misuse was corrected, "Any presumption of strength is easily overcome by evidence of rampant third party usage of C-22 . . .".  However, as discussed above (*supra.,* pp. 3-4), such third party use was not rampant and much of it was in connection with the alloy made by Haynes.  The only competitor who had used C22 was Allvac who said the use was "inadvertent and unintentional" and promptly corrected the error.  (Ex. L, p. HE 00694-HE 00695).  Moreover, the allegations that such use was "rampant" is contraindicated by the deposition testimony of Paul Manning who was unaware of many of the alleged third party uses, (Defendant's App. 3, Manning Dep., pp. 98-99, 168-165, 175) and the testimony of Electalloy's Wayne Weaver.  He could identify only one third party use, the inadvertent, intentional and now corrected use by Allvac.  (Defendant's App. 43, Weaver Dep., pp 31-31).

The use of C-22 by Haynes' customers to promote products they make and sell using Haynes' C-22 alloy is further evidence that the mark is strong.  If C-22 were a weak mark, customers would not want to use it.

Defendant also attacks Plaintiff's expenditures on advertising as proof of its mark's strength citing three dilution cases involving products and services sold through television and radio as well as print advertising to the general public.  TCPIP Holding Co. v. Haar Communications, Inc., 244 F.3d 88, 99-100 (2nd Cir. 2001) involved the mark "The Children's Place" for retail toy stores.  Rental car services were in issue in Advantage Rent-A-Car v. Enterprise Rent-A-Car Co., 238 F.3d 378, 382 (9th Cir. 2001).  Office products were the products sold under the "Avery" and "Dennison" marks in Avery Dennison Corp. v. Sumpton, 189 F.3d 868, 879 (9th Cir. 1999).  Here, the goods are raw materials supplied to industrial companies who form the alloy into parts and who incorporate those parts into engines, chemical processing plants, pollution control devices and other products.  The cases cited by Defendant involving consumer products and services are irrelevant.   The amount of advertising expenditures incurred are, in fact, substantial for this market and indicate the strength of the mark, particularly when others in the industry such as Defendant do little or no advertising.

The facts relevant to the strength of Plaintiff's mark which are not in dispute are as follows.  Plaintiff owns an incontestable trademark registration.  Plaintiff has spent nearly $10,000.00 per year in advertising directed specifically to products sold under its C-22 trademark, and about $40,000.00 of its total annual marketing expenses applies to promoting C-22 alloy.  Such advertising is directed toward the relative market.  Plaintiff has sent numerous letters to customers and competitors regarding their misuse of the C-22 mark.  Those customers and competitors of Plaintiff have recognized and respected Plaintiff's trademark rights in its C-22 trademark.  It is clear from this uncontradicted evidence submitted by Plaintiff that C-22 is a strong mark and that the factor weights in favor of Plaintiff.

Defendant attempts to make some issue that Plaintiff is derelict in its citation of case support. However, it is clear that the various factors to determine likelihood of confusion are factually intensive. Thus, cases which are decided on their own specific facts, such as the consumer products and services cases cited by Defendant, are of little import. Defendant also dismisses the Declarations of Paul Manning as inadmissible rather than dispute the facts he recites or point to contradictory evidence. As is apparent from the Third Declaration of Paul Manning, Exhibit R submitted herewith, Dr. Manning has personal knowledge of the matters stated in his declarations and extensive experience in the nickel-base alloys industry.

### 3.    Degree of Customer Care and Purchase Price

In attempting to refute Plaintiff's position in this regard, Defendant focuses entirely on the individuals who buy directly from the parties and who purchase substantial quantities of the material. But, all of these customers are fabricators and resellers. Many such resellers sell small amounts of C-22 alloy. For example, Fast Alloys offers a size range of 2000mm x 1000mm up to 6000mm x 2000mm. (Defendant's App. 22). Those sizes are from about 6 feet by 3 feet up to about 18 feet by 3 feet. In the industry, these sizes are considered small. The standard size of a sheet of plywood available at Home Depot and other stores is 8 feet by 4 feet. Dr. Manning has personally observed customers who purchase from Haynes' direct customers, and his testimony that such customers may be confused is not contradicted by any evidence of record.

### 4.    Actual Confusion

Defendant seems to make a big deal that there has been no evidence of actual confusion. However, as the Second Circuit has observed, "Of course it is black letter law that actual confusion need not be shown to prevail under the Lanham Act, since actual confusion is very difficult to prove and the Act requires only a likelihood of confusion as to source." Lois

Sportswear, U.S.A. Inc. v. Levi Strauss & Co., 799 F.2d 867 (2nd Cir. 1986). There is no requirement that Plaintiff await a consummation of threatened injury to obtain injunctive relief. Standard Oil Company v. Standard Oil Company, 56 F.2d 973 (10th Cir. 1932). As recognized by Professor McCarthy, "where allegedly infringing sales have been minimal to date, to require any proof of actual confusion would unfairly penalize the trademark owner for acting promptly to 'protect its trademark rights before serious damage has occurred.'" Volume 3, McCarthy on Trademarks and Unfair Competition, § 23:12, p. 23-55 (Thompson/West 2005) (*citing* Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co., 799 F.2d 867 (2nd Cir. 1986). As Professor McCarthy further states, "[p]ersons who are truly confused will often never be aware of the deception. Others who were confused and later learned of their deception will often not bother to report the fact. Therefore, it is error for a court to find that the plaintiff failed to prove injury caused by actual confusion and conclude that plaintiff has failed to prove a violation of the Lanham Act." Volume 3, McCarthy on Trademarks and Unfair Competition, § 23:12, p. 23-56.

Because Electralloy's sales of its alloy under C22, EC22 and GOC22 designations have been limited to six customers and Electralloy's advertising has been minimal, it is understandable that Haynes has found no evidence of actual confusion. Thus, this factor does not weigh in favor of Defendant and may be disregarded in a likelihood of confusion analysis.

### 5.    **Evidence of Bad Faith**

Electralloy alleges that Plaintiff provides no evidence of bad faith and then admits that Electralloy had prior knowledge of Haynes' C-22 trademark for an alloy composition within UNS No. N06022. Defendant also admits that Electralloy developed the alloy having a composition within UNS No. N06022 for a customer who wanted, but could not find the C-22 alloy in a desired form. Defendant ignores the testimony that Electralloy could have called the

alloy by any name, but used C22 for the alloy designation. Defendant also asserts that "There is no testimony whatsoever that the customer made reference to Haynes' C-22 mark." (Docket No. 38, Defendant's Opposition Br., p. 22). While that is true, the purchase order from that customer says "C22" under the product description. (*See* Defendant's App. 48, p. EC 0009). Either the customer had referred to Haynes' C-22 mark or was using the C22 designation adopted by Electralloy. This constitutes substantial evidence of bad faith.

Electralloy seeks to justify its selection of EC22 by alleging a consumer association between Electralloy and goods bearing prefix "EC". However, there is no evidence from any customer of such association. Indeed, the evidence contradicts the assertion. (*See* Plaintiff's discussion *supra*., p. 9).

Electralloy further alleges that it chose EC22 to expressly communicate that the product complied with UNS No. N06022 specifications. Yet, Defendant's own sales manager for melt products gave testimony which reveals that this contention has no basis in fact:

> Q.     Do you know the USN number that is associated with C-22 alloy?
>
> A.     Not off the top of my head.

(Defendant's App. 45, Lewis Dep., p. 21).

What is clear is that Haynes is the senior user in the marketplace. Electralloy is a newcomer. Many courts have held that when an issue of likelihood of confusion is in doubt, that the question will be resolved in favor of the senior user. Volume 3, McCarthy on Trademarks and Unfair Competition, § 23:64, pp. 23-193; Dr. Seuss Enterprises, LP v. Penguin Books USA, Inc., 109 F.3d 1394, n. 14 (9th Cir. 1997) ("In a close case amounting to a tie, doubts are resolved in favor of the senior user." Preliminary injunction against trademark infringer was affirmed.).

Both parties sell and offer to sell to the same customers. Exhibits B and J list the forms being offered by Electralloy as "INGOT-BAR-BILLET." Electrally offered plate under GOC22. Haynes' report of actual sales list slab/ingot, bar, billet and plate. (Defendant's App. 52).

When the marks appear on similar goods, as they do here, the degree of similarity required to prove a likelihood of confusion is less than in the case of dissimilar products. Century 21 Real Estate Corp. v. Century Life of America, 970 F.2d 874, 877 (Fed. Cir. 1992) (when marks would appear on virtually identical goods and services, the degree of similarity necessary to support a conclusion of likely confusion declines). Defendant's distinction between "finished" and "unfinished" products is a distinction without a difference using lawyer's words rather than the terms used by those in the industry. Accordingly, this factor clearly weighs in Plaintiff's favor.

**III.**     <u>**Conclusion**</u>

There are no issues of material fact with respect to Counts 1, 2 and 3 of the Complaint.

The undisputed facts clearly show Defendant's use of C22, EC22 and GOC22 constitutes

trademark infringement, false designation of origin in violation of 15 USC §§ 1114 and 1125(a).

Consequently, summary judgment in favor of Plaintiffs on Counts 1 and 2 of the Complaint

should be granted.  Additionally, since the standards are the same for Count 3, Plaintiff further

submits that summary judgment in favor of Plaintiff on Count 3 of the Complaint should also be

granted.

Respectfully submitted,

BUCHANAN INGERSOLL PC

Dated:  October 21, 2005          By:     */s/ Bryan H. Opalko*
                                                       Lynn J. Alstadt
                                                       Pa. I.D. No. 23487
                                                       Bryan H. Opalko
                                                       Pa. I.D. No. 86721
                                                       BUCHANAN INGERSOLL PC
                                                       301 Grant Street, 20th Floor
                                                       Pittsburgh, PA  15219-1410
                                                       Phone:  412-562-1632
                                                       Fax:  412-562-1041
                                                       Attorneys for Plaintiff

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on this 21st day of October, 2005, a true and correct copy of the foregoing PLAINTIFF'S BRIEF IN REPLY TO DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON COUNTS 1 AND 2 OF ITS COMPLAINT was served on the attorneys for Defendant by overnight courier addressed as follows:

> Emily Barnhart, Esquire
> BLANK ROME LLP
> One Logan Square
> 18th and Cherry Streets
> Philadelphia, PA  19103

> */s/ Bryan H. Opalko*
> Bryan H. Opalko