of a product, this does not give that seller an exclusive right to call that product by its name. For example, while some people may identify only the dominant brand with generic names such as "personal computer," "operating system" or "word processing program," that does not give the owner of that brand the right to exclude competitors from using these generic names.[8]

## § 12:12   Proving and disproving genericness—burden of proof

Genericness is a question of fact.[1] This means that a genericness finding is subject to appellate review under the

---

distinctive sense, characteristic, or meaning. . . . The [1984] Lanham Act amendments dealt only with the latter."); Murphy Door Bed Co. v. Interior Sleep Systems, Inc., 874 F.2d 95, 10 U.S.P.Q.2d 1748, 1752 (2d Cir. 1989) (Learned Hand was speaking of the genericness of an "invented term," not a term in common generic use before the plaintiff allegedly appropriated it); First Nat'l Bank & Trust Co. v. First Nationwide Bank, 15 U.S.P.Q.2d 1457, 1459, 1990 WL 64768 (W.D. Mo. 1990) (Learned Hand's "buyer understanding" test is applicable "only where a word has been invented and thereafter enters common usage and becomes generic." The buyer understanding test does not apply to a term in common generic use.).

*But compare* Berner Int'l Corp. v. Mars Sales Co., 987 F.2d 975, n.4, 26 U.S.P.Q.2d 1044, n.4 (3d Cir. 1993) (dictum that the view that the buyer understanding test only applies to invented phrases is "highly problematic").

[8]*See* Eastern Air Lines, Inc. v. New York Air Lines, Inc., 559 F. Supp. 1270, 218 U.S.P.Q. 71, 75 (S.D.N.Y. 1983) (The mere fact that a survey respondent answered "Eastern Air Lines" when he heard the word "shuttle" does not necessarily prove that "shuttle" is a trademark. "All that it demonstrates is that a likely response to any generic word is the name of the best known producer or manufacturer of that product."); Hunt Masters, Inc. v. Landry's Seafood Restaurant, Inc., 240 F.3d 251, 57 U.S.P.Q.2d 1884 (4th Cir. 2001) (a survey showing consumer association of CRAB HOUSE with plaintiff's restaurant serving crab is irrelevant because the consumer understanding test is not relevant to a word that was commonly used prior to the plaintiff's appropriation of it.); discussion of "de facto secondary meaning" at § 12:47.

[Section 12:12]

[1]Dan Robbins & Associates, Inc. v. Questor Corp., 599 F.2d 1009, 202 U.S.P.Q. 100 (C.C.P.A. 1979); In re Northland Aluminum Products, Inc., 777 F.2d 1556, 227 U.S.P.Q. 961 (Fed. Cir. 1985) (whether a term is a generic name is a question of fact; evidence of public understanding of the term may be obtained from "any competent source, such as consumer surveys, dictionaries, newspapers and other publications"); Bath & Body Works, Inc. v. Luzier Personalized Cosmetics, Inc., 76 F.3d 743, 37

GENERIC TERMS                                              § 12:12

clearly erroneous rule.[2]

If the plaintiff has a federal registration, it constitutes a strong presumption that the term is not generic and defendant bears the burden of overcoming the presumption.[3] The

_____

U.S.P.Q.2d 1779 (6th Cir. 1996); Door Systems, Inc. v. Pro-Line Door Systems, Inc., 83 F.3d 169, 38 U.S.P.Q.2d 1771 (7th Cir. 1996); Committee for Idaho's High Desert v. Yost, 92 F.3d 814, 39 U.S.P.Q.2d 1705 (9th Cir. 1996).

[2]Keebler Co. v. Rovira Biscuit Corp., 624 F.2d 366, 207 U.S.P.Q. 465 (1st Cir. 1980) (generic determination is subject to F.R.C.P. 52(a) clearly erroneous rule); A.J. Canfield Co. v. Honickman, 808 F.2d 291, n.24, 1 U.S.P.Q.2d 1364 (3d Cir. 1986) (determination of genericness is a question of fact subject to review under the clearly erroneous test); In re Merrill Lynch, Pierce, Fenner & Smith, Inc., 828 F.2d 1567, 4 U.S.P.Q.2d 1141 (Fed. Cir. 1987) (finding term generic is a factual finding reviewed under the clearly erroneous rule); Mil-Mar Shoe Co. v. Shonac Corp., 75 F.3d 1153, 37 U.S.P.Q.2d 1633 (7th Cir. 1996) (placement of a mark as not generic is a factual finding subject on appeal to review for clear error; district court finding that the designation "Warehouse Shoes" was not generic was reversed).

[3]*Second Circuit:* Reese Pub. Co., Inc. v. Hampton Intern. Communications, Inc., 620 F.2d 7, 205 U.S.P.Q. 585 (2d Cir. 1980) (dictum).

*Fourth Circuit:* Convenient Food Mart, Inc. v. 6-Twelve Convenient Mart, Inc., 690 F. Supp. 1457, 8 U.S.P.Q.2d 1353 (D. Md. 1988), judgment aff'd, 870 F.2d 654, 10 U.S.P.Q.2d 2037 (4th Cir. 1989) (when a mark that is the subject of an incontestable registration is challenged, the challenger must overcome the prima facie presumption of validity; presumption was overcome); Glover v. Ampak, Inc., 74 F.3d 57, 37 U.S.P.Q.2d 1602, 156 A.L.R. Fed. 721 (4th Cir. 1996) (presumption not overcome).

*Sixth Circuit:* Bath & Body Works, Inc. v. Luzier Personalized Cosmetics, Inc., 76 F.3d 743, 37 U.S.P.Q.2d 1779, 43 Fed. R. Evid. Serv. 1131, 34 Fed. R. Serv. 3d 30, 1996 FED App. 0056P (6th Cir. 1996); Nartron Corp. v. STMicroelectronics, Inc., 305 F.3d 397, 64 U.S.P.Q.2d 1761, 2002 FED App. 0341P (6th Cir. 2002), cert. denied, 123 S. Ct. 1486, 155 L. Ed. 2d 227 (U.S. 2003) (incontestable registration creates a presumption that the registered designation is not a generic name: presumption was overcome and designation was found to be a generic name).

*Seventh Circuit:* TE-TA-MA Truth Foundation—Family of URI, Inc. v. World Church of Creator, 297 F.3d 662, 63 U.S.P.Q.2d 1760 (7th Cir. 2002), cert. denied, 537 U.S. 1111, 123 S. Ct. 864, 154 L. Ed. 2d 784 (2003) ("[A]n incontestable registration is more like a bursting bubble presumption of non-genericness than the sort of indomitable presumption that the [registrant] seeks.").

*Eighth Circuit:* WSM, Inc. v. Hilton, 724 F.2d 1320, 221 U.S.P.Q. 410, 14 Fed. R. Evid. Serv. 1491 (8th Cir. 1984) (presumption was overcome).

*Ninth Circuit:* Coca-Cola Co. v. Overland, Inc., 692 F.2d 1250, 216 U.S.P.Q. 579, 11 Fed. R. Evid. Serv. 1746 (9th Cir. 1982) (presumption

Seventh Circuit has held that while a contestable federal registration is prima facie evidence that the term is not generic, this presumption "bursts" once the challenger presents "sufficient evidence" of genericness. When a defendant does so, plaintiff-registrant cannot rely upon the registration as sufficient evidence to preclude summary judgment of dismissal. "The presumption really serves only to shift the burden of production to the defendant."[4]

If the term is not federally registered, once defendant raises the defense, the burden is on plaintiff to prove trademark status: that is, lack of genericness.[5]

The Second Circuit has held that for unregistered terms,

---

was not overcome); Miss World (UK) Ltd. v. Mrs. America Pageants, Inc., 856 F.2d 1445, 8 U.S.P.Q.2d 1237 (9th Cir. 1988) (Federal registration is prima facie evidence that the registered term is not a generic name. Dictum.)

[4]Liquid Controls Corp. v. Liquid Control Corp., 802 F.2d 934, 231 U.S.P.Q. 579 (7th Cir. 1986) (summary judgment finding "Liquid Controls" generic was affirmed). See Door Systems, Inc. v. Pro-Line Door Systems, Inc., 83 F.3d 169, 38 U.S.P.Q.2d 1771 (7th Cir. 1996) ("The presumption of validity that federal registration confers . . . evaporates as soon as evidence of invalidity is presented. . . . Its only function is to incite such evidence and when the function has been performed the presumption drops out of the case."); TE-TA-MA Truth Foundation—Family of URI, Inc. v. World Church of Creator, 297 F.3d 662, 63 U.S.P.Q.2d 1760 (7th Cir. 2002), cert. denied, 537 U.S. 1111, 123 S. Ct. 864, 154 L. Ed. 2d 784 (2003) ("[A]n incontestable registration is more like a bursting bubble presumption of non-genericness than the sort of indomitable presumption that the [registrant] seeks.")

See discussion of the significance of the registration presumptions at § 12:60.

[5]National Conference of Bar Examiners v. Multistate Legal Studies, Inc., 692 F.2d 478, 216 U.S.P.Q. 279 (7th Cir. 1982), cert. denied, 464 U.S. 814, 78 L. Ed. 2d 83, 104 S. Ct. 69, 220 U.S.P.Q. 480 (1983); Reese Publishing Co. v. Hampton International Communications, Inc., 620 F.2d 7, 205 U.S.P.Q. 585 (2d Cir. 1980); E. R. Squibb & Sons, Inc. v. Cooper Laboratories, Inc., 536 F. Supp. 523, 214 U.S.P.Q. 441 (S.D.N.Y. 1982); A.J. Canfield Co. v. Honickman, 808 F.2d 291, 1 U.S.P.Q.2d 1364, 1378 (3d Cir. 1986) ("[Plaintiff] has not sustained its burden of proving that [the contested term] . . . is not generic."); Blinded Veterans Ass'n v. Blinded American Veterans Foundation, 872 F.2d 1035, 10 U.S.P.Q.2d 1432 (D.C. Cir. 1989) (for unregistered terms, the burden is on plaintiff to prove lack of genericness); Mil-Mar Shoe Co. v. Shonac Corp., 75 F.3d 1153, 37 U.S.P.Q.2d 1633 (7th Cir. 1996) (for unregistered terms, the burden is on the claimant to establish that it is not an unprotectable generic name); Filipino Yellow Pages, Inc. v. Asian Journal Publications, Inc., 198 F.3d 1143, 53 U.S.P.Q.2d 1001 (9th Cir. 1999) ("If a supposedly valid mark is

the burden is on the challenger to prove genericness where the allegation is that the public has come to use an invented or coined term as a generic name after use of the term as a trademark. This creates a "presumption of nongenericness" in cases of allegedly public expropriation. However, the burden of proving non-genericness is on the proponent of trademark rights where the allegation is that the term was in common usage as a generic name *before* its use allegedly as a trademark.[6]

When one applies to the Patent and Trademark Office (PTO) for registration of a term as a trademark, the burden of showing that the term is unregistrable as a generic name is with the PTO.[7]

### § 12:13    Proving and disproving genericness—Types of evidence

*Timing of Evidence:* Because a designation originally distinctive and protected can become generic over time, evidence of genericness can relate to the time of the alleged infringement, not necessarily the date when the trademark

---

not federally registered, however, the plaintiff has the burden of proving non-genericness once the defendant asserts genericness as a defense."); Ale House Management, Inc. v. Raleigh Ale House, Inc., 205 F.3d 137, 54 U.S.P.Q.2d 1040 (4th Cir. 2000) ("[B]ecause [defendant] suggests that the term 'ale house' is generic and [plaintiff] has not registered it, [plaintiff] bears the burden of establishing that it is not generic." It could not do so.); America Online, Inc. v. AT & T Corp., 243 F.3d 812, 57 U.S.P.Q.2d 1902 (4th Cir. 2001) (Because AOL did not register the phrase "You Have Mail," it had to carry the burden of proving the phrase was a valid mark and was not generic. It could not meet this burden.).

[6]Murphy Door Bed Co. v. Interior Sleep Systems, Inc., 874 F.2d 95, 10 U.S.P.Q.2d 1748 (2d Cir. 1989) (distinguishing *Reese,* cited *supra;* challenger was held to have succeeded in proving that over time the public expropriated the term "Murphy Bed" as a generic name for any bed that folds into a closet).

[7]In re Merrill Lynch, Pierce, Fenner & Smith, Inc., 828 F.2d 1567, 4 U.S.P.Q.2d 1141, 1143 (Fed. Cir. 1987) (PTO failed to carry its burden of proof). *Accord:* In re Central Sprinkler Co., 49 U.S.P.Q.2d 1194, 1998 WL 929628 (Trademark Trial & App. Bd. 1998) ("With respect to genericness, the [Patent and Trademark] Office has the burden of proving this refusal with 'clear evidence' of genericness." The PTO carried its burden to prove that the word applied for was a generic name).

proponent first introduced its designation onto the market.[1]

Evidence to prove genericness can include the following:[1.1]

(1) *Competitors' Use.* Generic use by competitors which has not been contested by plaintiff.[2]

---

[Section 12:13]

[1]Nora Beverages, Inc. v. Perrier Group of America, Inc., 164 F.3d 736, 49 U.S.P.Q.2d 1385 (2d Cir. 1998) ("Competitors are free to use an owner's trade dress if it has become generic over time even if it was originally distinctive."), later proceedings, Nora Beverages, Inc. v. Perrier Group of America, Inc., 269 F.3d 114, 60 U.S.P.Q.2d 1038 (2d Cir. 2001) (the critical date on which to assess genericness is the date on which the accused infringer entered the market with the accused designation. A 1.5 liter clear, ribbed polyethylene bottle for spring water was held to have been "generic" as of the date when defendant entered the market and hence was not protectable as trade dress.).

[1.1]*See* Dan Robbins & Associates, Inc. v. Questor Corp., 599 F.2d 1009, 202 U.S.P.Q. 100 (C.C.P.A. 1979) (relevant evidence may consist of purchaser testimony, consumer surveys and listings in dictionaries, trade journals, newspapers and other publications); In re Northland Aluminum Products, Inc., 777 F.2d 1556, 227 U.S.P.Q. 961 (Fed. Cir. 1985) (evidence of public understanding of the term may be obtained from "any competent source, such as consumer surveys, dictionaries, newspapers and other publications"); In re Merrill Lynch, Pierce, Fenner & Smith, Inc., 828 F.2d 1567, 4 U.S.P.Q.2d 1141, 1143 (Fed. Cir. 1987) ("Evidence of the public's understanding of the term may be obtained from any competent source, such as purchaser testimony, consumer surveys, listings in dictionaries, trade journals, newspapers and other publications."); Glover v. Ampak, Inc., 74 F.3d 57, 37 U.S.P.Q.2d 1602 (4th Cir. 1996) ("[E]vidence may come from purchaser testimony, consumer surveys, listings and dictionaries, trade journals, newspapers and other publications."); Nartron Corp. v. STMicroelectronics, Inc., 305 F.3d 397, 64 U.S.P.Q.2d 1761, 2002 FED App. 0341P (6th Cir. 2002), cert. denied, 123 S. Ct. 1486, 155 L. Ed. 2d 227 (U.S. 2003) (sources can include dictionaries, newspapers and other publications, competitors' use, use by the proponent of trademark status and use by third parties in registrations).

*See* Zivin, "Understanding Generic Words," 63 Trademark Rep. 173 (1973); Folsom & Teply, "Trademarked Generic Words," 89 Yale L.J. 1323 (1980), 70 Trademark Rep. 206 (1980); Swann, "The Economic Approach to Genericism: A Reply to Folsom & Reply," 70 Trademark Rep. 243(1980); Dougherty, Daw and Evans, "FTC v. Formica: The Generic Trademark Issue," 2 Communications & Law 1 (1980); Greenbaum, Ginsburg & Weinberg, "A Proposal for Evaluating Genericism After 'Anti-Monopoly,' " 73 Trademark Rep. 101 (1983).

[2]E. I. Du Pont de Nemours & Co. v. Yoshida International, Inc., 393 F. Supp. 502, 185 U.S.P.Q. 597 (E.D.N.Y. 1975) ("[A] considerable period of acquiescence by the trademark owner in generic use, possibly coupled with a failure to take adequate affirmative action to correct generic use

(2) *Plaintiff's Use.* If the proponent of trademark status itself uses the term as a generic name, this is strong evidence of genericness.[3] A kind of estoppel arises when the proponent of trademark use is proven to have itself used the term before the public as a generic name, yet now claims that the public perceives it as a trademark.[3.1]

(3) *Dictionary Definitions.* While not determinative, dictionary definitions are relevant and sometimes persuasive in determining public usage.[4] This is based upon the assumption that dictionary definitions "usually reflect the public's

---

thereafter."). *See* § 17:17.

[3] In re Sports Tigers, 213 U.S.P.Q. 670, 1982 WL 52014 (T.T.A.B. 1982). ("Hocker" used generically by applicant); In re Bausch & Lomb, Inc., 206 U.S.P.Q. 534 (T.T.A.B. 1979); Turtle Wax, Inc. v. Blue Coral, Inc., 2 U.S.P.Q.2d 1534, 1987 WL 123820 (T.T.A.B. 1987) (use of a term in a generic, non-source indicating manner by the proponent of trademark rights in the term is persuasive evidence of genericness); Birtcher Electro Medical Systems, Inc. v. Beacon Laboratories, Inc., 738 F. Supp. 417, 16 U.S.P.Q.2d 1411 (D. Colo. 1990) (the advertising of the proponent of trademark status used the term "Argon beam coagulator" as a noun naming a kind of surgical instrument, e.g., Bard ABC Argon Beam Coagulator; this is evidence of generic significance); Pilates, Inc. v. Current Concepts, Inc., 120 F. Supp. 2d 286, 57 U.S.P.Q.2d 1174 (S.D.N.Y. 2000) (plaintiff and its predecessors, including Joseph Pilates, the founder of the exercise method, used the term "Pilates" in a generic sense to name a method of exercise and associated equipment).

*Compare* Maremont Corp. v. Air Lift Co., 463 F.2d 1114, 174 U.S.P.Q. 395 (C.C.P.A. 1972). See §§ 12:26-12:29.

[3.1] *See* BellSouth Corp. v. White Directory Publishers, Inc., 42 F. Supp. 2d 598, n. 5, 49 U.S.P.Q.2d 1801 (M.D.N.C. 1999) (express disavowal of rights by AT&T, followed by extensive third party use resulted in generic status for the "Walking Fingers" logo. AT&T and BellSouth's predecessors "affirmatively represented their belief that the logo was generic, used it in a generic manner, told others to do the same and did not object when others did the same. . . . [S]uch conduct estops BellSouth from turning on its head over thirty years of history by now seeking trademark protection of the 'walking fingers' logo.").

[4] Surgicenters of America, Inc. v. Medical Dental Surgeries, Co., 601 F.2d 1011, 202 U.S.P.Q. 401 (9th Cir. 1979) (dissent would hold that dictionary definition of single words in a composite is not probative of public usage of the composite); S.S. Kresge Co. v. United Factory Outlet, Inc., 598 F.2d 694, 202 U.S.P.Q. 545 (1st Cir. 1979) (dictionary definition relied upon); Miller Brewing Co. v. Falstaff Brewing Corp., 503 F. Supp. 896208 U.S.P.Q. 919, (D.R.I. 1980), rev'd on other grounds, 655 F.2d 5, 211 U.S.P.Q. 665 (1st Cir. 1981) (dictionary definitions at most create a rebuttable presumption of consumer perception); Gimix, Inc. v. JS & A Group, Inc., 699 F.2d 901, 217 U.S.P.Q. 677 (7th Cir. 1983) (dictionary is "an es-

perception of a word's meaning and its contemporary usage."[4.1] The Trademark Board has held that judicial notice can be taken of dictionary listings.[42]

But dictionary definitions cannot be conclusive of genericness, "if for no other reason than that this would endow editors of such works with the power to destroy trademarks merely by defining them generically."[5] As the Seventh Circuit observed: "[N]umerous terms have been found to be generic despite their absence from the dictionary."[6] A number of composite terms have been found to be in wide generic use

---

pecially appropriate source of evidence"); Murphy Door Bed Co. v. Interior Sleep Systems, Inc., 874 F.2d 95, 10 U.S.P.Q.2d 1748 (2d Cir. 1989) (dictionary listings are "influential" because they reflect the general public's perception of a mark's meaning and implication); Mil-Mar Shoe Co. v. Shonac Corp., 75 F.3d 1153, 37 U.S.P.Q.2d 1633 (7th Cir. 1996) ("Because generic use implies use consistent with common understanding, we have often looked to dictionaries as a source of evidence on genericness."); Creative Gifts, Inc. v. UFO, 235 F.3d 540, 57 U.S.P.Q.2d 1321, n.5 (10th Cir. 2000) (challenger failed to prove genericness because it presented no consumer surveys and no listings in dictionaries, trade journals or newspapers).

[4.1]Harley-Davidson, Inc. v. Grottanelli, 164 F.3d 806, 49 U.S.P.Q.2d 1458 (2d Cir. 1999) ("Though not conclusive, dictionary definitions of a word to denote a category of products are significant evidence of genericness . . .").

[42]In re Patent & Trademark Services Inc., 49 U.S.P.Q.2d 1537, 1998 WL 970180 (Trademark Trial & App. Bd. 1998); Continental Airlines Inc. v. United Air Lines Inc., 53 U.S.P.Q.2d 1385, 1999 WL 1421649 (T.T.A.B. 2000) (taking judicial notice of dictionary definitions in holding "e-ticket" to be a generic name for electronic airline ticketing services); In re 3Com Corporation, 56 U.S.P.Q.2d 1060, n. 3, 2000 WL 1182872 (T.T.A.B. 2000) ("The Board may properly take judicial notice of dictionary definitions, including definitions in technical reference works.").

[5]In re Minnetonka, Inc., 212 U.S.P.Q. 772 (T.T.A.B. 1981). See In re Vasco Metals Corp., 154 U.S.P.Q. 191 (T.T.A.B. 1967) (listing of allegedly generic name in Thomas' Register is not conclusive evidence of genericness); In re Bridge, 170 U.S.P.Q. 428 (T.T.A.B. 1971); Berner Int'l Corp. v. Mars Sales Co., 987 F.2d 975, 26 U.S.P.Q.2d 1044, 1050 (3d Cir. 1993) ("Dictionary entries also reflect lexicographical judgment and editing which may distort a word's meaning or importance.").

[6]Liquid Controls Corp. v. Liquid Control Corp., 802 F.2d 934, 231 U.S.P.Q. 579 (7th Cir. 1986). See Door Systems, Inc. v. Pro-Line Door Systems, Inc., 83 F.3d 169, 38 U.S.P.Q.2d 1771 (7th Cir. 1996) ("No dictionary is complete or completely up to date, or tracks the language of the marketplace perfectly. A number of generic terms are not found in dictionaries."). Accord: Continental Airlines Inc. v. United Air Lines Inc., 53 U.S.P.Q.2d 1385, 1999 WL 1421649 (T.T.A.B. 2000)

even though they did not appear in a dictionary.[6.1]

(4) *Media Usage.* Generic usage in the media such as in trade journals and newspapers.[7] The Second Circuit has even said that newspaper and magazine use of a term in a generic sense is a "strong indication of the general public's perception" that the term is a generic name.[8] However, where some media uses of a term are as a trademark and some are as a generic name, this source of evidence may be so indeterminate as to be insufficient proof of generic usage.[9] Computer database search firms, such as the NEXIS service, can quickly produce evidence of certain media generic uses of a term.[10]

(5) *Testimony of Persons in the Trade.* The understanding of those who are familiar with the marketplace usage of the designation in question can be helpful evidence on the genericness issue. However, affidavits from friendly employees and dealers are of little weight, as having the appearance of bias: "Trademark law is skeptical of the ability of an

---

[6.1]Nartron Corp. v. STMicroelectronics, Inc., 305 F.3d 397, 64 U.S.P.Q.2d 1761, 2002 FED App. 0341P (6th Cir. 2002), cert. denied, 123 S. Ct. 1486, 155 L. Ed. 2d 227 (U.S. 2003) (listing some examples).

[7]Keebler Co. v. Rovira Biscuit Corp., 624 F.2d 366, 207 U.S.P.Q. 465 (1st Cir. 1980); Dan Robbins & Associates, Inc. v. Questor Corp., 599 F.2d 1009, 202 U.S.P.Q. 100 (C.C.P.A. 1979); American Thermos Products Co. v. Aladdin Industries, Inc., 207 F. Supp. 9, 20, 134 U.S.P.Q. 98 (D. Conn. 1962), aff'd, 321 F.2d 577, 138 U.S.P.Q. 349 (2d Cir. 1963); Loctite Corp. v. National Starch & Chemical Corp., 516 F. Supp. 190, 211 U.S.P.Q. 237 (S.D.N.Y. 1981). *See also* Scientific Applications, Inc. v. Energy Conservation Corp., 436 F. Supp. 354, 195 U.S.P.Q. 379 (N.D. Ga. 1977); Birtcher Electro Medical Systems, Inc. v. Beacon Laboratories, Inc., 738 F. Supp. 417, 16 U.S.P.Q.2d 1411 (D. Colo. 1990) (use in generic sense in professional journals).

[8]Murphy Door Bed Co. v. Interior Sleep Systems, Inc., 874 F.2d 95, 10 U.S.P.Q.2d 1748 (2d Cir. 1989).

[9]In re Merrill Lynch, Pierce, Fenner & Smith, Inc., 828 F.2d 1567, 4 U.S.P.Q.2d 1141 (Fed. Cir. 1987) (held not to be sufficient evidence of generic usage by the trade).

[10]In re Merrill Lynch, Pierce, Fenner & Smith, Inc., 828 F.2d 1567, 4 U.S.P.Q.2d 1141, n.1 (Fed. Cir. 1987) (but media uses found by the NEXIS service were not conclusive enough to prove widespread usage of CASH MANAGEMENT ACCOUNT as a generic name). Articles found via a database such as NEXIS are relevant to prove the generic nature of a term claimed as a trademark. *See* Irani, "The Importance of Record Evidence to Categorize Marks as Generic, Descriptive or Suggestive," 83 Trademark Rep. 607 (1993).

associate of a trademark holder to give an impartial account of the value of the holder's mark."[11]

(6) *Consumer Surveys.*

### § 12:14   Consumer surveys

Consumer surveys have become almost de rigueur in litigation over genericness.[1] Judges are now used to survey evidence and often expect to receive evidentiary assistance by surveys in resolving generic disputes.[2] A litigant who does not introduce a survey to support a generic challenge may be viewed as less than serious by many judges. As Judge Will stated in frustration, "Neither side in this case has produced any consumer surveys or other similar evidence. Both sides

---

[11]Self-Realization Fellowship Church v. Ananda Church of Self-Realization, 59 F.3d 902, 35 U.S.P.Q.2d 1342, 1349 (9th Cir. 1995)(Such evidence of the non-generic nature of an alleged trademark was given little weight and was not sufficient on summary judgment to raise a genuine issue of fact. Term was found generic of a type of organization.). The value of such affidavits is similar to the issue presented of the value of affidavits from friendly business associates on the issue of secondary meaning. *See* §§ 15:74-15:78.

[Section 12:14]

[1]*See* Folsom & Teply, "Surveying 'Genericness' in Trademark Litigation," 78 Trademark Rep. 1 (1988) (critique of existing survey models to test for generic usage, proposing a new model); Swann & Palladino, "Surveying 'Genericness': A Critique of Folsom & Teply," 78 Trademark Rep. 179 (1988); Folsom & Teply, "A reply to Swann & Palladino's Critique of Folsom & Teply's Model Survey," 78 Trademark Rep. 197 (1988); Oddi, "Assessing 'Genericness': Another View," 78 Trademark Rep. 560 (1988) (Proposing a survey question: "What is the primary significance of [trademarked name] to you? (a) The name of a product from a single source or (b) The name of a product.").

[2]*See* discussion of survey evidence at §§ 32:158 et seq. *See also* Magic Wand, Inc. v. RDB, Inc., 940 F.2d 638, 19 U.S.P.Q.2d 1551 (Fed. Cir. 1991) (rejected challenge that TOUCHLESS is a generic name for a type of auto wash services, in part because the challenger introduced no survey evidence); Heroes, Inc. v. Boomer Esiason Hero's Foundation, Inc., 43 U.S.P.Q.2d 1193 (D.D.C. 1997) (rejected challenge that HEROES is generic name of charitable services assisting surviving family of police and firefighters killed in line of duty because, in part, "defendant has introduced no consumer surveys"); Hermes Intern. v. Lederer De Paris Fifth Avenue, Inc., 50 F. Supp. 2d 212, 50 U.S.P.Q.2d 1257 (S.D.N.Y. 1999), rev'd on other grounds, 219 F.3d 104, 55 U.S.P.Q.2d 1360 (2d Cir. 2000) (challenger failed to conduct genericness survey in opposition to the survey of the mark owner: summary judgment of genericness was denied).

are at fault for such laxness."[3] But there is no need for a survey if other evidence overwhelmingly proves that the disputed designation is a generic name.[3.1]

A survey must be directed at the issue of consumer perception as to the significance and meaning of the designation in issue. A survey that merely tests for consumer awareness of the designation is irrelevant.[4]

### § 12:15  Consumer surveys—Thermos survey

Two general models of a genericness survey have evolved.[1] The first has become known as a "Thermos Survey" because it is based on a survey used to prove "Thermos" was a generic name.[2] A Thermos Survey set of questions generally describes the product, puts the respondent in an imaginary situation walking into a store and asks how the respondent would ask for the product. A highly edited portion of the Thermos Survey follows:

> Are you familiar with the type of container that is used to keep liquids, like soup, coffee, tea and lemonade, hot or cold

---

[3]Gimix, Inc. v. JS&A Group, Inc., 213 U.S.P.Q. 1005 (N.D. Ill. 1982). *But see* Nestle Co. v. Chester's Market, Inc., 571 F. Supp. 763, 219 U.S.P.Q. 298 (D. Conn. 1983), rev'd, 756 F.2d 280, 225 U.S.P.Q. 537 (2d Cir. 1985) (The court granted summary judgment finding "toll house" a generic name for chocolate chip cookies, cavalierly rejecting as irrelevant two surveys modeled on the Thermos and Teflon surveys. The court relied on other "surveys" and plaintiff's own generic-type usage. In the author's opinion, in rejecting widely used models of surveys, the court seemed to have already made up its mind that "toll house" was a generic name.).

[3.1]Nartron Corp. v. STMicroelectronics, Inc., 305 F.3d 397, 64 U.S.P.Q.2d 1761, 2002 FED App. 0341P (6th Cir. 2002), cert. denied, 123 S. Ct. 1486, 155 L. Ed. 2d 227 (U.S. 2003) ("Thus, the overwhelming evidence in this case obviates the need for [defendant] to have conducted a consumer survey.").

[4]Stuhlbarg Intern. Sales Co., Inc. v. John D. Brush and Co., Inc., 240 F.3d 832, 57 U.S.P.Q.2d 1920 (9th Cir. 2001) ("Simply asserting consumer awareness of the term begs the question.").

**[Section 12:15]**

[1]*See* Simonson, "An Empirical Investigation of the Meaning and Measurement of 'Genericness'," 84 Trademark Rep. 199 (1994) (comparing and examining the built-in bias of the Thermos and Teflon survey methods).

[2]American Thermos Products Co. v. Aladdin Industries, Inc., 207 F. Supp. 9, 134 U.S.P.Q. 98 (D. Conn. 1962), aff'd, 321 F.2d 577, 138 U.S.P.Q. 349 (2d Cir. 1963).

© West, a Thomson business, Rel. 29, 3/2004