IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HAYNES INTERNATIONAL, INC., | ) |
| Plaintiff, | ) Civil Action No. 04-197(E) |
| v. | ) JURY TRIAL DEMANDED |
| ELECTRALLOY, a Division of G.O. CARLSON, INC., | ) Judge Cohill |
| Defendant. | ) |

**DEFENDANT'S MOTION TO STRIKE THE THIRD DECLARATION
OF PAUL MANNING IN SUPPORT OF PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendant Electralloy, a Division of G.O. Carlson, Inc. ("Electralloy"), through its undersigned counsel, pursuant to Federal Rule of Civil Procedure 56(e), respectfully moves this Court to strike the Third Declaration of Paul Manning ("3rd Manning Decl."), submitted as the nearly exclusive support for Plaintiff's Motion for Partial Summary Judgment.[1] Hoping that the "third time is a charm," Plaintiff submits yet a third declaration from the same declarant, Paul Manning. While this latest iteration purportedly corrects the deficiencies of the second Manning declaration (which purportedly corrected the deficiencies of the first Manning declaration), in truth, it does nothing but cast further doubt on Plaintiff's good faith in prosecuting its claims.

On October 14, 2005 and October 18, 2005, Defendant moved to strike the first two Manning declarations in their entireties. See Docket Nos. 36 and 40, respectively. For the same reasons the first and second Manning declarations must be stricken in their entireties, pursuant to Federal Rule 56(e), so too must the 3rd Manning Decl. now be stricken: (i) it is not based on

---

[1] In support of this Motion, Defendant also relies upon and incorporates the legal discussion contained in Defendant's Brief in Opposition to Plaintiff's Motion for Partial Summary Judgment [Docket No. 38] and Defendant's Reply Brief in Further Support of Its Motion for Summary Judgment [Docket No. 42].

022664.00115/11479296v.2

personal knowledge; (ii) it does not constitute evidence that would be admissible at trial; and (iii) Mr. Manning is not competent to testify to the statements therein.

Plaintiff's latest attempt to save the Manning declaration and its Motion through the addition of some irrelevant statements regarding Mr. Manning's work history and a few embellishments surrounding the alleged conclusions of fact does nothing to cure the profound defects of the 3rd Manning Decl. The few statements of fact that are not hearsay, are wholly unsupported by any admissible documents or citations to the record, or are contradicted by documents of record and by Mr. Manning's prior testimony. The time has come to say "enough is enough."

### A.    None of the Cited Documents Are of Record.

Mr. Manning repeatedly makes allegations of fact and conclusions based upon documents and other information that were not produced in discovery, are not before the Court, about which Defendant has had no opportunity to review or question Plaintiff, and which are not even at this late date attached to the 3rd Manning Decl. submitted to the Court. In essence, Plaintiff asks the Court to accept statements at Mr. Manning's word that these documents exist and that they say what he says. *Ipse dixit* is obviously not sufficient to meet Plaintiff's burden in moving for partial summary judgment.

| ¶ | Reference to Documents and Information Not of Record | Evidentiary Failing |
|---|---|---|
| 11 and 16 | "I receive <u>call reports</u> from field sales people. These reports describe sales calls on customers who buy directly from Haynes and users who purchase Haynes' alloys through customers of Haynes, as well as potential customers and users of Haynes' materials. On occasion, I also see <u>purchase orders</u> received from customers and <u>related sales documents</u> for C-22 alloy and other Haynes' alloys" (emphasis added). "Based upon my . . . reviews of call reports . . . <u>I have concluded</u> that C-22 is well-known among purchasers and users of corrosion resistant | Not one "call report," "purchase order" or "sales document" is attached, or was ever produced during the entirety of this litigation. Nothing of record supports the statements and descriptions of these documents, or any conclusions derived therefrom. |

2

| ¶ | Reference to Documents and Information Not of Record | Evidentiary Failing |
|---|---|---|
|  | alloys and that such purchasers and users understand that C-22 alloy is a Haynes alloy" (emphasis added). |  |
| 14 | "The company's records of advertising and placement of ads in industry publications are under my direction and control. I know from personal experience and a review of the records of Haynes' advertising that Haynes advertised and promoted its C-22 alloy in brochures and in industry publications such as "'Chemical Engineering,'" "'Chemical Processing'" and "'Materials Performance Magazines.'" | Plaintiff produced in discovery not one ad from any of these magazines, no receipts proving expenditure for placement of such ads, and does not now attach any such materials. |
| 14 | "Haynes annually spends about $10,000.00 per year to advertise and promote its alloy products under its C-22 trademark." | Not one document has been produced that substantiates this figure, and none are attached now. |
| 15 | "Haynes had advertised and marketed 36 alloys during the past six years. . . . the average of Haynes' annual advertising and marketing expenses during the past six years is $1,440,000.00. Most of those efforts involved C-22 alloy. . . . C-22 alloy is and has been for the past six years in the top 10 in sales of all Haynes' 36 alloys." | The Court is supplied with no citation or document supporting the alleged "36 alloys" figure, the alleged $1,440,000 in company-wide advertising expenditures, the allegation that "most of those efforts involved C-22," or the allegation that C-22 is in the top 10 in Haynes' sales. |
| 17 | "I am also aware of numerous publications by others in which Haynes' C-22 alloy is identified. . . . Based upon . . . the publications which describe uses or tests involving C-22 alloy, I have concluded that C-22 is a strong mark" (emphasis added). | No specific publications are cited or provided. There is no information of record establishing what type of use has been made of C-22, if any, whether the use is generic, or whether any connection to Haynes is made in these alleged publications. |
| 18 | "I know that the price of Haynes C-22 alloy is similar to several comparable alloys." | Plaintiff has not produced in discovery, nor to the Court, any pricing information related to its C-22 alloy, or with respect to any competitors' alloys. |
| 20 and 22 | "Haynes' C-22 alloy is . . . resold in smaller quantities by its resellers" (emphasis added). | -This bald statement creates the impression that Haynes distributes its product not just through Haynes' service centers and mills directly, but also through "resellers" that Haynes controls and monitors, and that such sales attribute to Haynes. There are no documents or other evidence of record supporting this assertion.<br>-In fact, these entities are regular customers like any other of Haynes', Haynes has not entered into any distribution agreements with any U.S. entities, Haynes has no control over these entities or their sales, these companies do not report to Haynes or provide commissions to Haynes, and there is no evidence of record regarding how these entities sell the product once they purchase it from Haynes, i.e. whether or not it is sold with a generic C-22 stamp, with Haynes' trademark on it, or whether these entities' customers have any idea who Haynes |

3

| ¶ | Reference to Documents and Information Not of Record | Evidentiary Failing |
|---|---|---|
|  |  | is or the initial producer of the product. |
| 21 | "I periodically receive <u>reports</u> from salesmen and others in the company of uses of Haynes' trademarks which may be unauthorized or incorrect . . Copies of all <u>correspondence</u> from counsel to third parties are sent to me. I also receive from counsel copies of the <u>responses</u> which he has received. In addition, the company maintains several files related to its trademarks. The company has at least one file containing <u>correspondence</u> with third parties who have misused Haynes' trademarks" (emphasis added). | -Other than documents relating to Defendant, no "reports" from "salesmen and others" at Haynes have been produced or are of record regarding any alleged misuse of Haynes' trademarks in the U.S.<br>-Plaintiff has not produced and there are no documents of record regarding U.S. policing of C-22 from the 1980s, the 1990s or from the 2000s (with the exception of correspondence attached to the 2nd Manning Decl. related to the recent spate of "policing" conducted as a result of this litigation). |

### B.    The Declaration Is Based Upon Hearsay.

Similarly, Mr. Manning bases his statements of fact and "conclusions" upon alleged conversations with unidentified third parties that occurred at unknown times of unidentified substance. None of these alleged third parties have been identified, and no documents were produced during discovery that would establish that such conversations took place. Certainly, none of the mysterious individuals and entities were asked by Plaintiff to provide supporting evidence in this case. Below are illustrative examples of inadmissible third party statements contained in the 3rd Manning Decl. that bear no consideration by the Court.

| ¶ | Statement or Conclusion Based on Third Party Hearsay |
|---|---|
| 16 | "<u>Based upon my conversations</u> with customers and potential customers, as well as discussions with customers and potential customers at trade shows . . . <u>I have concluded</u> that C-22 is well-known among purchasers and users of corrosion resistant alloys and that such purchasers and users understand that C-22 alloy is a Haynes alloy." |
| 17 | "Several of our customers have used and requested permission to use C-22 in their advertising and promotional materials for products purchased from Haynes. . . <u>Based upon . . . my conversations</u> with purchasers and users of corrosion resistant alloys . . . <u>I have concluded</u> that C-22 is a strong mark." |
| 19 and 20 | "<u>Based upon discussions</u> with resellers and customers . . . <u>I know that</u> the degree of care exercised by customers often depends upon the price of the alloy which is dictated by the amount purchased." |
| 22 | "<u>Based upon my conversations</u> with resellers and fabricators of corrosion resistant alloys, <u>I have seen situations</u> where a reseller or fabricator who receives an order for C-22 alloy and who has purchased an alloy of similar composition from Electralloy, or a fabricator who has been asked to make a part from C-22 alloy who has purchased Defendant's material, <u>may choose</u> to fill the order with a material made by Electralloy." |

### C. The Declaration Is Contradicted By Documents of Record And Mr. Manning's Own Testimony.

Many statements in the 3rd Manning Decl. are outright contradicted by documents of record, as well as by prior testimony of Mr. Manning. For example, in the 3rd Manning Decl. Mr. Manning makes the wholly fanciful statement that Haynes spends approximately $40,000 per year advertising the trademark "C-22." See 3rd Manning Decl. at ¶ 15. This figure is allegedly derived by taking the "average" of company-wide advertising and "marketing" expenditures spent over the past six years ($1,440,000.00), divided by the alleged total number of alloys produced by Haynes (36). See id. To be sure, such a figure must be seen as purely theoretical. There is no proof that Haynes *actually* expended even a dollar on C-22 advertising as opposed to Haynes' general advertising. Even if such a figure were accurate, the cited expenditure relates almost exclusively to creation of C-22 advertising materials which is hardly relevant. Without proof that the resulting advertising materials were actually distributed to consumers, and that such advertising had an impact in the minds of consumers, this figure is irrelevant.

In a brazen attempt to hide its duplicity, Plaintiff fails to identify or provide the document to the Court which supposedly supports this bogus advertising expenditure figure. See 3rd Manning Decl. at ¶ 15. A copy of the document in question (HE00566) was previously attached to Defendant's Appendix 14 at p. 2.[2]

An examination of the document shows that the expenditures included in Mr. Manning's calculation have <u>absolutely nothing</u> to do with advertising, let alone "C-22" advertising. See Def.'s App. 14 at p. 2. Examples of such included expenditures are "Legal;" "Fringe Benefits;" various salaries; "Guest Entertainment;" and "Contracted Services." See id. One studies this

022664.00115/11479296v.2

document in vain to find any reliable evidence that would support the assertion that C-22 was widely advertised and, as a result, has come to be widely recognized by consumers. Thus, any references to the fictitious $40,000 C-22 advertising figure must be disregarded by the Court as irrelevant and unsupported.

Even the stated lower $10,000 per year figure cited as the amount spent to print C-22 marketing brochures is belied by the evidence of record. See 3rd Manning Decl. at ¶ 14. During his deposition, Mr. Manning stated that he had an employee pull all records of expenditures for the printing of C-22-related brochures. See Def.'s App. 3., Manning Dep. at pp. 93-95, 150-51. Haynes produced document number HE00567, which was marked Manning deposition Exhibit 9, related to these C-22 brochure expenditures. See Def.'s App. 14 at p. 1. As this page reveals in Mr. Manning's hand written note, and as confirmed by Mr. Manning during his deposition, the total amount spent on the production of C-22 brochures by Haynes from 1992 through 2004 was $40,372, which yields an average of just over $3,100 per year in C-22 printing costs – far less than the claimed $10,000 per year. See id.; Def.'s App. 3, Manning Dep. at pp. 150-51. As stated above, this figure, like the fictitious $40,000 figure above, proves nothing without evidence that such brochures were distributed to consumers and were successful in causing consumers to associate C-22 with Haynes. No such evidence was ever presented.

### D. Mr. Manning Is Not A Trademark Expert.

Statements such as "users understand that C-22 alloy is a Haynes alloy" (¶ 16), "C-22 is a strong mark" (¶ 17), and "the degree of care exercised by consumers often depends upon. . . ." (¶ 20), resemble those one might expect from a qualified trademark expert who had been hired and conducted an extensive consumer survey and interviews. Yet, Haynes has not proffered Mr.

---

[2] At the outset, Plaintiff's arithmetic calculation is incorrect. The six-year "average" company-wide advertising/marketing expenditures is $1,497,482, not $1,440,000. See id.

Manning as a trademark expert, nor could it. Mr. Manning's history working for Haynes and his background as a materials engineer does not qualify him as a trademark expert. Further, Haynes has not conducted any consumer surveys related to C-22. For these reasons also, Mr. Manning is not competent to testify to the statements contained in his declaration purporting to be "conclusions" of fact regarding trademark matters related to C-22.

### E. Conclusion.

In sum, when stripped of all its corroded elements, the 3rd Manning Decl., like the first and second Manning declarations, is a mere skeleton of irrelevant background information regarding Mr. Manning's career, none of which bears any impact on Haynes' Motion for Partial Summary Judgment.

Respectfully submitted,

BLANK ROME LLP

Dated: October 28, 2005    By: _____
Timothy D. Pecsenye
Dennis P. McCooe
Emily J. Barnhart
One Logan Square
Philadelphia, PA 19103
(215) 569-5619

Attorneys for Defendant

022664.00115/11479296v.2

## CERTIFICATE OF SERVICE

I, Emily J. Barnhart, hereby certify that on this 28th day of October, 2005, a true and correct copy of the foregoing MOTION TO STRIKE was served on the attorneys for Plaintiff by Federal Express, addressed as follows:

>Lynn J. Alstadt, Esquire
>Bryan H. Opalko, Esquire
>BUCHANAN INGERSOLL PC
>One Oxford Centre
>301 Grant Street
>Pittsburgh, Pennsylvania 15219

_____
EMILY J. BARNHART

022664.00115/11479296v.2