IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HAYNES INTERNATIONAL, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 04-197(E) |
| | ) | |
| v. | ) | JURY TRIAL DEMANDED |
| | ) | |
| ELECTRALLOY, a Division of G.O. CARLSON, INC., | ) ) | Judge Cohill |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S SURREPLY BRIEF IN OPPOSITION TO
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Pursuant to Federal Rule of Civil Procedure 56, Local Rule of Civil Procedure 56.1, and The Honorable Maurice B. Cohill, Jr.'s Practices and Procedures, Defendant, Electralloy, a Division of G.O. Carlson, Inc. ("Defendant" or "Electralloy"), by and through its undersigned counsel, respectfully submits this Surreply in response to new matters raised in Haynes International, Inc.'s ("Plaintiff" or "Haynes") Reply in further support of its Motion for Partial Summary Judgment.

A.   **Plaintiff Does Not Meet Its Burden on Summary Judgment.**

On Reply, Plaintiff argues its mark is not generic and that the first two elements of Counts I and II for infringement (ownership and validity) are automatically met merely because Plaintiff holds a federal trademark registration. In support of this argument, Plaintiff relies upon and attaches sections 12:12 and 12:13 from McCarthy on Trademarks and Unfair Competition (West 2004) ("McCarthy"). While it is true, a federal registration creates a presumption that the term is not generic, see McCarthy on Trademarks § 12:12, Professor McCarthy goes on to state:

> ...this presumption 'bursts' once the challenger presents 'sufficient evidence' of genericness. When a defendant does so, plaintiff-

1

> registrant cannot rely upon the registration as sufficient evidence to preclude summary judgment of dismissal.

Id. (citing Liquid Controls Corp. v. Liquid Control Corp., 802 F.2d 934 (7th Cir. 1986) (affirming summary judgment finding "liquid controls" generic).

Ignoring the overwhelming weight of evidence of genericness submitted by Defendant (including evidence of Plaintiff's years of generic use of C-22 prior to registration, third party use as a generic term and grade designation, article and book references as a generic term, testimony from consumers, and evidence of Plaintiff's three-decade failure to police), Plaintiff continues to argue against all logic that its registration is sufficient, and intimates that it is **Defendant** that has not met its burden. Plaintiff's failure to submit any rebuttal evidence to prove its mark is not generic can only be explained by the non-existence of such evidence or by a misunderstanding on Plaintiff's part of its requisite burden. Either explanation proves fatal for Plaintiff's Motion. As the party moving for partial summary judgment, **Plaintiff** must prove that there are no genuine issues of material fact and that it is entitled to a judgment as a matter of law. Because Plaintiff has not met its burden, the Motion for Partial Summary Judgment must be denied.

### B. If Not Stricken, The 3rd Manning Decl. Is Entitled To Little Or No Weight.

Plaintiff's sole "evidence" that C-22 is not generic, and that there is a likelihood of confusion, is found in the 3rd Manning Decl. Nothing in this self-serving declaration from Haynes' materials engineer and marketing engineer can provide Plaintiff with the hoped-for salvation. As stated in section 12:13 of McCarthy (supplied by Plaintiff), "[t]rademark law is skeptical of the ability of an associate of a trademark holder to give an impartial account of the value of the holder's mark." McCarthy, § 12:13 (internal quotations and citation omitted).

2

Plaintiff's efforts to cloak Mr. Manning in the garb of a trademark expert does not make him one. For all his erudition and knowledge, Mr. Manning is incapable of providing the requisite evidence that C-22 is likely to be confused with EC22 or other 22-nominative marks. The Court should find that Mr. Manning's "say so" is entitled to, at best, little weight, and, at worst, no consideration whatever.[1]

### 1. The 3rd Manning Decl. Does Not Prove C-22 is Strong.

Plaintiff relies upon alleged statements of "fact" and "conclusions" in the 3rd Manning Decl. as the sole basis for its argument on page 12 of the Reply that "[t]he amount of advertising expenditures incurred are, in fact, substantial for this market and indicate the strength of the mark." See 3rd Manning Decl. at ¶¶ 14, 15, 17. First, there is absolutely nothing in the record or in the 3rd Manning Decl. supporting the statement that Haynes' advertising expenditures are "substantial for this market" or that they "indicate the strength of the mark." Second, as discussed in more detail in Defendant's Third Motion to Strike, there is no support in the record for Mr. Manning's speculative assertion that "C-22" is a "strong mark." Third, Mr. Manning's statements in the 3rd Manning Decl. regarding the alleged amount Haynes' advertising expenditures are contradicted by Plaintiff's own documents and Mr. Manning's prior testimony. See Third Motion to Strike at pp. 5-6. The uncontroverted evidence of record before the Court shows that C-22 is extraordinarily weak, if not generic.

### 2. The 3rd Manning Decl. Does Not Support Plaintiff's Argument Regarding Customer Care.

Plaintiff's assertions regarding the degree of care factor are likewise unavailing. On page 13 of its Reply, Plaintiff at first acknowledges, and then ignores, the ample evidence of record

---

[1] Plaintiff's 3rd Manning Decl. must be stricken pursuant to Federal Rule 56(e) for all the reasons stated in Defendant's Motion to Strike the 3rd Manning Decl., which is being filed contemporaneously with this Surreply.

3

cited by Defendant proving that Plaintiff's and Defendant's customers exercise a high degree of care when purchasing the relevant goods. Instead, Plaintiff focuses on unsupported allegations from Mr. Manning's third declaration concerning his impression of the *possibility* that unknown customers of Plaintiff's customers "*may*" be confused. Pl.'s Reply at p. 13; 3rd Manning Decl. at ¶ 22. First, customers of customers are irrelevant here, and further, even if they were relevant there is not one iota of evidence in the record supporting what the Parties' customers (or their customers') business practices are. Second, in order to arrive at Mr. Manning's inadmissible hearsay "conclusion," Plaintiff discusses a convoluted string of new and wholly unsupported allegations of fact concerning order sizes in the specialty metals industry and unsupported references to the cost of plywood at Home Depot. Pl.'s Reply at p. 13. As discussed in more detail in Defendant's Third Motion to Strike, Mr. Manning's conclusory assertions provide no support for Plaintiff's Motion. When stripped of its wholly irrelevant, unsupported, and inadmissible elements, it is evident that Plaintiff has not presented any undisputed evidence to rebut Defendant's assertion that the Parties' sophisticated customers exercise a high degree of care and, thus, confusion is highly unlikely.

      C.      <u>**Use of the Parties' House Marks Makes Confusion Less Likely.**</u>

Defendant also calls into question Plaintiff's newly raised argument on pages 9 to 10 of its Reply that the Parties' use of house marks in connection with the disputed marks HASTELLOY, HAYNES and CABOT in the case of C-22 and ELECTRALLOY in the case of EC22 does not reduce the likelihood of confusion. Plaintiff states as matter of fact that "the public would inevitably drop" the house marks and would refer to Plaintiff's alloy only as "C-22" and Defendant's as "EC22." Pl.'s Reply at p. 10.

First, not surprisingly as has consistently been the case in Plaintiff's briefing, no proof is provided regarding what the public would do. Second, the question of how a consumer may choose to ultimately refer to the Parties' alloys has no bearing on the seminal issue which focuses exclusively on Electralloy's and Haynes' presentations of their designations to the public. Third, Plaintiff's comparison of the facts here to the facts in <u>Trump v. Caesars World, Inc.</u>, 645 F. Supp. 1015 (D.N.J. 1986), is inapposite due to the fact that when stripped of "CAESAR'S" and "TRUMP," consumers were left with the identical word "PALACE," whereas when stripped of the Parties' house marks here, consumers are still left with two different and distinguishable designations: C-22 versus EC22.[2]

### D. Plaintiff's Longstanding Unchecked Generic Use.

Defendant cannot help but draw notice to one final gross misrepresentation made by Plaintiff in an attempt to undermine the only inference to be drawn from evidence of widespread third party use of C-22. On page 4 of its Reply, Plaintiff states that the documents submitted by Defendant in its Appendix do not contain dates which would establish that third party use of C-22 has gone unchecked for many years. Plaintiff would have the Court believe that these documents just recently came into being and that the past several decades of third party use was unknown. In truth, the documents attached as Defendant's Appendix <u>do</u> contain dates and <u>do</u> evidence decades of generic third party use of C-22 and its variants. <u>See</u> Def.'s App. 5 at EC0406 dated 1987; App. 6 at EC0320 published 2004; App. 16 at EC0309 printed Mar. 2005; App. 19 at EC0318 dated 2002; App. 24 at EC0277 revised Dec. 10, 1999; App. 25 at EC0376 dated 2001 and EC0289 dated 2004; App. 26 at EC0384 dated Mar. 2, 2005; App. 28 at p. 1

---

[2] The possibility that consumers might "shorten" the mark was just one of the factors considered by the Court in finding a likelihood of confusion. Far more important were the results of the consumer survey and the notoriety of the "CAESAR'S PALACE" mark as evidenced by the $8 million per annum in advertising expenditures and the hundreds of millions of dollars in annual revenues in connection with the mark.

5

022664.00115/11480035v.2

dated 1987; App. 29 at HE00122 dated Nov. 6, 1987; App. 30 at HE00112 dated Dec. 1986; App. 35 at p. 1 printed Aug. 2005; App. 38 at EC0369 dated Nov. 2-5, 2003 and App. 39 at p. 1 dated Dec. 6, 2000. As we stated before, enough is enough.

## CONCLUSION

Plaintiff rests entirely upon the first and third Manning Declarations, the fact that it holds a federal registration for "C-22," and unsupported attempts to explain away the mountain of evidence of record submitted by Defendant as the "support" for its Motion for Partial Summary Judgment. Plaintiff's reliance upon these three documents and its illfated explanations is insufficient to meet its burden on summary judgment.[3] For all of the reasons set forth herein, in Electralloy's Opposition Brief, and in Electralloy's Motions to Strike the three declarations of Paul Manning, Plaintiff's Motion for Partial Summary Judgment must be denied.

Respectfully submitted,

**BLANK ROME LLP**

Date: October 28, 2005

By: /s/ Timothy D. Pecsenye
Timothy D. Pecsenye
Dennis P. McCooe
Emily J. Barnhart
One Logan Square
Philadelphia, PA 19103
(215) 569-5619

Attorneys for Defendant

---

[3] Not only has Plaintiff not met its burden, but for all the reasons stated in Defendant's summary judgment briefing and in its Motions to Strike, Defendant's Motion for Summary Judgment must be granted and Plaintiff's Complaint dismissed in its entirety.

6

## CERTIFICATE OF SERVICE

I, Emily J. Barnhart, hereby certify that on this 28th day of October, 2005, a true and correct copy of the foregoing DEFENDANT'S SURREPLY BRIEF IN OPPOSITION was served on the attorneys for Plaintiff by Federal Express, addressed as follows:

> Lynn J. Alstadt, Esquire
> Bryan H. Opalko, Esquire
> BUCHANAN INGERSOLL PC
> One Oxford Centre
> 301 Grant Street
> Pittsburgh, Pennsylvania 15219

EMILY J. BARNHART

022664.00115/11480035v.2