IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HAYNES INTERNATIONAL, INC., <br> a Delaware corporation, | ) <br> ) <br> ) | |
| Plaintiff, | ) <br> ) | Civil Action No. 04-197(E) |
| v. | ) <br> ) | JURY TRIAL DEMANDED |
| ELECTRALLOY, a Division of G.O. <br> CARLSON, INC., <br> a Pennsylvania corporation, | ) <br> ) <br> ) <br> ) <br> ) | Judge Cohill |
| Defendant. | ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO STRIKE
THE THIRD DECLARATION OF PAUL MANNING**

Plaintiff, Haynes International, Inc. ("Plaintiff" or "Haynes"), by and through its undersigned counsel, Buchanan Ingersoll PC, hereby submits this Opposition to Defendant's Motion to Strike the Third Declaration of Paul Manning. The Third Manning Declaration, as well as the First and Second Manning Declarations, is clearly admissible under Federal Rule of Civil Procedure 56(e), as it is made on Dr. Manning's personal knowledge, sets forth facts that are admissible in evidence, and shows affirmatively that Dr. Manning is competent to testify to the matters stated therein.

The arguments submitted by Defendant in its Motion are directed toward the weight to be given to the Third Manning Declaration, rather than to its admissibility. No Rule of Evidence supports Defendant's position that the Declaration is not admissible. Indeed, Defendant's Motion fails to cite any Rule of Evidence to support its position. The Court, in its discretion, is able to determine the weight to be given to the Third Manning Declaration.

Throughout its Motion, Defendant makes allegations of fact that are simply not true and defense counsel reasonably should know those statements are not true. Such knowing false statements have no place in any document filed with the Court and provide a basis for not only denying the Motion, but also entry of sanctions under Rule 11.

At page 2 through 4 of its Motion, Defendant asserts that "Mr. Manning repeatedly makes allegations of fact and conclusions based upon documents or other information that were not produced in discovery, are not before the Court, [and] about which Defendant has had no opportunity to review or question Plaintiff". This statement is followed by a chart containing several misrepresentations of fact under the heading "Evidentiary Failing" that defense counsel reasonably should know are not true.

This section implies that Plaintiff failed to properly respond to Defendant's discovery requests. That is not true, as evidenced by the fact that Defendant has not moved to compel discovery. This section also is premised on the faulty assumption that there must be a document to support every statement in Dr. Manning's Third Declaration. However, there is no rule that requires documentary support for each and every statement made in a declaration. Indeed, Defendant has failed to cite any Rule of Evidence to support its Motion. The issue is whether the declaration is admissible under Rule 56(e) of the Federal Rules of Civil Procedure and the Federal Rules of Evidence. The Declaration is admissible, as the failure to cite documents is not a proper basis to strike the declaration.

## The Motion Repeatedly Makes False Statements of Fact

The "Evidentiary Failing" section of the chart on pages 2 thorough 4 of Defendant's Motion contains several statements that are false. These misrepresentations and the documents and testimony produced in discovery which show the statements to be false are as follows.

**<u>False Statement No. 1</u>**:

A page 3, with respect to paragraph 14, Defendant says "Plaintiff produced in discovery not one ad from any of these magazines ["Chemical Engineer," "Chemical Processing" and "Materials Performance"], [and] no receipts proving expenditures for placement of such ads". This statement is simply false. Plaintiff produced various ads from magazines, identified as documents HE00105-HE00111, HE00164, HE00563 and HE00614-HE00615. These documents and the other documents which show the many statements in Defendant's Motion to be false are filed herewith in Bates numbered order as Exhibit 1 hereto.

Defendant's counsel questioned Dr. Manning about Haynes' advertising during his deposition. (*See* Manning Dep. pgs. 88-95). The deposition transcript is Appendix 3 to Defendant's Motion for Summary Judgment). There he specifically identified that advertisements were placed in "Stainless Steel World, Materials Processing, Chemical Engineer -- or Chemical Engineering I guess is the title, Heat Treat Magazine." (Manning Dep., pg. 90). He was asked and answered.

> Q.   So how much was the budget on average for the past five years or so for advertising?
>
> A.   I can't remember. I believe we supplied information in that packet that covered some number of years.
>
>   It's hard to separate out that part of my overall budget in my head for five years, but I believe that information has been passed to you for some period of time.

(Manning Dep., pgs. 92-93).

Indeed, Plaintiff provided charts and invoices setting forth expenditures for placing ads in various magazines, as well as documents evidencing amounts spent for printing and placing such

ads. (*See* HE00606-HE00608, HE00609-HE00610, HE00611-HE00613, HE00567, HE00568-HE00593, and HE00594-HE00605).

Also with respect to paragraph 14, Defendant stated: "Not one document has been produced that substantiates this [$10,000.00 advertising and promotion] figure". But, Plaintiff also produced a chart listing the various advertising expenditures of Haynes to promote its alloy products (HE00566). Defendant marked this document as part of Manning Deposition Exhibit 9, and questioned Dr. Manning about it at pages 150 through 153 of his deposition transcript.

**False Statement No. 2**:

With respect to paragraph 15, Defendant alleges that Plaintiff has not supplied any "document supporting the alleged '36 alloys' figure, [and] the alleged $1,440,000 in company-wide advertising expenditures." This statement is also false.

Plaintiff produced a chart (HE00566) identifying Haynes' annual advertising and marketing expenses during the past six (6) years, which was marked by defense counsel as Manning Deposition Exhibit 9. The 36 alloys are listed in Plaintiff's Exhibit K submitted with Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment. Furthermore, Dr. Manning explained in Paragraph 2 of his Second Declaration (Ex. L to Docket No. 34, filed October 11, 2005) and testified during his deposition about how he calculated advertising expenses.

Q. So it's divvied up by category, is it then also segregated by alloy?

A. Not really. I mean, when I assembled that information that was sent to you as one of the exhibits I asked the lady that keeps track of our orders to the outside printing service to assemble everything that was done as far back as our computer records went specifically on C-22 and she gave me a number.

The other functions like for trade shows, we may -- for a corrosion trade show we may have 10 or 12 of our 36 alloys that are at a trade show and

4

> there I believe what I did was I took my overall budget and I said, hey, we've got 36 alloys, and the methodology I believe was provided to you as well, so C-22 is one of our major top 10 alloys, I'm going to divide this whole bunch of money we spent over the years by 36 and say that certainly we spent more than this amount.
>
> So, we gave you a very conservative low number on which we had spent on advertising and promotion of C-22 precisely because we can't break it down.

(Manning Dep., pgs. 93-94).

**False Statement No. 3**:

With respect to paragraph 17, Defendant asserts: "No specific publications are cited or provided. There is no information of record establishing what type of use has been made of C-22." This statement is also false.

Plaintiff produced documents which illustrate use of C-22 in various publications by others. (*See* HE00001-HE00004, HE00112-HE00121, HE00122-HE00134, HE00269-HE00274, HE00275-HE00283, HE00284-HE00287, HE00288-HE00291 and HE00644-HE00659). Defense counsel marked many of these documents as part of Manning Deposition Exhibit 29 and questioned Dr. Manning about them:

> MS. BARNHART: I'm going to make one big exhibit and show you a bunch of things, it will be easier than doing it one at a time.
>
> So I'm going to mark as Exhibit 29 -- you can hold on to that one -- its going to be HE 122 to 134 and its going to be also HE 112 through 121, and its going to be HE 452 to 453 and HE 255 to 258, HE 189 to 192, HE 171 to 173, HE 164, HE 135 to 138, HE 105, HE -- did I get that one already? I'll take that one out. HE 94 to 97, HE 58 to 65, HE 50 to 53, HE 30 through 49, HE 28 through 29 --
>
> \*
> \*
> \*
>
> BY MS. BARNHART:
> Q.   Could you briefly describe your familiarity with these materials.

> A. Most of them I'm very well familiar with. A couple of those technical papers were work done outside the company, I'm not -- I recognize Mike Cieslak because I went to college with him and I may have even read that paper years ago. The Welding Metallurgy of HASTELLOY Alloys, I've read that one; I don't think I've read this PHACOMP paper.

(Manning Dep. pgs. 195-197).

**False Statement No. 4**:

With respect to paragraph 18, Defendant asserts that "Plaintiff has not produced in discovery, nor to the Court, any pricing information related to its C-22 alloy, or with respect to any competitors' alloys." This statement is also false.

Plaintiff produced, and defense marked as Laird Deposition Exhibit 3, a chart (HE00660) showing sales in dollars and pounds. At page 139 of Mr. Laird's deposition, he explained the document as follows:

> Q. Can you tell by looking at the page what it represents?
>
> A. From what it appears it shows the pounds and revenue associated with shipments of C-22 alloy products from 1984 through 2004 by product form.
>
> Q. And does this chart appear to be worldwide sales of C-22? I ask that because it says U.S. operations at the top.
>
> A. I believe this would represent the total shipments by the U.S. operations.

(Laird Dep., pg. 139. The deposition transcript is Appendix 32 to Defendant's Motion for Summary Judgment). The price of each form of alloy (which is priced at dollars per pounds) can be easily calculated by dividing the dollar sales by the pounds sold.

**False Statement No. 5**:

With respect to paragraphs 20 and 22, Defendant states that "there is no evidence of record regarding how these entities [resellers] sell the product once they have purchased it from

6

Haynes, i.e., whether or not it is sold with a generic C-22 stamp, with Haynes' trademark on it, or whether these entities' customers have any idea who Haynes is or the initial producer of the product." That statement is also false.

The attachments to Dr. Manning's Second Declaration (Ex. L to Docket No. 34, filed October 11, 2005) contain several examples of web pages of resellers who sell Haynes' C-22 alloy. For example, page 149 of Ex. L, Bates numbered HE00829, is a list of alloys sold by Penn Machine. (*See* HE00826-HE00829). The list includes C-22 as well as the statement "C-22 is a registered trademark of Haynes International, Inc."

**False Statement No. 6**:

With respect to paragraph 21, Defendant states:

Plaintiff has not produced and there are no documents of record regarding U.S. policing of C-22 from the 1980s, the 1990s or from the 2000s (with the exception of correspondence attached to the 2nd Manning Decl. related to the recent spate of "policing" conducted as a result of this litigation.

Not true.

As this Court may recall, Plaintiff sued Jessop Steel in 1987 for infringement of its patent on its C-22 alloy and for common law trademark infringement and unfair competition. Defense counsel marked the Complaint in this Civil Action No. 87-2717 as Manning Deposition Exhibit 4, and refers to the lawsuit in paragraph 31 of its Concise Statement of Undisputed and Material Facts in Support of its Motion for Summary Judgment. In 2004, Haynes recorded its C-22 trademark with the United States Customs Service and produced correspondence relating to that effort under Bates numbers HE00299-HE00300. Haynes' correspondence in 1988 with Stoody Deloro Stellite, Inc. concerning misuse of Haynes' C-22 mark was produced to Defendant and marked with Bates numbers HE00474-HE00483.

The substantial number of false statements contained in Defendant's Motion to Strike cannot be mere negligence or considered to be zealous advocacy. Regrettably, Plaintiff can only characterize such false statements as a deliberate effort to mislead the Court.

The above examples illustrate that Plaintiff has indeed provided documents which support the statements in the Third Manning Declaration. To the extent that documents may have not been provided, Plaintiff's submits that there is no rule requiring documentary support for each and every statement in a declaration.

**The Statements Based Upon Alleged Hearsay are Admissible**

Defendant's arguments at page 4 of its Motion that the Third Manning Declaration is based upon inadmissible evidence hearsay should also be rejected. Federal Rule of Evidence 701 permits the testimony provided by Dr. Manning. Specifically, Federal Rule of Evidence 701 states:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed.R.Evid. 701. The statements by Dr. Manning identified in Defendant's Motion are clearly admissible under such Rule.

The statements themselves that are quoted in Defendant's Motion demonstrate why Dr. Manning's statements are admissible. Each of the statements complained of by Defendant are "based upon" conversations and discussions with customers, potential customers, resellers and fabricators, as well as his years of experience in the industry, not to mention that Dr. Manning was the one charged with the responsibility to develop the market for Haynes' C-22 alloy. Dr.

Manning's statements are rationally based on his perception, based on the various conversations and discussions he has had with various individuals over the years. Dr. Manning's statements are helpful to a clear understanding of his testimony and to the determination of a fact at issue, namely, the strength of Plaintiff's C-22 mark. Dr. Manning's statements are not based on scientific, technical or other specialized knowledge, but rather on his perceptions based upon his years of experiences in the industry. Under Federal Rule of Evidence 701, such statements are admissible.

**Section C of Defendant's Motion is Pure Nonsense**

The arguments submitted by Defendant in Section C at page 5 of its Motion are nonsensical. For example, in paragraph 2 of this section, Defendant says "In a brazen attempt to hide its duplicity Plaintiff fails to identify or provide the document to the Court which supposedly supports this bogus advertising figure." Then Defendant identifies the document in the appendix it submitted to the Court (HE00566) as the document from which the advertising expenses were calculated. Plaintiff did not submit the document because it was already before the Court.

With respect to Plaintiff's advertising amount, Defendant states, at paragraph 1 of this section: "[e]ven if such a figure were accurate, the cited expenditure relates almost exclusively to creation of C-22 advertising materials which is hardly relevant." What could be more relevant as an advertising expense than the costs to create the advertising materials, as well as to distribute them?

Defendant's arguments about the fictitious amount of advertising are also without merit. Advertising encompasses more than printing costs. Dr. Manning explained how he arrived at his

advertising numbers in his deposition (quoted *supra* pgs. 4-5) and in Paragraph 2 of his Second Declaration (Ex. L to Docket No. 34, filed October 11, 2005).

**Dr. Manning is Qualified to Testify**

Defendant alleges that Plaintiff has not designated Dr. Manning as a trademark expert. However, just because Plaintiff has not designated Dr. Manning as an expert does not mean that the Court cannot consider him to be an expert with respect to the C-22 trademark after reviewing his background and credentials. In any event, Dr. Manning's background and credentials set forth in his declarations show him to be the person most knowledgeable concerning Haynes' C-22 trademark and qualified to give the testimony in his declarations.

From 1983 to 1987, Dr. Manning was actively involved in introducing Haynes' C-22 alloy to the marketplace. Dr. Manning reviewed technical data relating to the performance of the alloy, identified potential users for the alloy, and determined who could buy and use the alloy. Dr. Manning met with many potential customers of Haynes' C-22 alloy to try to interest them in using that alloy for various applications. (Third Manning Declaration, paragraph 3).

Dr. Manning was the company contact person for the media and customers who requested information about Haynes' C-22 alloy. (Third Manning Declaration, paragraph 4).

In 1992, Dr. Manning became the marketing manager for Haynes. He was responsible for the marketing activities of Haynes, including the production of brochures and other marketing materials, placement of ads in technical journals, and review of technical papers published by Haynes' authors. Dr. Manning regularly met with customers and potential customers for Haynes' alloys, and received and reviewed call reports submitted by Haynes' field salesmen. Dr. Manning also received and reviewed periodic sales reports which recited the sales in dollars and pounds of each of Haynes' alloys. As a result, Dr. Manning was fully aware of

how well C-22 alloy was selling, how well it was being received in the marketplace, and who was buying the alloy. (Third Manning Declaration, paragraph 6).

In 2001, Dr. Manning became Director of Marketing. (Third Manning Declaration, paragraph 7). As Director of Marketing, Dr. Manning was responsible for all marketing activities of the company. He has provided strategic direction to the company, handled introduction of new products, has overseen technical services, has assisted the sales force in determining what type of advertising and promotion will be done, and has also been responsible for developing the marketing budget. In developing the marketing budget, he regularly reviews marketing budgets and expenditures from previous years. Thus, Dr. Manning has personal knowledge of Haynes' marketing activities and expenses, even for the years he did not work in marketing at Haynes. (Third Manning Declaration, paragraph 8). Dr. Manning knows from both personal experience and a review of the records of Haynes' advertising, how Haynes has advertised and promoted its C-22 alloy. (Third Manning Declaration, paragraphs 14-15).

Examples of Dr. Manning's extensive involvement with Haynes' C-22 alloy are contained in Defendant's Appendix 1. For example, document HE00056 includes a picture of Dr. Manning and in the caption reads "Paul E. Manning (r) commercial developer of Hastelloy® Alloy C-22." Document HE00028, an article about Haynes' C-22 alloy, includes a picture of Dr. Manning in which the caption reads "Dr. Paul E. Manning, Market Development Engineer, 317-456-6099". Additionally, document HE00021 is a news release for the introduction of its then new C-22 alloy. The news release says "For further information contact: Paul E. Manning".

There is no person who would have more personal knowledge of whether C-22 is well known among purchasers and users of corrosion resistant alloys, and also the strength of the

11

mark, than the person who was in charge of its commercial development, namely, Dr. Paul Manning.

**Conclusion**

It should be abundantly clear that the Third Manning Declaration, as well as the First and Second Manning Declarations, meets the requirements of Federal Rule of Civil Procedure 56(e) and contains testimony admissible under the Federal Rules of Evidence. All statements were made on Dr. Manning's personal knowledge, set forth such facts that would be admissible in evidence, and show affirmatively that Dr. Manning is competent to testify to the matters stated therein. Dr. Manning would be competent to testify to the statements contained in his Third Declaration under at least Federal Rule of Evidence 701. Therefore, the Third Declaration of Paul Manning is admissible and Defendant's Motion should be denied.

The numerous false statements in Defendant's Motion provide further reason to deny the Motion, as they evidence a deliberate effort to mislead the Court. Defendant's Motion to Strike the Third Manning Declaration should be denied. An appropriate form of Order is attached.

    Respectfully submitted,

    BUCHANAN INGERSOLL PC

Dated: November 7, 2005    By: */s/ Bryan H. Opalko*
    Lynn J. Alstadt
    Pa. I.D. No. 23487
    Bryan H. Opalko
    Pa. I.D. No. 86721
    BUCHANAN INGERSOLL PC
    301 Grant Street, 20th Floor
    Pittsburgh, PA 15219-1410
    Phone: 412-562-1632
    Fax: 412-562-1041
    Attorneys for Plaintiff

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on this 7th day of November, 2005, a true and correct copy of the foregoing PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO STRIKE THE THIRD DECLARATION OF PAUL MANNING was served on the attorneys for Defendant by first class mail, postage prepaid, addressed as follows:

>Timothy D. Pecsenye, Esquire
>Emily Barnhart, Esquire
>Jennifer L. Miller, Esquire
>BLANK ROME LLP
>One Logan Square
>18th and Cherry Streets
>Philadelphia, PA  19103

>*/s/ Bryan H. Opalko*
>Bryan H. Opalko