IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HAYNES INTERNATIONAL, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 04-197(E) |
| | ) | |
| v. | ) | JURY TRIAL DEMANDED |
| | ) | |
| ELECTRALLOY, a Division of G.O. CARLSON, INC., | ) | Judge Cohill |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION
TO PLAINTIFF'S MOTION TO COMPEL DISCOVERY**

**BLANK ROME LLP**

Timothy D. Pecsenye
Dennis P. McCooe
Emily J. Barnhart
One Logan Square
Philadelphia, PA 19103
(215) 569-5619

Attorneys for Defendant

022664.00115/11482345v.3

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS ...................................................................................................... i

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................... 1

STATEMENT OF FACTS .................................................................................................... 2

ARGUMENT ......................................................................................................................... 2

I.   PLAINTIFF'S MOTION - FILED TWO MONTHS AFTER CLOSE OF DISCOVERY - IS UNTIMELY ............................................................................ 2

II.  PLAINTIFF'S MOTION - FILED AFTER THE PARTIES' SUMMARY JUDGMENT MOTIONS ARE PENDING AND FULLY BRIEFED - IS UNTIMELY ............................................................................................................ 4

III. DEFENDANT HAS ADEQUATELY RESPONDED TO PLAINTIFF'S DISCOVERY REQUESTS AND SHOULD BE AWARDED ITS ATTORNEYS FEES TO RESPOND TO THIS MOTION ........................................................... 6

   A.   Defendant Provided Adequate Discovery Regarding Interrogatory No. 1(b) Relating to How Defendant Came To Use EC22. ............................... 6

   B.   Defendant Provided Adequate Discovery Regarding Interrogatory No. 2(a) Relating to Sales of EC22. ......................................................................... 8

   C.   Defendant Objected to Interrogatory No. 2(d) Regarding EC22 Profits, Yet Still Informed Plaintiff of Its EC22 Profit Levels. ............................... 10

   D.   An Award of Attorneys Fees to Defendant Is Appropriate. ...................... 12

CONCLUSION ................................................................................................................... 12

# TABLE OF AUTHORITIES

## FEDERAL CASES

Banks v. CBOCS West, Inc., No. 01 C 0795, 2004 WL 723767 (N.D. Ill. Apr. 1, 2004) ............................................................................................................. 3

Boselli v. SEPTA, 108 F.R.D. 723, 735 (E.D. Pa. 1985) ....................................... 7, 12

Ferranti International, Inc. v. Willard, No. Civ. A. 02-CV-404, 2003 WL 21960716 (E.D. Pa. June 25, 2003), ................................................................ 3

Flynn v. Health Advocate, Inc., No. Civ. A. 03-3764, 2005 WL 288989 (E.D. Pa. Feb. 8, 2005) .................................................................................. 6

Gault v. Nabisco Biscuit Company, 184 F.R.D. 620 (D. Nev. 1999) .................. 4, 5

Hayes v. Invigorate International, Inc., No. Civ. A. 04-1577, 2005 WL 2491582 (E.D. Pa. Oct. 5, 2005) ...................................................................... 2, 5

Jackson and Coker Locum Tenens, Inc. v. Slawek, Civ. No. 93-6459, 1994 U.S. Dist. Lexis 11778 (E.D. Pa. Aug. 18, 1994) .............................................. 2, 3, 4

Kalis v. Colgate-Palmolive Co., 231 F.3d 1049 (7th Cir. 2000) ............................. 5

Mash Enterprises, Inc. v. Prolease Atlantic Corp., No. Civ. A. 01-2437, 2003 WL 251944 (E.D. Pa. Jan. 31, 2003) ............................................................... 3

McWilliams v. AT & T Information Systems, Inc., 728 F. Supp. 1186 (W.D. Pa. 1990) ................................................................................................. 12

Packman v. Chicago Tribune Co., 267 F.3d 628 (7th Cir. 2001) ........................... 5

Rossetto v. Pabst Brewing Co., 217 F.3d 539 (7th Cir. 2000) ................................ 3

Sutton v. Jones Lan LaSalle, Inc., No. Civ. A. 05-261, 2005 WL 2850376 (E.D. Pa. Oct. 28, 2005) ............................................................................. 5, 6

Willis v. New World Van Lines, Inc., 123 F. Supp.2d 380 (E.D. Mich. 2000) ...... 3, 6

Medtronics Sofamor Danek, Inc. v. Osteotech, Inc., No. 99-2656-G, 2001 WL 1910058 (W.D. Tenn. Sep't 21, 2001) ....................................................... 3

## MISCELLANEOUS

Federal Rule of Civil Procedure 1 ............................................................................ 4, 5

022664.00115/11482345v.3

## **PRELIMINARY STATEMENT**

Defendant, Electralloy, a Division of G.O. Carlson, Inc. ("Defendant" or "Electralloy"), by and through its undersigned counsel, respectfully submits this Memorandum of Law in Opposition to Plaintiff, Haynes International, Inc.'s ("Plaintiff" or "Haynes") Motion to Compel Discovery. Plaintiff's Motion must be denied because:

- it is untimely as it was filed two months after the close of discovery and nearly a year after receipt of Defendant's responses to Plaintiff's discovery requests;

- it is untimely as it was filed after both Parties' dispositive summary judgment motions have been fully briefed and are pending before the Court;

- Plaintiff has represented to the Court that there are no genuine issues of material fact in its summary judgment motion yet now files this discovery motion;

- Plaintiff did not raise a Federal Rule 56(f) contention in opposition to Defendant's summary judgment motion yet now files this discovery motion;

- Plaintiff's Motion is moot if summary judgment is granted in Defendant's favor;

- Plaintiff misrepresents the facts by repeatedly contending that Defendant has refused to provide discovery when Defendant's responses to the relevant discovery requests were adequate;

- Plaintiff provides no legal support for the proposition that Defendant must "adopt" a demonstrative exhibit prepared by Plaintiff's counsel; and

- Plaintiff provides no legal support for the proposition that it is entitled to sworn verifications from Defendant regarding the existence, or lack thereof, of certain documents.

Throughout its Motion, Plaintiff repeatedly alleges that Defendant absolutely and "blatantly" refused to provide information and documents. The facts show that Defendant's actions were principled and in keeping with the Rules. Plaintiff's Motion boils down to this -- Plaintiff is dissatisfied with the answers and documents received. Plaintiff's dissatisfaction provides no rational basis or legal justification for bringing the instant Motion to Compel.

In light of the fact that Defendant adequately responded to Plaintiff's requests, and in light of the other above-referenced facts, particularly Plaintiff's gross untimeliness, the Court not

only should deny Plaintiff's Motion, but should order Plaintiff to reimburse Defendant for the cost of its attorneys fees in connection with responding to Plaintiff's Motion.

## STATEMENT OF FACTS

For the sake of efficiency, the relevant facts will be incorporated into the Argument section.

## ARGUMENT

I. **PLAINTIFF'S MOTION - FILED TWO MONTHS AFTER CLOSE OF DISCOVERY - IS UNTIMELY**

Plaintiff served the discovery requests that are the subject of its Motion to Compel over a year ago on October 19, 2004. Pl.'s Motion at p. 1. Defendant served its responses to these requests nearly a year ago, on November 22, 2004. Pl.'s Motion at p. 2. Discovery in this matter was initially scheduled to close on March 7, 2005. The discovery cutoff was extended on two separate occasions. Even with these two extensions, the discovery period still closed over two months ago, on September 6, 2005. Despite having received Defendant's responses to the discovery relevant to Plaintiff's Motion almost a year ago, Plaintiff inexplicably waited until two months past the twice-extended discovery deadline before filing the instant Motion. Such untimeliness, in and of itself, is sufficient grounds to deny Plaintiff's Motion.

It is well-established that a motion to compel discovery may be denied where the movant has unduly delayed seeking relief from the court until after the close of discovery. The "Federal Rules of Civil Procedure place the burden on the party seeking discovery to obtain relief for [failures to respond]" within "the applicable discovery period." Hayes v. Invigorate Int'l, Inc., No. Civ. A. 04-1577, 2005 WL 2491582, at *4 (E.D. Pa. Oct. 5, 2005) (Slip opin.). In Jackson and Coker Locum Tenens, Inc. v. Slawek, for example, the Court affirmed denial of defendant's motion to compel discovery responses filed one month after the date set by the Court for

2

completion of discovery and stated that defendant's motion was "inappropriate" and "extremely untimely." Civ. No. 93-6459, 1994 U.S. Dist. Lexis 11778, at *8-9 (E.D. Pa. Aug. 18, 1994); see also Rossetto v. Pabst Brewing Co., 217 F.3d 539, 542 (7th Cir. 2000) (affirming denial of motion to compel filed two months after the close of discovery as having "no possible merit"); Banks v. CBOCS West, Inc., No. 01 C 0795, 2004 WL 723767, at *2-3 (N.D. Ill. Apr. 1, 2004) (denying motion filed two months after close of discovery, finding it "clearly untimely") (unpublished); Mash Enters., Inc. v. Prolease Atlantic Corp., No. Civ. A. 01-2437, 2003 WL 251944, at *3 (E.D. Pa. Jan. 31, 2003) (denying motion to compel as untimely where movant had ample time to file, yet waited approximately two months after the close of discovery and nearly six months after receiving defendant's responsive production and objections to file motion to compel) (unreported); Willis v. New World Van Lines, Inc., 123 F. Supp.2d 380, 401 (E.D. Mich. 2000) (denying motion to compel filed four months after the close of discovery).

    Where, as here, a party was aware of the issues at or prior to the close of discovery, a motion to compel filed months later is particularly untimely. See e.g., Banks, 2004 WL 723763 at *2 (both parties clearly knew unresolved discovery issues existed before the close of discovery and "counsel should have made preparations for filing a motion to compel before discovery closed"); Ferranti Int'l, Inc. v. Willard, No. Civ. A. 02-CV-404, 2003 WL 21960716, at *3 (E.D. Pa. June 25, 2003) (denying motion to compel filed on the last day of the discovery period where movant was on prior notice that it sought the relevant discovery) (unreported); Medtronics Sofamor Danek, Inc. v. Osteotech, Inc., No. 99-2656-GV, 2001 WL 1910058, at *4-5 (W.D. Tenn. Sep't 21, 2001) (denying motion to compel discovery when the defendant moved one day after the close of discovery, but was aware of the requested materials over fifteen months prior to the motion); Gault v. Nabisco Biscuit Company, 184 F.R.D. 620, 622 (D. Nev. 1999) (noting it is

3

not unreasonable to expect a motion to compel to be filed in close proximity to the discovery deadline particularly when the movant was aware of the deficiencies before the close of discovery).

In Gault, the plaintiff filed a motion to compel 76 days after the close of discovery and 136 days after the receipt of defendant's discovery responses. Id. at 621-22. In discussing undue delay, the Court in Gault stated: "'the requesting party cannot delay a motion to compel with impunity.'" 184 F.R.D. at 622 (internal citation omitted). As the Court explained, substantial prejudice exists, but even where this is not the case, substantial prejudice may occur if consideration of the motion to compel would delay resolution of the action, thereby causing the court to fail in its fundamental obligation under Federal Rule of Civil Procedure 1 to secure the just, speedy and inexpensive determination of every action. Id.

The discovery requests relevant to Plaintiff's Motion were served on Defendant more than 365 days ago; Defendant served its responses thereto approximately 350 days ago; the depositions of Defendant's witnesses took place over 75 days ago; fact discovery closed over 60 days ago; and both Parties' summary judgment motions were fully briefed and pending before the Court prior to Plaintiff filing this Motion. Thus, the delay in this case is similar to that found unacceptable in Gault and far greater than the one month delay found to be egregious in Jackson and Coker. For all these reasons, Plaintiff's Motion should be denied as untimely.

## II.  PLAINTIFF'S MOTION - FILED AFTER THE PARTIES' SUMMARY JUDGMENT MOTIONS ARE PENDING AND FULLY BRIEFED - IS UNTIMELY

Not only did Plaintiff wait to file its Motion two months after the close of discovery and nearly a year after receiving Defendant's discovery responses, but Plaintiff also waited until after both Parties' summary judgment motions were fully briefed and pending before the Court. Consistent with the rules regarding summary judgment, Plaintiff represented to the Court that no

4

022664.00115/11482345v.3

genuine issues of material fact exist and, in its opposition to Defendant's Motion for Summary Judgment, Plaintiff did not raise Federal Rule of Civil Procedure 56(f). Each of these facts supports the conclusion that the instant Motion was filed in bad faith.

Courts have consistently denied as untimely motions to compel filed after the deadline to file dispositive motions and after the filing of summary judgment papers. See Gault, 184 F.R.D. at 621-22 (absent unusual circumstances, motions to compel should be filed before the scheduled date for dispositive motions); see also Hayes, 2005 WL 2491582, at *4 (denying an untimely motion to compel raised during summary judgment in an attempt to create a genuine issue of material fact); Packman v. Chicago Tribune Co., 267 F.3d 628, 647 (7th Cir. 2001) (affirming denial of motion to compel filed after discovery closed, after the summary judgment briefing schedule had been set and defendants had filed their summary judgment motion); Kalis v. Colgate-Palmolive Co., 231 F.3d 1049, 1058 (7th Cir. 2000) (affirming denial of motion to compel filed after defendant's motion for summary judgment was filed, the briefing schedule was set, and plaintiff's response was due; Sutton v. Jones Lan LaSalle, Inc., No. Civ. A. 05-261, 2005 WL 2850376 (E.D. Pa. Oct. 28, 2005) (Slip. Opin.) (denying motion to compel filed after summary judgment as untimely and given that the documents and information subject of the motion to compel were not material to the issues to be decided on summary judgment)[1]; Willis, 123 F. Supp.2d at 401 (finding it prejudicial to reopen discovery and delay the schedule previously set for dispositive motions, particularly where the non-movant had likely already begun preparing its dispositive motion).

---

[1] The same is true here where the information and documents Plaintiff seeks to compel, namely, sales and profit figures and the identity of the individual responsible for selecting EC22 are not material or relevant to the summary judgment decision before the Court.

5

The recently decided case, Flynn v. Health Advocate, Inc., No. Civ. A. 03-3764, 2005 WL 288989 (E.D. Pa. Feb. 8, 2005) (unreported), is instructive as it presents a remarkably similar set of facts. The plaintiffs' motion to compel was filed approximately three months after the close of discovery, after dispositive summary judgment motions were due and fully briefed, and where plaintiffs were "aware of the alleged deficiencies in Defendants' production of documents a month before the discovery deadline." 2005 WL 288989, at *8. Given these circumstances, the Court had no difficulty in finding that the motion was untimely. Id.

For these additional reasons, Plaintiff's Motion should be denied as untimely and moot.

### III. DEFENDANT HAS ADEQUATELY RESPONDED TO PLAINTIFF'S DISCOVERY REQUESTS AND SHOULD BE AWARDED ITS ATTORNEYS FEES TO RESPOND TO THIS MOTION

In addition to requiring dismissal due to untimeliness, Plaintiff's Motion must also be dismissed because it is without merit. Defendant provided adequate discovery relating to Interrogatories 1(b) and 2(a) and (d). Additionally, Defendant made unchallenged objections to these requests.

#### A. Defendant Provided Adequate Discovery Regarding Interrogatory No. 1(b) Relating to How Defendant Came To Use EC22.

Interrogatory No. 1(b) asks for the identity of "who at Electralloy was responsible for the decision to adopt 'C22' and 'EC22.'" Pl.'s Brief at p. 2. In its Motion, Plaintiff claims Defendant has "blatant[ly] refus[ed]" to respond to this Interrogatory, and requests that the Court issue an order that Defendant be "prohibited from introducing evidence at trial, either though [sic] documents or testimony, to establish who at Electralloy was responsible for selecting the C22 and/or EC22 designations, and why such designations were chosen." Pl.'s Brief, at pp. 7-8. As demonstrated by Electralloy's amended answer to this Interrogatory, as well as the deposition

testimony of its principals, Electralloy fully and adequately answered this Interrogatory in accordance with the Rules.

In an amended answer to Interrogatory 1(b), Defendant answered:

> (b)   Subject to the General and Specific Objections, and without waiving the same, Defendant neither admits nor denies that it ever "adopted" either "C22" or "EC22." As such, Defendant cannot pinpoint one individual or individuals responsible for such alleged decisions. However, in response to Plaintiff's inquiry, and as per Defendant's Initial Disclosure Statement, Tracy Rudolph, Wayne Weaver and/or Mark Lewis are knowledgeable regarding Defendant's marketing initiatives.

Defendant's Amended Response to Plaintiff's First Set of Interrogatories, dated July 29, 2005, at p. 2, attached hereto as Exhibit A. Plaintiff now claims that "none of these individuals [Tracy Rudolph, Wayne Weaver or Mark Lewis] had any idea of who was responsible for selecting C22 and/or EC22." Pl.'s Brief at p. 7. This representation by Plaintiff could not be further from the truth. In his deposition, the President of Electralloy, Tracy Rudolph, explained:

> Q: Who made the decision to call that composition alloy EC22?
> **A. I'm going to say Electralloy, those who were involved within Electralloy. We call our specialty products EC.**
> Q: Can you give me the name of the individuals that you had in mind?
> **A: Vice president of sales Wayne Weaver, Tom Wood, Gary Pezze, Jack Simmons. I don't know.**
> * * *
> Q: . . .[D]id you have any participation in that decision to call it EC22?
> **A: Yes.**
> * * *
> Q: . . .Did you participate in discussions as to what to call it? What was your role?
> **A: There was a meeting held and we decided to call it EC22.**
> Q: And who was present at the meeting?
> **A: Those people that I just mentioned. [Wayne Weaver, Tom Wood, Gary Pezze, Jack Simmons]**
> Q: And yourself?
> **A: Yes.**
> * * *
> Q: For this alloy composition, the decision was made to call it EC22?
> **A: Correct.**
> Q: And you approved that decision, correct?
> **A: Yes.**

7

Rudolph Dep., at pp. 16-18, attached hereto as Exhibit B. Consistent with Mr. Rudolph's explanation of what transpired, Mr. Weaver also explained that he is a member of Electralloy's "project committee," in which decisions are made to decide whether to make a new product. Mr. Weaver stated the committee consists of:

> **A. Our president, Tracy Rudolph, our senior vice president of operations and technology, Tom Wood, our manager of marketing and product development, Jack Simmons, our manager of wrought products, Mike Evans, Gary Pezzi who is out technical marketing gentleman and Kathy Shumsky who is our sales manager for forge products and myself.**

Weaver Dep., at p. 14-15, attached hereto as Exhibit C. Mr. Weaver stated that Jack Simmons made a presentation at the meeting regarding production of EC22, that the project committee does not keep minutes or reports of its activities, and that thereafter he believed it was those referenced above in Electralloy's "technology department" who were likely to have worked on naming the alloy. Id. at pp. 16-17 and 26-27.

Finally, the requested remedy -- prohibiting the introduction of documents or testimony at trial -- is entirely inappropriate. Such an extraordinary remedy is allowed solely in those instances in which a party failed to comply with a court order. See Boselli v. SEPTA, 108 F.R.D. 723, 735 (E.D. Pa. 1985) ("Defendant . . . correctly points out that Rule [37] provides for a preclusion of evidence as a sanction only in the event that there has been a failure to comply with a discovery order" (emphasis added)). Because Defendant is not the subject of such an order, the requested relief is simply not available.

### B. Defendant Provided Adequate Discovery Regarding Interrogatory No. 2(a) Relating to Sales of EC22.

Interrogatory No. 2(a) seeks the dollar volume of sales of EC22 by year and product type. Pl.'s Brief, at p. 2. Plaintiff states that Electralloy "never answered" this Interrogatory. In response to this Interrogatory, Defendant interjected an objection that the interrogatory was

8

022664.00115/11482345v.3

unduly burdensome. Pl.'s Brief, at p. 3; Exhibit A, at pp. 2-3. Without waiving its objections, Defendant fully responded to this Interrogatory.

On two separate occasions, Defendant produced all invoices and purchase orders related to EC22 sales (at bates ranges EC0001-EC0083 on March 10, 2005 and EC00407-EC00434 on August 29, 2005). The produced documents contain all information requested in the Interrogatory, such as price, amount ordered, date of sale, and product type, and make available to Plaintiff all the information requested in the Interrogatory. Mr. Lewis testified during his deposition that he pulled the documents that were produced on March 10, 2005, and that he was confident that as of the date the documents were assembled he had produced everything that reflected a sale of EC22. Lewis Dep., at p. 49, attached hereto as Exhibit E. The later production was made directly after the August 19 and 24, 2005 depositions of Mr. Lewis and Mr. Weaver, at which time Defendant realized that additional sales of EC22 had been made since Electralloy's first production. See August 29, 2005 letter to L. Alstadt, attached hereto as Exhibit D.

Plaintiff now represents to the Court that Mr. Lewis stated that "he could not derive total sales numbers from these documents." Pl.'s Brief, at pp. 4-5. This is not an accurate representation of Mr. Lewis' testimony. Speaking from his accounting background, Mr. Lewis testified that, with respect to a purchase order versus an invoice, he "could not get you to the exact penny," because "[w]hen we shipped, the weight may have been a little bit different," but that "we are not talking major differences here. We are talking something may vary by a few pounds" and that when using either the "purchase order" or the "invoices" "your numbers should be extremely close." Lewis Dep., at pp. 50-51. The written and documentary response provided by Electralloy to Interrogatory 2(b) relating to sales totals fully complies with the Rules.

9

Additionally, Plaintiff asks the Court to order Defendant to verify and/or "correct" a demonstrative exhibit created by Plaintiff related to documents produced by Electralloy. Pl.'s Proposed Order, at ¶ 1. Plaintiff provides no legal authority to support its alleged entitlement to this request, which, in effect, seeks to have Defendant prepare trial exhibits for Plaintiff. This unfounded demand should be denied.

### C. Defendant Objected to Interrogatory No. 2(d) Regarding EC22 Profits, Yet Still Informed Plaintiff of Its EC22 Profit Levels.

Interrogatory No. 2(d) reads: "Identify Electralloy's profit from the sale of alloy products bearing 'C22' and 'EC22.'" Pl.'s Brief, at p. 2. Since its initial answer to Interrogatory 2(d), on November 22, 2004, Defendant has continued to maintain an objection that calculating its profits for EC22 is unduly burdensome. Plaintiff never addresses this objection in its Motion to Compel. Instead, Plaintiff repeats the tired mantra that Defendant has "blatant[ly] refus[ed] to provide this information." Pl.'s Brief at p. 7. Defendant's "unduly burdensome" objection stems from the extraordinary difficulty of calculating an exact response to this Interrogatory. Mr. Rudolph explained the complex and lengthy process during his August 24, 2005 deposition:

> Q: How would you go about determining the profit for the sale of this particular alloy?
> **A: That would be up to accounting to provide that information.**
> Q: If you requested that information from accounting, what would you expect to get back from them?
> **A: They would have to research the entire process to tell me what it was.**
> \* \* \*
> Q: How would they do that?
> **A: You would have to go and look at your raw material costs, your production costs, all costs associated with it.**
> Q: So my understanding then is that you could, in company records, determine the raw materials which were used to product this alloy EC22?
> **A: Yes.**
> \* \* \*
> Q: Well, where would you go to look to find that [sic] costs of raw materials?
> **A: They would have to go to the original melt and go all the way through the entire costs of the process.**
> Q: So one would look at the documents that would show what was paid for each of the raw materials that are used in the process?
> **A: Correct.**

10

> Q: And then what other costs would go into determining the profit?
> **A: All costs that are associated with producing the product.**
>
> * * *
>
> Q: Specifically alloy EC22.
> **A: Okay. As I said, you would have to look at your raw material costs, accounting would have to go through the raw materials costs, the processing of the product in which you produce.**
> Q: In determining profit, does your company have a standard overhead charge that's used in making the calculation of profit?
> **A: Yes.**
> Q: Is that for all alloys or is it by specific alloy?
> **A: By specific product.**
> Q: And does your company have specific labor costs associated with each alloy?
> **A: Correct.**
> Q: So then the total costs to produce an alloy such as alloy EC22 would be the raw materials, labor and the overhead? Would there be anything else beyond those three things that would go into costs?
> **A: The processing costs, depending on the product in which you produce.**
>
> * * *
>
> Q: And then once we have added all those numbers up, we then subtract it from the total sales and determine our profit?
> **A: Correct.**
> Q: Do you know what the profit margin is on alloy EC22?
> **A: I do not.**

Rudolph Dep., at pp. 29-32, Exhibit B. In an effort to provide Plaintiff with additional information regarding its EC22 profits, Electralloy subsequently amended its answer to this Interrogatory as follows:

> Subject to and without waiving the General Objections, Defendant objects to this Interrogatory as overbroad, vague and unduly burdensome. Defendant further objects to this Interrogatory because Defendant has never sold any product bearing "C22". By way of further answer, subject to the General and Specific Objections, and without waiving the same, Defendant responds that it believes its profit margin for sales of EC22 is approximately 5-20%.

Defendant's Amended Response to Plaintiff's First Set of Interrogatories, No. 2(d), dated September 23, 2005, attached hereto as Exhibit F. This approximate profit margin figure was based upon general company knowledge rather than the complex process described by Mr. Rudolph in his deposition.

022664.00115/11482345v.3

As discussed previously, <u>supra</u> Section III A., Plaintiff once again seeks the inappropriate remedy of "prohibit[ing Defendant] from introducing at trial any documents or other evidence not produced during discovery, including testimony evidence, to prove its profit margin. . . ." Pl.'s Brief, at 7. <u>See</u> <u>Boselli</u>, 108 F.R.D. at 725 (preclusion as a remedy is available only after there has been a failure to comply with a court order). Plaintiff provides no legal support for its contention that Defendant must provide a verification regarding existence or nonexistence of documents relating to its profits. Such an inappropriate request must be denied.

In light of all of the above, Plaintiff's Motion with respect to Interrogatories 1(b), 2(b) and (d) must be denied.

### D.   **An Award of Attorneys Fees to Defendant Is Appropriate.**

Given Plaintiff's inordinate delay, Defendant can only surmise that Plaintiff's sole purpose was to harass Defendant and waste the Court's resources. Defendant therefore requests that the Court award its attorneys fees related to the preparation and filing of this Opposition and Motion for Leave to File this Opposition. Such a sanction is consistent with the Court's authority. <u>See</u> <u>McWilliams v. AT & T Info. Sys., Inc.</u>, 728 F. Supp. 1186, 1196-97 (W.D. Pa. 1990) (Cohill, J.) (denying motion to compel and stating "[t]he Court has broad discretion to impose sanctions").

### **CONCLUSION**

Electralloy respectfully requests, for all the reasons set forth herein, that Plaintiff's Motion to Compel Discovery be denied. It is further requested that Defendant Electralloy be

awarded its attorneys fees associated with the cost of defending Plaintiff's Motion to Compel Discovery.

                                            Respectfully submitted,

                                            **BLANK ROME LLP**

Date:  November 16, 2005      By: _____
                                            Timothy D. Pecsenye
                                            Dennis P. McCooe
                                            Emily J. Barnhart
                                            One Logan Square
                                            Philadelphia, PA 19103
                                            (215) 569-5619

                                            Attorneys for Defendant

022664.00115/11482345v.3

## CERTIFICATE OF SERVICE

I, Emily J. Barnhart, hereby certify that on this 16th day of November, 2005, a true and correct copy of DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL DISCOVERY was served on the attorneys for Plaintiff by U.S. First Class Mail, postage prepaid, addressed as follows:

> Lynn J. Alstadt, Esquire
> Bryan H. Opalko, Esquire
> BUCHANAN INGERSOLL PC
> One Oxford Centre
> 301 Grant Street
> Pittsburgh, Pennsylvania 15219

EMILY J. BARNHART